IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-1071 T

(Judge Braden)

DANIEL S. PIERCE AND HENDY LUND,

Plaintiffs

v.

UNITED STATES,

Defendant

DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT

Pursuant to RCFC 56(h)(2), defendant, the United States, submits the following proposed findings of uncontroverted fact. These proposed findings are supported by the attached Declaration of Benjamin King and attached exhibits, Dx. 1-3.

1. Redback adopted a stock option agreement in 1997 under which it could grant incentive stock options to its employees . (Lund Declaration Ex. A.) Pursuant to that agreement, on January 4, 1999, Redback granted Lund an incentive stock option to purchase 15,000 shares of Redback stock, for $4.75 per share. (Lund Declaration Ex. B.) As a result of two stock splits, the number of shares subject to the option grant increased to 60,000, and the exercise price decreased to $1.1875 per share. (Lund Declaration ¶ 4, 5.)

2. The option grant provided that 25% of the shares, i.e. 15,000 shares, would vest on January 4, 2000, and an additional 1/48th of the shares, i.e. 1,250 shares, would vest on the fourth day of each month thereafter. (Lund Declaration Ex. B.) Lund had the right to exercise the option with regard to all the shares, even those shares which were not yet vested.

3. The stock certificates for the non-vested shares on which options had been exercised were issued to Lund but were held in escrow by Redback until the vesting date. (Lund Declaration Ex. A, at 250.) In the event Lund's employment with Redback terminated before the vesting date, Redback had the right to repurchase the non-vested shares by paying Lund the exercise price. (Lund Declaration Ex. A, at 248.) However, Redback was not obligated to repurchase those shares and could let Lund keep them in spite of the termination of her employment. (Lund Declaration Ex. A, at 4-5.)

4. Lund executed an election pursuant to §83(b) with respect to the 13,750 non-vested shares she acquired through the March 2, 2000, exercise of her option. (Lund Declaration ¶ 7.)

5. On October 16, 2000, Lund sold 11,000 shares of the Redback stock she obtained through the exercise of her incentive stock option, for $1,540,006.00. (Lund Declaration Ex. I at 3.) She sold the remaining 19,000 shares on April 10, 2001, for $303,984.87. (Lund Declaration Ex. J at 9.)

6. Plaintiffs' 2000 return reported wages totaling $1,625,507.00. (King Declaration Ex. 1 at 1.) This amount included the $1,526,943.50 realized by Lund on the October 16, 2000, sale of 11,000 shares of Redback stock.

7. Since that stock was sold less than 12 months after Lund acquired the stock through the exercise of her incentive stock option, the sale of that stock was a disqualifying disposition

pursuant to § 421(b), and the amount realized on that sale had to be included in ordinary income. Plaintiffs reported a regular tax liability of $674,453.00 on their 2000 return. (King Declaration Ex. 1 at 2.)

8. Plaintiffs reported an AMT liability of $620,213.00 on their 2000 return. (King Declaration Ex. 1 at 2.) In computing her AMT liability for 2000, Lund included $2,824,472, as a positive AMT adjustment on line 10 of her Form 6251. (King Declaration Ex. 1 at 12.) That amount was the difference between the fair market value of the unsold 19,000 shares of Redback stock she received through the exercise of her option, $149.84 per share, and the amount she paid to exercise the option with respect to those shares, $1.1875 per share. (King Declaration Ex. 1 at 12.) The 11,000 shares sold on October 16, 2000, were not included in the computation of plaintiffs' 2000 AMT liability because the proceeds of that sale were reported as ordinary income.

9. The AMT liability, combined with the regular tax liability, resulted in a total 2000 tax liability of $1,294,745.00. (King Declaration Ex. 1 at 2.)

10. Plaintiffs did not file a claim for refund for their 2000 tax year, and that year is not before this Court.

11. Plaintiffs reported regular income of $228,269.00 on their 2001 return. (King Declaration Ex. 2 at 1.) They reported itemized deductions totaling $359,555, which consisted primarily of state taxes they paid for 2000. (King Declaration Ex. 2 at 2, 5.) Since the deductions exceeded their regular income, plaintiffs reported no regular tax liability for 2001. (King Declaration Ex. 2 at 2.)

12. However, state taxes are a preference item for AMT purposes. § 56(b)(1). Since plaintiffs could not deduct the state taxes for AMT purposes, they reported an AMT liability of $35,160.00. (King Declaration Ex. 2 at 9.) This was the total tax liability they reported and paid for 2001. (King Declaration Ex. 2 at 2.)

13. On February 10, 2005, Lund filed a claim for refund of the $35,160.00 paid for her 2001 tax year. (Complaint ¶ 8.)

14. Although Lund sold 19,000 shares of Redback stock on April 10, 2001, for $303,984.87, she did not report the gain on that sale for regular income tax purposes on schedule D, Capital Gains and Losses, attached to her 2001 return. (Lund Declaration Ex. K at 24.) The IRS determined that she had under reported her 2001 capital gains by the $281,422 gain on the sale of the 19,000 shares of Redback stock. (Lund Declaration Ex. K at 27.) The IRS also determined that dividend income should be increased by $996.00, because plaintiffs had failed to report dividends from Salomon Smith Barney and Proctor & Gamble. (Lund Declaration Ex. K at 26.)

15. The adjustments to capital gains and dividends by the IRS increased plaintiffs' adjusted gross income in 2001, which automatically decreased their itemized deductions by $5,322.00, and their exemptions by $4,408.00. (Lund Declaration Ex. K at 29-30.) As a result, the IRS determined that plaintiffs had a regular tax liability for 2001 in the amount of $30,174.00, not $0.00 as reported on the original return. (Lund Declaration Ex. K at 24.)

16. Due to the increase in the plaintiffs' 2001 regular tax liability, the IRS determined that the correct tentative AMT liability was $7,386.00, rather than $35,160.00 reported on plaintiffs' 2001 original return. (Lund Declaration Ex. K at 36.) Since the tentative AMT

liability was less than plaintiffs' $30,174.00 regular tax liability, the IRS determined that plaintiffs' had no AMT liability in 2001. (Lund Declaration Ex. K at 37.)

17. The IRS determined that plaintiffs' regular tax liability in 2001 was $30,174.00. (Lund Declaration Ex. K at 24.) The IRS determined that the amount of plaintiffs' tentative AMT tax for 2001 was $7,386.00. (Lund Declaration Ex. K at 34.) § 53(c). Therefore, the AMT credit available to offset plaintiffs' 2001 regular income tax was $22,788.00 (30,147.00 - 7,386.00). Applying the AMT credit left a regular tax liability of $7,386.00 for plaintiffs' 2001 tax. (Lund Declaration Ex. K at 24, 37-38.) This was the basis for the IRS allowance of $27,774.00, of the $35,160.00 refund claimed by plaintiff for 2001. (Lund Declaration Ex. K at 24.)

Respectfully submitted,

s/Benjamin C, King, Jr.

BENJAMIN C. KING, JR.
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6506

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
STEVEN I. FRAHM
Assistant Chief

s/Steven I. Frahm
Of Counsel

December 28, 2006