## UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DANIEL S. PIERCE and HENDY J. LUND, Plaintiffs, v. UNITED STATES OF AMERICA, Defendant | ) | Case No. 05-1071T<br>Judge Susan G. Braden<br>PLAINTIFFS' RESPONSE TO CROSS-MOTION AND REPLY TO MOTION FOR PARTIAL SUMMARY JUDGMENT |

## TABLE OF CONTENTS


**ARGUMENT .......... 1**

**A. Defendant's Cross Motion for Summary Judgment Should be Denied Because there are Genuine Issues of Material Fact in this Case. .......... 1**

**B. The Commissioner is in Error by Failing to Apply the Correct Sequence of the I.R.C. § 56(d)(2)(A) Calculation. .......... 3**

**1. The Commissioner Erred By Applying The Same Rules To The Calculation Of The AMT NOL As The Regular Tax NOL. .......... 5**

**2. When an Asset is Sold Which Has a Different Basis for Regular Tax Purposes and AMT Purposes Because of an Event That Caused a Deferral Preference to Occur, Congress Intended to Allow the AMT Deduction to Exceed the Regular Tax Deduction So that the AMT Basis Could be Fully Recovered. .......... 10**

**3. The legislative history is relevant because it expresses Congressional intent as to the manner in which certain adjustments are to be applied to deferral preference items such as Incentive Stock Options. .......... 13**

**4. Plaintiffs agree that carrybacks are not before this Court, only the amount of NOL that would be available to carryback. .......... 14**

**C. The Validity of the I.R.C. § 83(b) Election is Relevant to the Plaintiffs' 2001 Tax Liability .......... 14**

**1. An Unsecured Property Interest Does Not Qualify for an I.R.C. § 83(b) Election.** ........ **15**

**CONCLUSION** ........ **16**

# TABLE OF AUTHORITIES

## Cases

*Alves v. Commissioner*, 734 F.2d 478 (9th Cir. 1984) .......... 15
*Babbitt v. Sweet Home Chapter, Communities for Great Ore.*, 515 U.S. 687 (1995) .......... 8
*Caldwell v. Dreke*, 429 F.3d 521, 527(5th Cir. 2005), *cert denied* 127 S.C. 431 (2006) .......... 9
*Chevron USA, Inc. v. NRDC*, 467 U.S. 837 (1984) .......... 13
*Commissioner v. Soliman*, 506 U.S. 168 (1993) .......... 10
*Crane v. Commissioner*, 331 U.S. 1 (1947) .......... 10
*Duncan v. Walker*, 533 U.S. 167 (2001) .......... 8
*Garcia v. United States*, 469 U.S. 70 (1984) .......... 10
*Hoffman v. Kramer*, 362 F.3d 308 (5th Cir. 2004) .......... 9
*Kaltenback v. Richards*, 464 F.3d 524 (5th Cir. 2006) .......... 8
*Manhattan General Equipment Co. v. Commissioner*, 297 U.S. 129 (1936) .......... 13
*Market Co. v. Hoffman*, 101 U.S. 112 (1879) .......... 8
*Merlo v. Commissioner*, 126 T.C. 205 (2006) .......... 9, 10
*Montclair v. Ramsdell,* 107 U.S. 147 (1883) .......... 8
*Old Colony R. Co. v. Commissioner*, 284 U.S. 552 (1932) .......... 10
*Palahnuk v. Commissioner*, 127 T.C. No. 9 (Oct. 11, 2006) .......... 8, 10
*Ratzlaf v. United States*, 510 U.S. 135 (1994). .......... 8
*Spitz v. Commissioner*, T.C. Memo 2006-168 .......... 10, 11
*United States v. Menasche*, 348 U.S. 528 (1955) .......... 8
*United States v. Robinson*, 367 F.3d 278 (5th Cir. 2004) .......... 9
*Williams v. Taylor*, 529 U.S. 362 (2000) .......... 8

## Statutes

I.R.C. § 1211 .......... 3, 4, 9, 14
I.R.C. § 172 .......... 5, 6, 9
I.R.C. § 172(b)(2) .......... 6
I.R.C. § 172(c) .......... passim
I.R.C. § 172(d) .......... passim
I.R.C. § 172(d)(2) .......... 3, 4
I.R.C. § 172(d)(2)(A) .......... 3, 9
I.R.C. § 53(d)(1)(B) .......... 12
I.R.C. § 53(d)(1)(B)(i) .......... 12
I.R.C. § 53(d)(1)(B)(ii) .......... 12
I.R.C. § 56 .......... 9
I.R.C. § 56(a)(4) .......... 3, 5, 9
I.R.C. § 56(b)(1) .......... 12
I.R.C. § 56(b)(1)(A)(i), .......... 12
I.R.C. § 56(b)(1)(A)(ii) .......... 12
I.R.C. § 56(b)(1)(B) .......... 12
I.R.C. § 56(b)(1)(C) .......... 12

I.R.C. § 56(b)(1)(E) .......... 12
I.R.C. § 56(b)(3) .......... 8, 10
I.R.C. § 56(d) .......... 5, 9
I.R.C. § 56(d)(1) .......... 6
I.R.C. § 56(d)(1)(A) .......... 7
I.R.C. § 56(d)(1)(B) .......... 4, 6
I.R.C. § 56(d)(1)(B)(i) .......... 6, 7
I.R.C. § 56(d)(1)(B)(ii) .......... 6
I.R.C. § 56(d)(2) .......... 6
I.R.C. § 56(d)(2)(A) .......... 3, 8, 9
I.R.C. § 56(d)(2)(A)(i) .......... passim
I.R.C. § 56(d)(2)(A)(ii) .......... 4, 8
I.R.C. § 56(d). .......... 3
I.R.C. § 57(a)(1) .......... 12
I.R.C. § 57(a)(5) .......... 12
I.R.C. § 57(a)(7) .......... 12
I.R.C. § 83 .......... 15
I.R.C. § 83(b) .......... 14, 15, 16, 17

**Regulations**

Treas. Reg. § 1.83-2(a) .......... 15, 16
Treas. Reg. § 1.83-3(a) .......... 15
Treas. Reg. § 1.83-3(e) .......... 15, 16

**Congressional History**

General Explanation of the Tax Reform Act of 1986, Part 7 (May 4, 1987) .......... 13
Senate Report No. 99-313 (1986), 1986-3 C.B. (Vol. 3) .......... 16, 17

**Other Authorities**

Black's Law Dictionary 1437 (5th ed. 1979) .......... 7
Mary B Hevener, *Stock Option Compensation Payroll Tax Information Reporting and Corporate Deduction Issues for Both Qualified and Nonqualified Stock Options Held by Employees and Corporate Directors, in* New York University Fifty-Ninth Institute on Federal Taxation § 1.03[9][b] (2001) .......... 16, 17

Pursuant to RCFC 56, the Plaintiffs, Daniel S. Pierce and Hendy Lund, submit the following Response to Defendant's Cross-Motion for Summary Judgment and Reply to Plaintiffs' Motion for Partial Summary Judgment. For the reasons set forth in this Reply the Plaintiffs' Motion for Partial Summary Judgment should be granted. The Defendant's Cross Motion for Summary Judgment should be dismissed with prejudice. In this case there are genuine issues of material fact over which the parties disagree. Therefore, the Plaintiffs request permission from the Court to file a Final Motion for Summary Judgment in order to claim the correct amount of refund for tax year 2001 based on the Court's ruling in this Partial Motion for Summary Judgment.

## ARGUMENT

### A. Defendant's Cross Motion for Summary Judgment Should be Denied Because there are Genuine Issues of Material Fact in this Case.

The Plaintiffs respectfully request that the Court deny the Defendant's Cross Motion for Summary Judgment because there are several material facts which are in dispute. The contested facts are contained in the Defendant's Proposed Findings of Uncontroverted Fact. The contested material facts include the following:

1. Issue - Capital Gains:
   a. Plaintiffs voluntarily reported an increase in capital gains by $281,422 and an increase in dividend income of 996 in an amended tax return filed in a voluntary request for examination on February 8, 2005. *See* Isaacson Decl. Exhibit A-13, Bates #HL000636 – Letter to Tom Poppee dated February 8, 2005 regarding request for examination for taxpayers Hendy J. Lund and Daniel S. Pierce for the tax year 2001.
   b. The Defendant argues that the Plaintiffs failed to report these items. *See* Defendant's Proposed Findings of Uncontroverted Fact ¶ 15.
   c. These facts are material because they affect the computation of the correct amount of tax refund the taxpayer is seeking from the Court.

2. Issue - Disputed Tax Liability:

a. Plaintiffs determined that their tax on line 42 of Form 1040 for 2001 is $26,884 and that their AMT credit on Line 60 of Form 1040 is $26,884. *See* Isaacson Decl. Exhibit A-13, Bates #HL00643.
b. Defendant argues that the Plaintiffs had a regular tax liability of $30,174. Defendant's Proposed Findings of Uncontroverted Fact ¶ 15.
c. This fact is material because the correct determination of the underlying tax liability is properly before the Court.

3. Issue - Correct AMT Liability:
   a. Plaintiffs assert that the correct tentative AMT liability for 2001 is zero. See Isaacson Decl. Exhibit A-13, Bates #HL000651.
   b. Defendant argues that the correct tentative AMT liability for 2001 is $7,386. Defendant's Proposed Findings of Uncontroverted Fact ¶ 16.
   c. This is a material fact because the correct tentative AMT liability for 2001 will be determinative of the Plaintiff's eligible amount of AMT credit available to offset the Plaintiff's 2001 regular taxable income tax.

4. Issue – Correct AMT Credit:
   a. Plaintiffs assert that the correct AMT credit available to offset Plaintiff's 2001 regular income tax is $26,884. See Isaacson Decl. Exhibit A-13, Bates #HL000643.
   b. Defendant argues that the correct AMT credit available to offset Plaintiffs' 2001 regular income tax was $22,788. Defendant's Proposed Findings of Uncontroverted Fact ¶ 17.
   c. This is a material fact because the amount of AMT credit available to offset the Plaintiff's 2001 regular taxable income will be determinative of the Plaintiff's eligible tax refund.

The contested material facts contained in Defendant's Response to Plaintiffs' Proposed Finding of Uncontroverted Facts are as follows:

5. Issue – Share Transfer Date:
   a. Plaintiffs assert that the shares were transferred on the dates listed in the Lund Decl. ¶ 9.
   b. Defendant asserts that, "the shares were transferred on March 2, 2000." Defendant's Response to Plaintiff's Proposed Finding of Uncontroverted Facts #8.
   c. This is a material fact because it affects whether the shares were transferred to the Plaintiff and properly set aside from the claims of the creditors of the corporation when the I.R.C. § 83(b) election was filed.

Thus, genuine issues of material fact exist and Defendant's Cross-Motion for Summary Judgment must be denied.

**B. The Commissioner is in Error by Failing to Apply the Correct Sequence of the I.R.C. § 56(d)(2)(A) Calculation.**

The first issue of disagreement between the parties concerning Plaintiffs' Partial Motion for Summary Judgement is how to calculate the Alternative Minimum Tax Net Operating Loss Deduction ("AMT NOL") as set forth in I.R.C. § 56(d)(2)(A).

The Commissioner incorrectly assumes that Plaintiffs' calculation does not apply I.R.C. § 172(c) or I.R.C. § 1211 limitations.[1] Memorandum in Support of defendant's Cross-Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment ("Com. Memo."), pp. 15-16. Instead, Plaintiffs apply section 172 at the first level of the disputed subsection, i.e., at section 56(d)(2)(A).[2] Once the section 172(c) calculation is complete (including the application of I.R.C. § 1211), then the adjustments are made under 56(d)(2)(A)(i). The calculation can be illustrated as follows:[3]

| | | |
|---|---|---|
| Adjusted Gross Income | $200,000 | |
| FMV at Exercise = $1,000,000 | $5,000 Reg. Tax Loss | Section 56(d)(2)(A) [compute regular tax NOL pursuant to section 172(c)] |

[1]The limitations on the use of capital losses for regular tax purposes are stated in I.R.C. § 172(c) which references I.R.C. § 172(d). I.R.C. § 172(d)(2)(A) states, "[T]he amount deductible on account of loses from sales or exchanges of capital assets shall not exceed the amount includable on account of gains from sales or exchanges of capital assets. I.R.C. § 1211 allows the taxpayer an additional $3,000 capital loss to be offset against ordinary income under I.R.C. § 172(d)(2). Congress, however, enacted different rules for the calculation of the AMT NOL under I.R.C. §§ 56(a)(4) and 56(d).

[2] Although stated differently, Plaintiffs are still stating that I.R.C. § 172(c) does not apply to I.R.C. § 56(d)(2)(A)(i). See Plaintiffs' Motion for Partial Summary Judgment, p. 20-22.

[3] These numbers have been simplified for illustration purposes and do not reflect Plaintiffs' actual Adjusted Gross Income or NOL.

| | | |
|---|---|---|
| Strike (cost) = $10,000<br>Sale (or when stock became worthless) price = $5,000 | | |
| Regular Tax deduction with $2,000 NOL Carryback | $3,000 deduction | Section 172(d)(2) and Section 1211 Limitations |
| Calculate Tax Adjustments Items (Difference between AMT Basis $1,000,000 and Regular Tax Basis $10,000) | $990,000 | Start AMT Treatment Section 56(d)(2)(A)(i) |
| Reduced by Tax Preference Items | $0.00 | Section 56(d)(2)(A)(ii) |
| Exception to TPI reduction where TPI | $0.00 | Flush language – Bring back in Section 172(c) to apply to Tax Preference Items if increased Reg Tax NOL |
| | | |
| Regular Tax NOL Carryforward | $2,000 | Section 172(c) calculation |
| AMTNOL Carryback | $793,000 | $200,000 minus $3,000 (Reg. Tax NOL) = $197,000 (AMTNOL used in 2001) $990,000 (AMTNOL) minus $197,000 (used in 2001) = $793,000 to carryback to 2000 |

Based on the Commissioner's refusal to apply the sequence required by the statute, the issue before the Court should be restated as follows:

> Whether plain language of the statute governing the determination of the alternative tax net operating loss adjustment under I.R.C. § 56(d)(1)(B) requires that I.R.C. § 172(c) be modified by I.R.C. § 172(d) in sequence before the adjustments are made under I.R.C. § 56(d)(2)(A)(i) to the AMT NOL and not after the adjustments are made under I.R.C. § 56(d)(2)(A)(i) to the AMT NOL.

As demonstrated below, the plain language of the statute governing the determination of the alternative tax net operating loss adjustment under I.R.C. § 56(d)(1)(B) requires that I.R.C. § 172(c) be modified by I.R.C. § 172(d) in sequence before the adjustments are made under I.R.C. § 56(d)(2)(A)(i) to the AMT NOL.

1. <u>The Commissioner Erred By Applying The Same Rules To The Calculation Of The AMT NOL As The Regular Tax NOL.</u>

In this case, the Commissioner erred by applying the same rules to the calculation of the AMT NOL as are applied to the calculation of the Regular Tax NOL. Congress clearly articulated its intention that different rules are to apply when it adopted I.R.C. § 56(a)(4) which states (emphasis added):

> The alternative tax net operating loss deduction shall be allowed **in lieu** of the net operating loss deduction allowed under section 172.

The separate rules that Congress intended to be applied in the calculation of the AMT NOL deduction are defined in I.R.C. § 56(d). Section 56(d) states:

> ALTERNATIVE TAX NET OPERATING LOSS DEDUCTION DEFINED.
>
> In general. For purposes of subsection (a)(4), the term "alternative tax net operating loss deduction" means the net operating loss deduction allowable for the taxable year under section 172 except that –
>
> (A) the amount of such deduction shall not exceed the sum of--
>
> (i) the lesser of -
> (I) the amount of such deduction attributable to net operating losses (other than the deduction described in clause (ii)(I)), or
>
> (II) 90 percent of alternative minimum taxable income determined without regard to such deduction and the deduction under section 199 plus
>
> (ii) the lesser of--
> (I) the amount of such deduction attributable to the sum of carrybacks of net operating losses from taxable years ending during 2001 or 2002 and carryovers of net operating losses to taxable years ending during 2001 and 2002, or
>
> (II) alternative minimum taxable income determined without regard to such deduction and the deduction under section 199 reduced by the amount determined under clause (i), and

> (B) in determining the amount of such deduction –
>
> > (i) the net operating loss (within the meaning of section 172(c)) for any loss year shall be adjusted as provided in paragraph (2), and
> >
> > (ii) appropriate adjustments in the application of section 172(b)(2) shall be made to take into account the limitation of subparagraph (A).
>
> (2) Adjustments to net operating loss computation.
>
> > (A) Post-1986 loss years. In the case of a loss year beginning after December 31, 1986, the net operating loss for such year under section 172(c) shall –
> >
> > (i) be determined with the adjustments provided in this section and section 58 and
> >
> > (ii) be reduced by the items of tax preference determined under section 57 for such year.
> >
> > An item of tax preference shall be taken into account under clause (ii) only to the extent such item increased the amount of the net operating loss for the taxable year under section 172(c).

The formula that was adopted under I.R.C. § 56(d)(1) requires a different sequence for the calculation of the AMT NOL for regular tax purposes. In comparison to the Regular Tax NOL computation under I.R.C. § 172, the AMT NOL under I.R.C. § 56(d)(1)(B) states that the alternative tax net operating loss is to be calculated under the following sequential formula:

- First, the net operating loss within the meaning of I.R.C. § 172(c) is to be determined. *See* I.R.C. § 56(d)(1)(B)(i).

- Second, the alternative tax net operating loss is to be adjusted as provided in I.R.C. § 56(d)(2). *See* I.R.C. §§ 56(d)(1)(B)(i) & (ii) .

- Third, the alternative tax net operating loss is to be adjusted for carryforwards and carrybacks under I.R.C. § 172(b)(2). *See* I.R.C. § 56(d)(1)(B)(i).

- Fourth, the amount of the alternative tax net operating loss deduction for the taxable year is subject to an additional haircut under I.R.C. § 56(d)(1)(A). *See* I.R.C. § 56(d)(1)(A).

As stated above, the first step in calculating the AMT NOL is to determine the NOL defined in I.R.C. § 172(c). Section 172(c) defines the term "net operating loss" as follows:

> Net Operating Loss defined. For purposes of this section, the term "net operating loss" means the excess of the deductions allowed by this chapter over the gross income. Such excess shall be computed with the modifications specified in subsection (d).

Thus, in order to calculate the NOL under I.R.C. § 172(c), a taxpayer must determine his NOL by applying the modifications specified in I.R.C. § 172(d).[4] Even though section 172(c) incorporates section 172(d) into the meaning of section 172(c), Commissioner's calculation does not apply the section 172(d) modifications until the end of the calculation. Clearly, the language "within the meaning of section 172(c) " means "inside the limits of" section 172(c).[5] The fact that the plain language of I.R.C. § 56(d)(1)(B)(i) states that:

> the net operating loss (within the meaning of I.R.C. § 172(c)) for any loss year shall be adjusted as provided in paragraph [I.R.C. § 56(d)](2)

indicates that section 172(d) modifications are to be made in sequence prior to the adjustments provided in I.R.C. § 56(d)(2). If Congress had intended that the section 172(d) modifications are to be applied <u>after</u> the adjustments provided in I.R.C. § 56(d)(2)(A)(i)

---

[4] If none of the Section 172(d) modifications apply, then the NOL is an actual NOL equal to the amount by which the deductions exceed gross income. If one or more of the modifications applies, then the NOL, as modified under I.R.C. § 172(d), is the amount by which the deductions exceed the gross income.

[5] Black's Law Dictionary defines the word "within" as "inside the limits of" or "during the time of." Black's Law Dictionary 1437 (5th ed. 1979).

("Tax Adjustment Items"), then what need is there for the flush language of section § 56(d)(2)(A), which only applies to Tax Preference Items found in I.R.C. § 56(d)(2)(A)(ii)("Tax Preference Items").

Instead, it is clear that Congress specifically intended the section 172(d) modifications to occur prior to the Tax Adjustment Items.[6] The flush language in I.R.C. § 56(d)(2)(A) specifically demonstrates Congress' intent to limit the section 172(d) modifications only to the Tax Preference Items. If Congress had intended to subject (for the second time) the Tax Adjustment Items to the to the Section 172(d) modifications, then the flush language would have specifically included both (i) <u>and</u> (ii).

As the Supreme Court stated:

> "It is our duty 'to give effect, if possible, to every clause and word of a statute.'" *United States v. Menasche*, 348 U.S. 528, 538-539, 99 L. Ed. 615, 75 S. Ct. 513 (1955) (quoting *Montclair v. Ramsdell*, 107 U.S. 147, 27 L. Ed. 431, 2 S. Ct. 391 (1883)); see also *Williams v. Taylor*, 529 U.S. 362, 404, 146 L. Ed. 2d 389, 120 S. Ct. 1495 (2000) (describing this rule as a "cardinal principle of statutory construction"); *Market Co. v. Hoffman*, 101 U.S. 112, 115, 25 L. Ed. 782 (1879) ("As early as in Bacon's Abridgment, sect. 2, it was said that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant'"). We are thus "reluctant to treat statutory terms as surplusage" in any setting. *Babbitt v. Sweet Home Chapter, Communities for Great Ore.*, 515 U.S. 687, 698, 132 L. Ed. 2d 597, 115 S. Ct. 2407 (1995); see also *Ratzlaf v. United States*, 510 U.S. 135, 140, 126 L. Ed. 2d 615, 114 S. Ct. 655 (1994).

*Duncan v. Walker*, 533 U.S. 167, 174, 121 S. Ct. 2120, 150 L. Ed. 2d 251 (2001); *accord Kaltenback v. Richards*, 464 F.3d 524, 529 (5th Cir. 2006); see also *Caldwell v. Dreke*, 429

---

[6] Incentive Stock Options are tax adjustment items because of I.R.C. § 56(b)(3). See *Palahnuk v. Commissioner*, 127 T.C. No. 9 (Oct. 11, 2006), 2006 U.S. Tax Ct. LEXIS 29 [*11].

F.3d 521, 527(5th Cir. 2005), *cert denied* 127 S.C. 431 (2006); *United States v. Robinson*, 367 F.3d 278, 293 (5th Cir. 2004); *Hoffman v. Kramer*, 362 F.3d 308, 319 (5th Cir. 2004).

The AMT provisions specifically provide that modifications will occur and that I.R.C. § 56 will be "in lieu of" the section 172 rules and the interconnected statutes. I.R.C. § 56(a)(4). While Commissioner ignores the impact of the words "in lieu of," the Plaintiffs' interpretation makes use of both the substitution language ("in lieu of") and all portions of section 56(d)(2)(A).

In this case, Plaintiffs follow the sequence required by the by I.R.C. § 56(d) by applying the I.R.C. §§ 172(c) and 172(d) modifications at the first level of I.R.C. § 56(d)(1)(B)(i). Then, once the I.R.C. § 172(c) calculation is complete (including the application of I.R.C. § 1211), the adjustments are made under I.R.C. § 56(d)(2)(A)(i).

As explained above, the plain language of the statute indicates that adjustments under I.R.C. § 56(d)(2)(A)(i) are not subject to the modifications of the flush language. Only Tax Preference Items in I.R.C. § 56(d)(2)(A)(ii) are brought back through the I.R.C. § 172(c) and (d) calculation.

The Commissioner's reliance on *Merlo v. Commissioner* was an error because the Court erroneously subjected I.R.C. § 56(d)(2)(A)(i) to the modifications of the flush language. *See* Com. Memo. pp. 17-18 (citing *Merlo v. Commissioner*, 126 T.C. 205 (2006), appeal pending, No. 06-60723 (5th Cir. 2006)). The Tax Court stated:

> Petitioner's net regular capital loss is excluded from computing his NOL deduction. See sec. 172(c) , (d)(2)(A) ; sec. 1.172-3(a)(2), Income Tax Regs. For AMT purposes, petitioner's [AMTNOL] is the same as his NOL, taking into consideration all the adjustments to his taxable income under sections, and, No adjustments under those sections modify the exclusion of net capital losses from the NOL computation under section 172(d)(2)(A). Therefore, petitioner's net AMT capital loss is excluded for purposes of calculating his [AMTNOL] deduction. As a result, petitioner's AMT capital

> loss realized in 2001 does not create an [AMTNOL] that can be carried back to 2000 under sections 56 and.

*Merlo v. Commissioner*, 126 T.C. at 213. The Tax Court made the same error in *Palahnuk*, 127 T.C. No. 9 (Oct. 11, 2006) and *Spitz v. Commissioner*, T.C. Memo 2006-168 (Aug. 15, 2006). It appears that the Commissioner would agree that Incentive Stock Options ("ISOs") are Tax Adjustment Items under I.R.C. § 56(d)(2)(A)(i).

In *Palahnuk*, the Tax Court subsequently stated that the sale of exercised ISOs are a Tax Adjustment Item because of I.R.C. § 56(b)(3). *Palahnuk v. Commissioner*, 127 T.C. No. 9 (October 11, 2006), 2006 U.S. Tax Ct. LEXIS 29 [*11]. Thus, the ISO transaction in the instant case is also a Tax Adjustment Item under both I.R.C. §§ 56(b)(3) and 56(d)(2)(A)(i) ("adjustments provided in this section"). Therefore, the sequence for the calculation of the AMT NOL described above should be followed.

2. <u>When an Asset is Sold Which Has a Different Basis for Regular Tax Purposes and AMT Purposes Because of an Event That Caused a Deferral Preference to Occur, Congress Intended to Allow the AMT Deduction to Exceed the Regular Tax Deduction So that the AMT Basis Could be Fully Recovered.</u>

A statute is interpreted in light of all pertinent evidence, textual and contextual. *See Commissioner v. Soliman*, 506 U.S. 168, 173-74, 113 S. Ct. 701, 121 L. Ed. 2d 634 (1993); *Crane v. Commissioner*, 331 U.S. 1, 6, 67 S. Ct. 1047, 91 L. Ed. 1301 (1947); *Old Colony R. Co. v. Commissioner*, 284 U.S. 552, 560, 52 S. Ct. 211, 76 L. Ed. 484 (1932). If a statute is "inescapably ambiguous," the legislative history can be used to discern the meaning of the words therein. *Garcia v. United States*, 469 U.S. 70, 76 , 105 S. Ct. 479; 83 L. Ed. 2d 472 (1984). It is unlikely that the AMT provisions have ever been described as a model of clarity. Thus, it is important to review the legislative history to determine which calculation reaches the correct result.

First, it is important to understand the purpose of the AMT provisions which were enacted to limit the ability of high income individuals to pay little or no tax. The General Explanation states:

> The ability of high-income taxpayers to pay little or no tax undermines respect for the entire tax system and, thus, for the incentive provisions themselves. In addition, even aside from public perceptions, Congress concluded that it is inherently unfair for high-income taxpayers to pay little or no tax due to their ability to utilize tax preferences.

General Explanation of the Tax Reform Act of 1986, Part 7, 433 (May 4, 1987). *See* Isaacson Decl., Exhibit A-10.

However, the purpose was to accelerate the recognition of income, not to decelerate the deduction as occurs with Commissioner's calculation. Plaintiffs' calculation meets the Congressional purpose accelerating the income recognition to the year the stock options were received. This intent was clearly stated by Congress:

> The structure for the alternative minimum tax on individuals generally is the same as under present law, except that adjustments are permitted in order to reflect the fact that certain deferral preferences (such as accelerated depreciation) cannot be treated simply as add-ons if total income is to be computed properly over time. For such preferences, the minimum tax deduction may in some instances exceed the regular tax deduction (e.g., in the later years of an asset's life, thus insuring that basis will be fully recovered under both the regular and the minimum tax systems).

Id. at 437(emphasis added).[7]

---

[7] The Commissioner confirmed their position that when an exercised Incentive Stock Option is sold, then an adjustment must be made to reflect the difference between in basis between regular tax and AMT in *Spitz v. Commissioner*, T.C. Memo. 2006-168, 92 T.C.M. (CCH) 121, Respondent's Explanation of the Computations Submitted Under Tax Court Rule 155, p.4, where the Commissioner stated:

> Respondent maintains that when there is an ISO exercised in an earlier year and sold in a subsequent year, an adjustment must be made to reflect the difference in basis between regular tax and AMT.

To understand the legislative history, we must first understand deferral preferences and exclusion preferences. A deferral preference item is distinguishable from an exclusion preference item. The reason is that a Minimum Tax Credit is allowed for deferral preference items, but not for exclusion preference items. I.R.C. § 53(d)(1)(B). The exclusion preferences include the following:[8]

- The adjustments provided for individual taxpayers in I.R.C. § 56(b)(1). These include adjustments for miscellaneous itemized deductions, I.R.C. § 56(b)(1)(A)(i), certain taxes, I.R.C. § 56(b)(1)(A)(ii), medical expenses, I.R.C. § 56(b)(1)(B), interest deductions I.R.C. § 56(b)(1)(C), and standard deductions and personal exemption deductions, I.R.C. § 56(b)(1)(E).

- The depletion preference. I.R.C. § 57(a)(1).

- The preference for tax-exempt interest generated by specified private activity bonds. I.R.C. § 57(a)(5).

- The preference for the exclusion for gains on sale of certain small business stock. I.R.C. § 57(a)(7).

All other adjustments and preferences are considered deferral preferences for purposes of the Minimum Tax Credit. *See* I.R.C. § 53(d)(1)(B)(i).

The language contained in the General Explanation which applies to deferral preference items is consistent with the language in I.R.C. § 56(d)(2)(A)(i).

---

See Isaacson Decl. Exhibit A-11.

It is important to note that the shares had a separate basis for AMT purposes because of the operation of I.R.C. § 56(b)(3) which requires that AMT income be recognized at the time of exercise of incentive stock options equal to the difference between the fair market value at the time of exercise minus the exercise price. Thus the AMT basis equals the exercise price plus the AMT gain recognized at the time of exercise. In comparison, the regular tax basis at the time of exercise is the exercise price because regular taxable income is not recognized at the time of exercise of an incentive stock option.

[8] I.R.C. § 53(d)(1)(B)(ii):

- The language that "the minimum tax deduction may in some instances exceed the regular tax deduction" indicates that Congress intended to create a rule that the amount of the AMT NOL which is allowed for Tax Adjustment Items (under I.R.C. § 56(d)(2)(A)(i)) is not limited to the amount of the net operating loss for the taxable year under section 172(c).

- The language "thus insuring that basis will be fully recovered under both the regular and the minimum tax systems" indicates that Congress intended to allow the difference between the AMT basis and the regular tax basis when adjustments required by the statute (under I.R.C. § 56(d)(2)(A)(i)) cause a different basis for regular tax purposes and for AMT purposes.

Congress specifically stated, "the minimum tax deduction may in some instances exceed the regular tax deduction." Therefore, any interpretation which limits the minimum tax deduction under I.R.C. § 56(d)(2)(A)(i) to an amount less than the difference between the AMT basis and the regular tax basis is inconsistent with Congressional intent and should be reversed on appeal because Congress has directly addressed the issue. See *Chevron USA, Inc. v. NRDC*, 467 U.S. 837, 842-843, 104 S. Ct. 2778, 81 L. Ed. 2d 837 (1984).

Any administrative interpretation which is inconsistent with the Tax Reform Act of 1986 is a nullity. The rationale for this principle was stated by the Supreme Court when it stated:

> The power of an administrative officer . . . to administer a federal statute and to prescribe rules and regulations to that end is not the power to make law . . . but the power to adopt regulations to carry into effect the will of Congress as expressed by the statute. A regulation which does not do this, but operates to create a rule out of harmony with the statute, is a mere nullity.

*Manhattan General Equipment Co. v. Commissioner*, 297 U.S. 129, 134, 56 S. Ct. 397, 80 L. Ed. 528 (1936).

3. <u>The legislative history is relevant because it expresses Congressional intent as to the manner in which certain adjustments are to be applied to deferral preference items such as Incentive Stock Options.</u>

The Commissioner argues on page 17 that the language in Senate Report No. 99-313 (1986), 1986-3 C.B. (Vol. 3) at 521-22 is not relevant to this case.[9] *See* Com. Memo., p. 17. The Commissioner's argument is erroneous. First, as noted above, the Commissioner misinterprets Plaintiffs' argument concerning I.R.C. § 1211. Plaintiffs do not assert that the legislative history states that Section 1211 does not apply when calculating AMT NOL, only that the Commissioner improperly applies Section 1211 at the end of the computation.

Furthermore, the legislative history expresses Congressional intent as to the manner in which certain adjustments are to be applied to deferral preference items. The exercise of an incentive stock option is a deferral preference item under I.R.C. § 56(b)(3). Therefore, the language in Senate Report No. 99-313 (1986), 1986-3 C.B. (Vol. 3) at 521-22 is relevant to this case.

4. Plaintiffs agree that carrybacks are not before this Court, only the amount of NOL that would be available to carryback.

Commissioner claims that carrybacks are irrelevant to the year before the Court, i.e., 2001. Com. Memo., p.21. This is correct except for the fact that the issue before the Court does impact the NOL available for carryback to other years.

**C. The Validity of the I.R.C. § 83(b) Election is Relevant to the Plaintiffs' 2001 Tax Liability.**

The Commissioner's statement that the "validity of Lund's § 83(b) election is irrelevant to her 2001 regular income tax liability" is in error. *See* Com. Memo., p. 10. In this case the validity of the I.R.C. § 83(b) election is relevant to the 2001 tax year. In the event that the Court finds that the I.R.C. § 83(b) election is invalid because the

---

[9] The language referred to in Plaintiff's Motion for Summary Judgment is also found in the General Explanation of the Tax Reform Act of 1986. *See supra* pp. 10-11.

shares have not been set aside from the claims of the creditors of the corporation, then the taxpayer is subject to taxation in 2001 when the shares vest. See *Alves v. Commissioner*, 734 F.2d 478 (9th. Cir. 1984). Although the Commissioner is pleading with the Court to ignore the issue, a determination of the validity of the I.R.C. § 83(b) election is crucial to the determination of the correct tax liability in this case.

1. An Unsecured Property Interest Does Not Qualify for an I.R.C. § 83(b) Election.

Treas. Reg. § 1.83-3(e) defines "property" to exclude an "unfunded and unsecured promise to pay money or property in the future. Thus, an unsecured contractual entitlement to receive a fixed amount in the future is generally not subject to I.R.C. § 83.

The Commissioner's argument (that I.R.C. § 83 applies to unsecured contractual entitlements if an I.R.C. § 83(b) election is filed) ignores the rule of law under Treasury Regulation § 1.83-2(a) which establishes two prerequisites before a valid Section 83(b) election can be made. First, the taxpayer must receive a secured property interest which satisfies the definition of Treas. Reg. § 1.83-3(e). Second, there must be a transfer of the secured property interest under the rule of law under Treas. Reg. § 1.83-3(a). Neither of these prerequisites is satisfied in this case.

A property interest that is subject to the claims of the creditors of the corporation is not a secured property right under Treas. Reg. § 1.83-3(e). In this case, the stock option contract was drafted in such a manner that whatever property interest Plaintiffs may have had in the unvested shares was unsecured when she executed the boilerplate Section 83(b) election form prepared by the company. The unsecured shares were not set aside from the claims of the creditors of the corporation. The unsecured shares could have been could be

repurchased by the company at cost. See Lund Decl. ¶ 8, Exhibit A, Redback Networks Inc. 1997 Stock Plan: Stock Option Agreement, Section 7(a), Right of Repurchase and Section 7(d) Repurchase Cost.

The Commissioner erred by arguing that there is an exception which allows an I.R.C. § 83(b) election to be made for unsecured shares. There are no exceptions to Treas. Reg. § 1.83-3(e) that there must be a secured property interest in order for Section 83 to apply to the transfer of property. In this case the Plaintiffs' property interest was unsecured at the time they signed the election form because the company had an unconditional right to repurchase the unvested shares at cost. The application of Treasury Regulation § 1.83-2(a) is restricted to secured property interests under Treasury Regulation § 1.83-3(e). A taxpayer is not allowed to make the I.R.C. § 83(b) election on an unsecured property interest.[10]

**CONCLUSION**

Thus, Plaintiffs' Motion for Partial Summary Judgment should be granted and this Court should determine that I.R.C. §§ 172(c) and 172(d) do not modify the AMT adjustments provided in I.R.C. § 56(d)(2)(A)(i) and allow the Plaintiffs to recognize the full difference between the AMT basis and the regular tax basis upon the sale of their exercised incentive stock options in 2001 under I.R.C. § 56(d)(2)(A)(i). In addition, this Court should

---

[10] *See* Mary B Hevener, *Stock Option Compensation : Payroll Tax Information Reporting and Corporate Deduction Issues for Both Qualified and Nonqualified Stock Options Held by Employees and Corporate Directors, in* New York University Fifty-Ninth Institute on Federal Taxation § 1.03[9][b] (2001) (discussing the I.R.C. § 83(b) election)

> Accordingly, it is simply is not clear whether the § 83(b) election will (or should) be recognized as effective. On that note, when this proposed filing of § 83(b) elections was first raised with the IRS years ago, it became known as the "Teflon Election" problem, since it cannot be clearly determined whether the elections, if filed, will ever "stick."

determine Plaintiffs could not make an I.R.C. § 83(b) election on an unsecured property interest.[11]

Further, Defendant's Cross-Motion for Summary Judgment should be denied because genuine issue of material fact exist.

Dated: this 29th day of January, 2007.

Merriam & Isaacson, P.S.

/s/ Brian G. Isaacson

Brian G. Isaacson, Attorney for Petitioners
WSBA 25921
Tax Court Bar Number IB 0016
701 Fifth Avenue, Suite 5800
Seattle, WA 98104
Telephone: 206-829-2500
Facsimile: 206-829-2501

---

[11] *See* Mary B Hevener, *Stock Option Compensation : Payroll Tax Information Reporting and Corporate Deduction Issues for Both Qualified and Nonqualified Stock Options Held by Employees and Corporate Directors, in* New York University Fifty-Ninth Institute on Federal Taxation § 1.03[9][b] (2001) (discussing the I.R.C. § 83(b) election)

> Accordingly, it is simply is not clear whether the § 83(b) election will (or should) be recognized as effective. On that note, when this proposed filing of § 83(b) elections was first raised with the IRS years ago, it became known as the "Teflon Election" problem, since it cannot be clearly determined whether the elections, if filed, will ever "stick."

BADGLEY-MULLINS LAW GROUP

s/Don Paul Badgley
Don Paul Badgley, Attorney for Plaintiffs
WSBA #457
701 Fifth Avenue, Suite 4750
Seattle, WA 98104
Telephone: 206-621-6566
Facsimile: 206-621-9686

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on January 29, 2007, Any other counsel of record will be served by first class United States mail.

/s/ Don Paul Badgley
Don Paul Badgley