# A-1

# I.R.C. § 53.

**SEC. 53 CREDIT FOR PRIOR YEAR MINIMUM TAX LIABILITY.**

(a) Allowance of credit. There shall be allowed as a credit against the tax imposed by this chapter [26 USCS §§ 1 et seq.] for any taxable year an amount equal to the minimum tax credit for such taxable year.

(b) Minimum tax credit. For purposes of subsection (a), the minimum tax credit for any taxable year is the excess (if any) of

(1) the adjusted net minimum tax imposed for all prior taxable years beginning after 1986, over

(2) the amount allowable as a credit under subsection (a) for such prior taxable years.

(c) Limitation. The credit allowable under subsection (a) for any taxable year shall not exceed the excess (if any) of—

(1) the regular tax liability of the taxpayer for such taxable year reduced by the sum of the credits allowable under subparts A, B, D, E, and F of this part [26 USCS §§ 21 et seq., 27 et seq., 38 et seq., 46 et seq., and 51 et seq.], over

(2) the tentative minimum tax for the taxable year.

(d) Definitions. For purposes of this section—

(1) Net minimum tax.

(A) In general. The term "net minimum tax" means the tax imposed by section 55 [26 USCS § 55].

(B) Credit not allowed for exclusion preferences.

(i) Adjusted net minimum tax. The adjusted net minimum tax for any taxable year is

(I) the amount of the net minimum tax for such taxable year, reduced by

(II) the amount which would be the net minimum tax for such taxable year if the only adjustments and items of tax preference taken into account were those specified in clause (ii).

(ii) Specified items. The following are specified in this clause

(I) the adjustments provided for in subsection (b)(1) of section 56 [26 USCS § 56], and

(II) the items of tax preference described in paragraphs (1), (5), and (7) of section 57(a) [26 USCS § 57(a)].

(iii) Special rule. The adjusted net minimum tax for the taxable year shall be increased by the amount of the credit not allowed under section 30 [26 USCS § 30] solely by reason of the application of section 30(b)(3)(B) [26 USCS § 30(b)(3)(B)].

(iv) Credit allowable for exclusion preferences of corporations. In the case of a corporation

(I) the preceding provisions of this subparagraph shall not apply, and

(II) the adjusted net minimum tax for any taxable year is the amount of the net minimum tax for such year increased in the manner provided in clause (iii).

(2) Tentative minimum tax. The term "tentative minimum tax" has the meaning given to such term by section 55(b) [26 USCS § 55(b)].

# A-2

# I.R.C. § 55(a)-(d).

**SEC. 55. ALTERNATIVE MINIMUM TAX IMPOSED.**

(a) General rule. There is hereby imposed (in addition to any other tax imposed by this subtitle [26 USCS § 1 et seq.]) a tax equal to the excess (if any)

(1) the tentative minimum tax for the taxable year, over

(2) the regular tax for the taxable year.

(b) Tentative minimum tax. For purposes of this part [26 USCS § 55 et seq.]

(1) Amount of tentative tax.

(A) Noncorporate taxpayers.

(i) In general. In the case of a taxpayer other than a corporation, the tentative minimum tax for the taxable year is the sum of—

(I) 26 percent of so much of the taxable excess as does not exceed $ 175,000, plus

(II) 28 percent of so much of the taxable excess as exceeds $ 175,000. The amount determined under the preceding sentence shall be reduced by the alternative minimum tax foreign tax credit for the taxable year.

(ii) Taxable excess. For purposes of this subsection, the term "taxable excess" means so much of the alternative minimum taxable in come for the taxable year as exceeds the exemption amount.

(iii) Married individual filing separate return. In the case of a married individual filing a separate return, clause (i) shall be applied by substituting "$ 87,500" for "$ 175,000" each place it appears. For purposes of the preceding sentence, marital status shall be determined under section 7703 [26 USCS § 7703].

(B) Corporations. In the case of a corporation, the tentative minimum tax for the taxable year is

(i) 20 percent of so much of the alternative minimum taxable in come for the taxable year as exceeds the exemption amount, reduced by

(ii) the alternative minimum tax foreign tax credit for the taxable year.

(2) Alternative minimum taxable income. The term "alternative minimum taxable income" means the taxable income of the taxpayer for the taxable year

(A) determined with the adjustments provided in section 56 [26 USCS §56] and section 58 [26 USCS § 58], and

(B) increased by the amount of the items of tax preference described in section 57 [26 USCS § 57].
If a taxpayer is subject to the regular tax, such taxpayer shall be subject to the tax imposed by this section (and, if the regular tax is determined by reference to an amount other than taxable income, such amount shall be treated as the taxable income of such taxpayer for purposes of the preceding sentence). (3) Maximum rate of tax on net capital gain of noncorporate taxpayers. The amount determined under the first sentence of paragraph (1)(A)(i) shall not exceed the sum of

(A) the amount determined under such first sentence computed at the rates and in the same manner as if this paragraph had not been enacted on the taxable excess reduced by the lesser of

(i) the net capital gain; or

(ii) the sum of

(I) the adjusted net capital gain, plus

(II) the unrecaptured section 1250 [26 USCS § 1250] gain, plus

(B) 5 percent (0 percent in the case of taxable years beginning after 2007) of so much of the adjusted net capital gain (or, if less, taxable excess) as does not exceed an amount equal to the excess described in section 1(h)(1)(B) [26 USCS §1(h)(1)(B)], plus

(C) 15 percent of the adjusted net capital gain (or, if less, taxable excess) in excess of the amount on which tax is determined under subparagraph (B), plus

(D) 25 percent of the amount of taxable excess in excess of the sum of the amounts on which tax is determined under the preceding subparagraphs of this paragraph. Terms used in this paragraph which are also used in section 1(h) [26 USCS § 1(h)] shall have the respective meanings given such terms by section 1(h) [26 USCS § 1(h)] but computed with the adjustments under this part [26 USCS §§ 55 et seq.].

(c) Regular tax.

(1) In general. For purposes of this section, the term "regular tax" means the regular tax liability for the taxable year (as defined in section 26(b) [26 USCS § 26(b)]) reduced by the foreign tax credit allowable under section 27(a) [26 USCS § 27(a)], the section 936 credit allowable under section 27(b) [26 USCS § 27(b)], and the Puerto Rico economic activity credit under section 30A [26 USCS § 30A]. Such term shall not include any increase in tax under section 45(e)(11)(C), 49(b) or 50(a) [26 USCS §45(e)(11)(C), 49(b) or 50(a)] or subsection (j) or (k) of section 42 [26 USCS § 42].

(2) Coordination with income averaging for farmers and fishermen. Solely for purposes of this section, section 1301 [26 USCS § 1301] (relating to averaging of farm and fishing income) shall not apply in computing the regular tax liability.

(3) Cross references. For provisions providing that certain credits are not allow able against the tax imposed by this section, see sections 26(a), 30(b)(3), 30B(g)(2), 30C(d)(2), and 38(c) [26 USCS §§ 26(a), 30(b)(3), 30B(g)(2), 30C(d)(2), and 38(c)].

(d) Exemption amount. For purposes of this section

(1) Exemption amount for taxpayers other than corporations. In the case of a tax payer other than a corporation, the term "exemption amount" means

(A) $ 45,000 ($ 62,550 in the case of taxable years beginning in 2006) in the case of

(i) a joint return, or

(ii) a surviving spouse,

(B) $ 33,750 ($ 42,500 in the case of taxable years beginning in 2006) in the case of an individual who

(i) is not a married individual, and

(ii) is not a surviving spouse,

(C) 50 percent of the dollar amount applicable under paragraph (1)(A) in the case of a married individual who files a separate return, and

(D) $ 22,500 in the case of an estate or trust.

For purposes of this paragraph, the term "surviving spouse" has the meaning given to such term by section 2(a) [26 USCS § 2(a)], and marital status shall be determined under section 7703 [26 USCS § 7703].

(2) Corporations. In the case of a corporation, the term "exemption amount" means $ 40,000.

(3) Phase-out of exemption amount. The exemption amount of any taxpayer shall be reduced (but not below zero) by an amount equal to 25 percent of the amount by which the alternative minimum taxable income of the taxpayer exceeds--

(A) $ 150,000 in the case of a taxpayer described in paragraph (1)(A) or (2),

(B) $ 112,500 in the case of a taxpayer described in paragraph (1)(B), and

(C) $ 75,000 in the case of a taxpayer described in subparagraph (C) or (D) of paragraph (1).

In the case of a taxpayer described in paragraph (1)(C), alternative minimum taxable income shall be increased by the lesser of (i) 25 percent of the excess of alternative minimum taxable income (determined without regard to this sentence) over the minimum amount of such income (as so determined) for which the exemption amount under paragraph (1)(C) is zero, or (ii) such exemption amount (determined without regard to this paragraph).

***

# A-3

# I.R.C. § 56(a)(4), (b)(1), (b)(3), (d)(1)-(2)(A).

**SEC. 56 ADJUSTMENTS IN COMPUTING ALTERNATIVE MINIMUM TAXABLE INCOME.**

(a) Adjustments applicable to all taxpayers. In determining the amount of the alternative minimum taxable income for any taxable year the following treatment shall apply (in lieu of the treatment applicable for purposes of computing the regular tax):

***

(4) Alternative tax net operating loss deduction. The alternative tax net operating loss deduction shall be allowed in lieu of the net operating loss deduction allowed under section 172 [*26 USCS § 172*].

***

(b) Adjustments applicable to individuals. In determining the amount of the alternative minimum taxable income of any taxpayer (other than a corporation), the following treatment shall apply (in lieu of the treatment applicable for purposes of computing the regular tax):

(1) Limitation on deductions.

(A) In general. No deduction shall be allowed

(i) for any miscellaneous itemized deduction (as defined in section 67(b) [*26 USCS § 67(b)*]), or

(ii) for any taxes described in paragraph (1), (2), or (3) of section 164(a) [*26 USCS § 164(a)*] or clause (ii) of section 164(b)(5)(A) [*26 USCS § 164(b)(5)(A)*].
Clause (ii) shall not apply to any amount allowable in computing adjusted gross income.

(B) Medical expenses. In determining the amount allowable as a deduction under section 213 [*26 USCS § 213*], subsection (a) of section 213 [*26 USCS § 213*] shall be applied by substituting "10 percent" for "7.5 percent".

(C) Interest. In determining the amount allowable as a deduction for interest, subsections (d) and (h) of section 163 [*26 USCS § 163*] shall apply, except that--

***

(E) Standard deduction and deduction for personal exemptions not

allowed. The standard deduction under section 63(c) [*26 USCS § 63(c)*], the deduction for personal exemptions under section 151 [*26 USCS § 151*], and the de duction under section 642(b) [*26 USCS § 642(b)*] shall not be allowed.

(3) Treatment of incentive stock options. Section 421 [*26 USCS § 421*] shall not apply to the transfer of stock acquired pursuant to the exercise of an incentive stock option (as defined in section 422 [*26 USCS § 422*]). s [sic S]ection 422(c)(2) shall apply in any case where the disposition and the inclusion for purposes of this part [*26 USCS §§ 55* et seq.] are within the same taxable year and such section shall not apply in any other case. The adjusted basis of any stock so acquired shall be determined on the basis of the treatment prescribed by this paragraph.

***

(d) Alternative tax net operating loss deduction defined.

(1) In general. For purposes of subsection (a)(4), the term "alternative tax net operating loss deduction" means the net operating loss deduction allowable for the taxable year under section 172 [*26 USCS § 172*], except that

(A) the amount of such deduction shall not exceed the sum of--

(i) the lesser of--

(I) the amount of such deduction attributable to net operating losses (other than the deduction described in clause (ii)(I)), or

(II) 90 percent of alternative minimum taxable income determined without regard to such deduction and the deduction under section 199 [*26 USCS § 199*], plus

(ii) the lesser of

(I) the amount of such deduction attributable to the sum of carrybacks of net operating losses from taxable years ending during 2001 or 2002 and carryovers of net operating losses to taxable years ending during 2001 and 2002, or

(II) alternative minimum taxable income determined with out regard to such deduction and the deduction under section 199 [*26 USCS § 199*] reduced by the amount determined under clause (i), and

(B) in determining the amount of such deduction

(i) the net operating loss (within the meaning of section 172(c) [*26 USCS § 172(c)*]) for any loss year shall be adjusted as provided in paragraph (2), and

(ii) appropriate adjustments in the application of section 172(b)(2) [*26 USCS § 172(b)(2)*] shall be made to take into account the limitation of subparagraph (A).

(2) Adjustments to net operating loss computation.

(A) Post-1986 loss years. In the case of a loss year beginning after December 31, 1986, the net operating loss for such year under section 172(c) [*26 USCS § 172(c)*] shall

(i) be determined with the adjustments provided in this section and section 58 [*26 USCS § 58*], and

(ii) be reduced by the items of tax preference determined under section 57 [*26 USCS § 57*] for such year.

An item of tax preference shall be taken into account under clause (ii) only to the extent such item increased the amount of the net operating loss for the taxable year under section 172(c) [*26 USCS § 172(c)*].

***

# A-4

# I.R.C. § 57(a)(1), (5), (7), (b).

**SEC. 57 ITEMS OF TAX PREFERENCE.**

(a) General rule. For purposes of this part [26 USCS § § 55 et seq.], the items of tax preference determined under this section are—

(1) Depletion. With respect to each property (as defined in section 614 [26 USCS § 614]), the excess of the deduction for depletion allowable under section 611 [26 USCS § 611] for the taxable year over the adjusted basis of the property at the end of the taxable year (determined without regard to the depletion deduction for the taxable year). Effective with respect to taxable years beginning after December 31, 1992, this paragraph shall not apply to any deduction for depletion computed in accordance with section 613A(c) [26 USCS § 613A(c)].

***

(5) Tax-exempt interest.

(A) In general. Interest on specified private activity bonds reduced by any deduction (not allowable in computing the regular tax) which would have been allowable if such interest were includible in gross income.

(B) Treatment of exempt-interest dividends. Under regulations prescribed by the Secretary, any exempt-interest dividend (as defined in section 852(b)(5)(A) [26 USCS § 852(b)(5)(A)]) shall be treated as interest on a specified private activity bond to the extent of its proportionate share of the interest on such bonds received by the company paying such dividend.

(C) Specified private activity bonds.

(i) In general. For purposes of this part [26 USCS §§ 55 et seq.], the term "specified private activity bond" means any private activity bond (as defined in section 141 [26 USCS § 141]) which is issued after August 7, 1986, and the interest on which is not includible in gross income under section 103 [26 USCS § 103].

(ii) Exception for qualified 501(c)(3) bonds. For purposes of clause (i), the term "private activity bond" shall not include any qualified 501(c)(3) bond (as defined in section 145 [26 USCS § 145]).

(iii) Exception for refundings. For purposes of clause (i), the term "private activity bond" shall not include any refunding bond (whether a current or advance refunding) if the refunded bond (or in the case of a series of refundings, the original bond) was issued before August 8, 1986.

(iv) Certain bonds issued before September 1, 1986. For purposes of this subparagraph, a bond issued before September 1, 1986, shall be treated as issued before August 8, 1986, unless such bond would be a private activity bond if—

(I) paragraphs (1) and (2) of section 141(b) [26 USCS § 141(b)] were applied by substituting "25 percent" for "10 percent" each place it appears,

(II) paragraphs (3), (4), and (5) of section 141(b) [26 USCS §141(b)] did not apply, and

(III) subparagraph (B) of section 141(c)(1) [26 USCS § 141(c)(1)] did not apply.

***

(7) Exclusion for gains on sale of certain small business stock. An amount equal to 7 percent of the amount excluded from gross income for the taxable year under section 1202 [26 USCS § 1202].

(b) Straight line recovery of intangibles defined. For purposes of paragraph (2) of subsection (a)—

(1) In general. The term "straight line recovery of intangibles", when used with respect to intangible drilling and development costs for any well, means (except in the case of an election under paragraph (2)) ratable amortization of such costs over the 120-month period beginning with the month in which production from such well begins.

(2) Election. If the taxpayer elects with respect to the intangible drilling and development costs for any well, the term "straight line recovery of intangibles" means any method which would be permitted for purposes of determining cost depletion with respect to such well and which is selected by the taxpayer for purposes of subsection (a)(2).

# A-5

# I.R.C. § 151(d).

**SEC. 151 ALLOWANCE OF DEDUCTIONS FOR PERSONAL EXEMPTIONS**

***

(d) Exemption amount [Caution: For provision that, for taxable years beginning in 2006, the personal exemption amount under this subsection is $ 3,300, and for phaseout of personal exemption for such tax years, see § 3.17 of Rev. Proc. 2005-70, which appears as 26 USCS § 1 note.]. For purposes of this section

(1) In general. Except as otherwise provided in this subsection, the term 'exemption amount' means $ 2,000.

(2) Exemption amount disallowed in case of certain dependents. In the case of an individual with respect to whom a deduction under this section is allowable to another taxpayer for a taxable year beginning in the calendar year in which the individual's tax able year begins, the exemption amount applicable to such individual for such individual's taxable year shall be zero.

(3) Phaseout.

(A) In general. In the case of any taxpayer whose adjusted gross income for the taxable year exceeds the threshold amount, the exemption amount shall be reduced by the applicable percentage.

(B) Applicable percentage. For purposes of subparagraph (A), the term 'applicable percentage' means 2 percentage points for each $ 2,500 (or fraction thereof) by which the taxpayer's adjusted gross income for the taxable year exceeds the threshold amount. In the case of a married individual filing a separate return, the preceding sentence shall be applied by substituting '$ 1,250' for '$ 2,500'. In no event shall the applicable percentage exceed 100 percent.

(C) Threshold amount. For purposes of this paragraph, the term 'threshold amount' means--

(i) $ 150,000 in the case of a joint return or a surviving spouse (as defined in section 2(a) [26 USCS § 2(a)]),

(ii) $ 125,000 in the case of a head of a household (as defined in section 2(b) [26 USCS § 2(b)]),

(iii) $ 100,000 in the case of an individual who is not married and who is not a surviving spouse or head of a household, and

(iv) $ 75,000 in the case of a married individual filing a separate return. For purposes of this paragraph, marital status shall be determined under section 7703 [26 USCS § 7703].

(D) Coordination with other provisions. The provisions of this paragraph shall not apply for purposes of determining whether a deduction under this section with respect to any individual is allowable to another taxpayer for any taxable year.

(E) Reduction of phaseout.

(i) In general. In the case of taxable years beginning after December 31, 2005, and before January 1, 2010, the reduction under subparagraph (A) shall be equal to the applicable fraction of the amount which would (but for this subparagraph) be the amount of such reduction.

(ii) Applicable fraction. For purposes of clause (i), the applicable fraction shall be determined in accordance with the following table:

| For taxable years | The applicable beginning in calendar year fraction is |
|---|---|
| 2006 and 2007 | 2/3 |
| 2008 and 2009 | 1/3 |

(F) Termination. This paragraph shall not apply to any taxable year begin ning after December 31, 2009.

(4) Inflation adjustments.

(A) Adjustment to basic amount of exemption. In the case of any taxable year beginning in a calendar year after 1989, the dollar amount contained in paragraph (1) shall be increased by an amount equal to—

(i) such dollar amount, multiplied by

(ii) the cost-of-living adjustment determined under section 1(f)(3) [26 USCS § 1(f)(3)] for the calendar year in which the taxable year begins, by substituting "calendar year 1988" for "calendar year 1992" in subparagraph (B) thereof.

(B) Adjustment to threshold amounts for years after 1991. In the case of any taxable year beginning in a calendar year after 1991, each dollar amount contained in paragraph (3)(C) shall be increased by an amount equal to—

(i) such dollar amount, multiplied by

(ii) the cost-of-living adjustment determined under section 1(f)(3) [26 USCS § 1(f)(3)] for the calendar year in which the taxable year be gins, by substituting "calendar year 1990" for "calendar year 1992" in subparagraph (B) thereof.

***

# A-6

# I.R.C. § 172(b)(2), (c), (d).

**SEC. 172 NET OPERATING LOSS DECUCTION.**

***

(b) Net operating loss carrybacks and carryovers.

***

(2) Amount of carrybacks and carryovers. The entire amount of the net operating loss for any taxable year (hereinafter in this section referred to as the "loss year") shall be carried to the earliest of the taxable years to which (by reason of paragraph (1)) such loss may be carried. The portion of such loss which shall be carried to each of the other tax able years shall be the excess, if any, of the amount of such loss over the sum of the tax able income for each of the prior taxable years to which such loss may be carried. For purposes of the preceding sentence, the taxable income for any such prior taxable year shall be computed--

(A) with the modifications specified in subsection (d) other than paragraphs (1), (4), and (5) thereof, and

(B) by determining the amount of the net operating loss deduction without regard to the net operating loss for the loss year or for any taxable year thereafter, and the taxable income so computed shall not be considered to be less than zero.

***

(c) Net operating loss defined. For purposes of this section, the term "net operating loss" means the excess of the deductions allowed by this chapter [26 USCS §§ 1 et seq.] over the gross income. Such excess shall be computed with the modifications specified in subsection (d).

(d) Modifications. The modifications referred to in this section are as follows:

(1) Net operating loss deduction. No net operating loss deduction shall be allowed.

(2) Capital gains and losses of taxpayers other than corporations. In the case of a taxpayer other than a corporation—

(A) the amount deductible on account of losses from sales or exchanges of capital assets shall not exceed the amount includable on account of gains from sales or exchanges of capital assets; and

(B) the exclusion provided by section 1202 [26 USCS § 1202] shall not be allowed.

(3) Deduction for personal exemptions. No deduction shall be allowed under section 151 [26 USCS § 151] (relating to personal exemptions). No deduction in lieu of any such deduction shall be allowed.

(4) Nonbusiness deductions of taxpayers other than corporations. In the case of a taxpayer other than a corporation, the deductions allowable by this chapter [26 USCS §§ 1 et seq.] which are not attributable to a taxpayer's trade or business shall be allowed only to the extent of the amount of the gross income not derived from such trade or business. For purposes of the preceding sentence--

(A) any gain or loss from the sale or other disposition of

(i) property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 167[26 USCS § 167], or

(ii) real property used in the trade or business,
shall be treated as attributable to the trade or business;

(B) the modifications specified in paragraphs (1), 2(B), and (3) shall be taken into account;

(C) any deduction for casualty or theft losses allowable under paragraph (2) or (3) of section 165(c) [26 USCS § 165(c)] shall be treated as attributable to the trade or business; and

(D) any deduction allowed under section 404 [26 USCS § 404] to the extent attributable to contributions which are made on behalf of an individual who is an employee within the meaning of section 401(c)(1) [26 USCS § 401(c)(1)] shall not be treated as attributable to the trade or business of such individual.

(5) Computation of deduction for dividends received, etc. The deductions allowed by sections 243 [26 USCS § 243] (relating to dividends received by corporations), 244 [26 USCS § 244] (relating to dividends received on certain preferred stock of public utilities), and 245 [26 USCS § 245] (relating to dividends received from certain foreign corporations) shall be computed without regard to section 246(b) [26 USCS § 246(b)] (relating to limitation on aggregate amount of deductions); and the deduction allowed by section 247 [26 USCS § 247] (relating to dividends paid on certain preferred stock of public utilities) shall be computed without regard to subsection (a)(1)(B) of such section.

(6) Modifications related to real estate investment trusts. In the case of any taxable year for which part II of subchapter M [26 USCS §§ 856 et seq.] (relating to real estate investment trusts) applies to the taxpayer--

(A) the net operating loss for such taxable year shall be computed by

taking into account the adjustments described in section 857(b)(2) [26 USCS § 857(b)(2)] (other than the deduction for dividends paid described in section 857(b)(2)(B) [26 USCS § 857(b)(2)(B)]); and

(B) where such taxable year is a "prior taxable year" referred to in paragraph (2) of subsection (b), the term "taxable income" in such paragraph shall mean "real estate investment trust taxable income" (as defined in section 857(b)(2) [26 USCS § 857(b)(2)]).

(7) Manufacturing deduction. The deduction under section 199 [26 USCS § 199] shall not be allowed.

***

# A-7

# I.R.C. § 421(b).

**SEC. 421 GENERAL RULES**

***

(b) Effect of disqualifying disposition. If the transfer of a share of stock to an individual pursuant to his exercise of an option would otherwise meet the requirements of section 422(a) or 423(a) except that there is a failure to meet any of the holding period requirements of section 422(a)(1) or 423(a)(1) [26 USCS § 422(a)(1) or 423(a)(1)], then any increase in the income of such individual or deduction from the income of his employer corporation for the taxable year in which such exercise occurred attributable to such disposition, shall be treated as an increase in income or a deduction from income in the taxable year of such individual or of such employer corporation in which such disposition occurred. No amount shall be required to be deducted and withheld under chapter 24 [26 USCS § § 3401 et seq.] with respect to any increase in income attributable to a disposition described in the preceding sentence.

***

# A-8

# I.R.C. § 422(a)(1).

**SEC. 422 INCENTIVE STOCK OPTIONS**

(a) In general. Section 421(a) [26 USCS § 421(a)] shall apply with respect to the transfer of a share of stock to an individual pursuant to his exercise of an incentive stock option if--

(1) no disposition of such share is made by him within 2 years from the date of the granting of the option nor within 1 year after the transfer of such share to him, and

***

# A-9

# I.R.C. § 1211.

**SEC. 1211 LIMITATION ON CAPITAL LOSSES**

(a) Corporations. In the case of a corporation, losses from sales or exchanges of capital assets shall be allowed only to the extent of gains from such sales or exchanges.

(b) Other taxpayers. In the case of a taxpayer other than a corporation, losses from sales or exchanges of capital assets shall be allowed only to the extent of the gains from such sales or exchanges, plus (if such losses exceed such gains) the lower of--

(1) $ 3,000 ($ 1,500 in the case of a married individual filing a separate return), or

(2) the excess of such losses over such gains.

# A-10

# General Explanation of the Tax Reform Act of 1986, Part 7, 429-439 (May 4, 1987).

MAY 4, 1987

*PUBLIC LAW 99-514; 99th CONGRESS, H.R. 3838*

(Part 7 of 19 Parts); JCS-10-87

{429} TITLE VII - MINIMUM TAX PROVISIONS

Minimum Tax on Corporations and Individuals (Secs. 701-702 of the Act and secs. 53 and 55-59 of the Code) n1

n1 For legislative background of the provision, see: H.R. 3838, as reported by the House Committee on Ways and Means on December 7, 1985, sec. 501; H.Rep. 99-426, pp. 302-328; H.R. 3838, as reported by the Senate Committee on Finance on May 29, 1986, sec. 1101; S.Rep. 99-313, pp. 515-540; and H.Rep. 99-841, Vol. II (September 18, 1986), pp. 250-284 (Conference Report).

*Prior Law*

*Corporate minimum tax*

Under prior law, corporations paid a minimum tax on certain tax preferences. The tax was in addition to the corporation's regular tax. The amount of the minimum tax was 15 percent of the corporation's tax preferences, to the extent that the aggregate amount of these preferences exceeded the greater of the regular income tax paid or $10,000 (Code sec. 56).

*Tax preference items*

The tax preference items included in the base for the minimum tax for corporations were:

(1) For real property, the excess of accelerated over straight-line depreciation, applying the useful life or recovery period prescribed for regular tax purposes (in the case of property eligible for ACRS, 19 years);

(2) For certified pollution control facilities, the excess of 60-month amortization over the amount of depreciation otherwise allowable;

(3) In the case of certain financial institutions, the excess of the bad debt deductions over the amount of those deductions computed on the basis of actual experience;

(4) Percentage depletion to the extent in excess of the adjusted basis of the property; and

(5) 18/46 of the corporation's net capital gain.

For personal holding companies, accelerated depreciation on leased personal property, mining exploration and development costs, circulation expenditures, research and experimental expenditures, and excess intangible drilling costs were also preferences.

When a corporation had a regular tax net operating loss attributable to minimum tax preference items in excess of $10,000, no immediate add-on minimum tax liability was incurred with respect to those preference items. Minimum tax liability was incurred with respect to those preference items when the "preferential" portion of the net operating loss was used to offset regular taxable income, treating this portion as used only after nonpreferential net operating losses had been exhausted.

{430} *Cutback in certain preferences*

In addition to imposing an add-on minimum tax, prior law (sec. 291) imposed a cutback in the use of certain corporate tax preferences for regular tax purposes. Adjustments were made to the corporate minimum tax to prevent the combination of that tax and the cutback provision from unduly reducing the tax benefit from a preference. The cutback applied, with differing percentage reductions, to the following items: (1) certain excess depletion for coal and iron ore, (2) the portion of bad debt reserves deducted by financial institutions that exceeded deductions allowable under the experience method, (3) certain interest deductions of financial institutions that were allocable to purchasing or holding certain tax-exempt obligations, (4) a foreign sales corporation's (FSC) exempt foreign trade income, (5) the reduction of recapture, under section 1250, for depreciation deductions relating to real estate, (6) for pollution control facilities, the excess of the amortization deductions allowed over the depreciation deductions that would otherwise apply, (7) intangible drilling cost deductions of integrated oil companies, and (8) the expensing of mineral exploration and development costs.

*Individual minimum tax*

Under prior law, individuals were subject to an alternative minimum tax which was payable, in addition to all other tax liabilities, to the extent that it exceeded the individual's regular tax owed. n2 The tax was imposed at a flat rate of 20 percent on alternative minimum taxable income in excess of the exemption amount. However, the amount so determined was reduced by the foreign tax credit and the refundable credits.

n2 A taxpayer's regular tax meant the taxes imposed by chapter 1 of the Code (other than the alternative minimum tax, the investment credit recapture tax (sec. 47), the taxes applicable in some instances for annuities (sec. 72(m)(5)(B) and 72(q)), lump sum distributions from qualified pension plans (sec. 402(e)), individual retirement accounts (sec. 408(f)), and certain trust distributions (sec. 667(b)), reduced by all nonrefundable credits including the foreign tax credit.

Alternative minimum taxable income generally was equal to regular tax adjusted gross income, as increased by certain tax preferences and decreased by the alternative tax itemized deductions. The exemption amount, which was subtracted from alternative minimum taxable income before applying the 20 percent rate, was $40,000 for joint returns, $20,000 for married individuals filing separately, and $30,000 for single returns.

*Tax preference items*

The tax preference items that were added to the adjusted gross income base for purposes of the alternative minimum tax on individuals were:

(1) Dividends excluded from gross income under section 116, which permitted individuals to exclude dividends received in an amount not to exceed $100 ($200 for a joint return);

(2) For real property, the excess of accelerated over straight-line depreciation, applying the useful life or recovery period prescribed for regular tax purposes (in the case of property eligible for ACRS, 19 years);

{431} (3) For leased personal property, the excess of accelerated depreciation over depreciation calculated under the straight-line method, with the latter being determined, in the case of property eligible for ACRS, by applying useful lives or recovery periods of five years for three-year property, eight years for five-year property, 15 years for 10-year property, and 22 years for 15-year public utility property;

(4) For certified pollution control facilities, the excess of 60-month amortization over the amount of depreciation otherwise allowable;

(5) For mining exploration and development costs (other than those relating to an oil or gas well) that were expensed, the excess of the deduction claimed over that allowable if the costs had been capitalized and amortized ratably over a 10-year period;

(6) For circulation expenditures (relating to newspapers, magazines and other periodicals) that were expensed, the excess of the deduction claimed over that allowable if the amounts had been capitalized and amortized ratably over a three-year period;

(7) For research and experimentation expenditures that were expensed, the excess of the deduction claimed over that allowable if the amounts had been capitalized and amortized ratably over a 10-year period;

(8) Percentage depletion to the extent in excess of the adjusted basis of the property;

(9) For net capital gains, the portion (i.e., 60 percent) deducted from gross income under section 1202, except that gain from the sale or exchange of the taxpayer's principal residence was not taken into account;

(10) For incentive stock options, the excess of the fair market value received through the exercise of an option over the exercise price; and

(11) For intangible drilling costs (relating to oil, gas, and geothermal properties) that were expensed, the amount by which the excess portion of the deduction (i.e., the excess of the deduction claimed over that allowable if the costs had been capitalized and amortized ratably over a 10-year period) exceeded the amount of net oil and gas income.

For certain of these preferences, individuals could elect for regular tax purposes to take a deduction ratably over 10 years (three years in the case of circulation expenditures) and thereby to avoid treatment of the item subject to the election as a minimum tax preference. The preferences, in addition to circulation expenditures, with respect to which such an election could be made were research and experimental expenditures, intangible drilling and development costs, and mining exploration and development costs. In addition, the ACRS provisions themselves allowed certain similar elections. n3 In general, a principal reason for making such an election was to preserve for later years the value of an otherwise preferential deduction that would not benefit the taxpayer in the year

{432} when the election was made, because the taxpayer was subject to the alternative minimum tax.

n3 Moreover, in the case of intangible drilling costs, a taxpayer (other than a limited partner or a passive subchapter S shareholder) could elect to forego the expense deduction and claim five-year ACRS and the investment tax credit instead. A taxpayer making this election was not subject to the minimum tax on these items.

*Alternative tax itemized deductions*

Certain of the itemized deductions allowable in calculating regular taxable income were allowable as well for purposes of calculating alternative minimum taxable income. The alternative tax itemized deductions were:

(1) Casualty or theft losses, and gambling losses to the extent not in excess of gambling gains;

(2) Charitable deductions, to the extent allowable for regular tax purposes;

(3) Medical deductions, to the extent in excess of 10 percent of adjusted gross income;

(4) Qualified interest expenses, which were limited to (a) qualified housing interest (i.e., interest incurred to acquire, construct, or rehabilitate a primary residence or other qualified dwelling used by the taxpayer), plus (b) other interest expenses deducted by the taxpayer, but only to the extent not in excess of qualified net investment income for the year; n4 and

(5) Deductions for estate tax attributable to income in respect of a decedent.

n4 Since this limitation applied only to itemized deductions for interest expenses, it generally had no effect on interest deductions that were claimed "above-the-line," such as business interest and interest attributable to the production of rents and royalties. Interest to carry limited partnership interests and S corporation stock was treated as an itemized deduction, however.

Other regular tax itemized deductions, such as those for state and local taxes paid and for certain investment expenses, were not allowed for minimum tax purposes.

*Credits and NOLs*

In calculating minimum tax liability, no nonrefundable credits were allowed except for the foreign tax credit. The limitation on the foreign tax credit applying for regular tax purposes (which, in general, prevented use of the credit to offset a greater percentage of one's tax liability than the percentage of taxable income that is foreign source income) applied for minimum tax purposes as well, but was recalculated to reflect the percentage of minimum taxable income coming from foreign sources. Credits that did not benefit the taxpayer due to the imposition of minimum tax liability could be carried back or forward to other taxable years.

Individuals with net operating losses were allowed to deduct such losses against alternative minimum taxable income. However, for years beginning after 1982 the losses were computed, for minimum tax purposes, by reducing the regular tax net operating losses by the amount of the items of tax preference.

*Reasons for Change*

Congress concluded that the minimum tax should serve one overriding objective: to ensure that no taxpayer with substantial economic income can avoid significant tax liability by using exclusions, deductions, and credits. Although these provisions may provide incentives for worthy goals, they become counterproductive {433} when taxpayers are allowed to use them to avoid virtually all tax liability. The ability of high-income taxpayers to pay little or no tax undermines respect for the entire tax system and, thus, for the incentive provisions themselves. In addition, even aside from public perceptions, Congress concluded that it is inherently unfair for high-income taxpayers to pay little or no tax due to their ability to utilize tax preferences.

In particular, Congress concluded that both the perception and the reality of fairness have been harmed by instances in which corporations paid little or no tax in years when they reported substantial earnings, and may even have paid substantial dividends, to shareholders. Even to the extent that these instances may reflect deferral, rather than permanent avoidance, of corporate tax liability, Congress concluded that they demonstrated a need for change.

Congress viewed the minimum taxes under prior law as not adequately addressing the problem, principally for two reasons. First, the corporate minimum tax, as an add-on rather than an alternative tax, was not designed to define a comprehensive income base. Second, the prior law minimum taxes did not sufficiently approach the measurement of economic income. By leaving out many important tax preferences, or defining preferences overly narrowly, the individual and corporate minimum taxes permitted some taxpayers with substantial economic incomes to report little or no minimum taxable income and thus to avoid all liability.

Certain of the tax preferences under prior law applied only to individuals, or only to individuals and personal holding companies. Congress concluded that, in most cases where both individuals and corporations can benefit from a preference for regular tax purposes, the preference should be included in minimum taxable income by both.

With regard to the preference relating to the expensing of research and experimentation expenditures, however, Congress concluded that, for incentive reasons, corporations, including personal holding companies, should not be required to treat such expensing as a preference. At the same time, Congress concluded that such expensing should continue to be treated as a preference for individuals, because of the use of such expensing in tax shelters.

With respect to certain items that constituted tax preferences, at least for some taxpayers, under prior law, Congress concluded that the previous definitions of the preferences were inadequate. In the case of accelerated depreciation on real and personal property, Congress concluded that the useful lives of items of real and personal property generally are longer than the useful lives applying under prior law for minimum tax purposes. Thus, application of such useful lives gave rise to mismeasurement of economic income. At the same time, for incentive reasons, Congress concluded that in most cases taxpayers should not be required to use the straightline method for minimum tax purposes, so long as the method used is not more preferential than that generally applying for regular tax purposes.

With respect to intangible drilling costs, Congress concluded that taxpayers should not be permitted to use the preference to offset all net oil and gas income before being required to include it in the minimum tax base. However, for incentive reasons relating to the {434} financial hardships currently being experienced by the oil and gas industry, Congress concluded that the preference

should not be includable in minimum taxable income in full; i.e., the net income offset should be retained in part.

In addition, Congress concluded that certain items, not presently treated as preferences, must be added to the minimum tax base in order for it to serve its intended purpose of requiring taxpayers with substantial economic incomes to pay some tax. The items as to which Congress reached this determination include tax-exempt interest on newly issued private activity bonds (other than those issued on behalf of a section 501(c)(3) organization), use of the completed contract method of accounting, untaxed appreciation deducted with respect to charitable contributions of appreciated property, use of the installment method by certain taxpayers, and the use of tax-favored capital construction funds by shipping companies.

In order to prevent individuals with substantial economic incomes from avoiding liability through the use of tax shelters, Congress concluded that the use of net losses from passive business activities should be limited for minimum tax purposes under rules similar to those applying for regular tax purposes. Both specific minimum tax preferences and limitations on the use of passive losses were considered necessary to ensure that individuals with substantial economic incomes would pay tax whether they used preferences to offset tax on income from a single business activity, or used losses from one activity to offset income from another.

In the case of farming losses of individuals not materially participating in the farming business, Congress concluded that an additional and stricter rule should apply for minimum tax purposes, preventing any loss with respect to a passive farming activity from offsetting other income of the taxpayer prior to disposition. Congress concluded that such a rule was needed, in addition to the general passive loss rules applying for regular and minimum tax purposes, in light of the harm to taxpayers active in the farming business that has resulted from the proliferation of tax shelter farming activities exploiting the competitive cost advantage of passive investors who can use tax losses derived from farming to offset unrelated income.

With respect to corporations, Congress concluded that the goal of applying the minimum tax to all companies with substantial economic incomes cannot be accomplished solely by compiling a list of specific items to be treated as preferences. In order to achieve both real and apparent fairness, Congress concluded that there must be a reasonable certainty that, whenever a company publicly reports significant earnings, that company will pay some tax for the year.

For the years from 1987 through 1989, Congress concluded that this goal should be accomplished by means of a preference based upon financial statement or book income reported by the taxpayer pursuant to public reporting requirements or in disclosures made for nontax reasons to regulators, shareholders, or creditors. Congress concluded that it was particularly appropriate to base minimum tax liability in part upon book income during the first three years after enactment of the Act, in order to ensure that the Act will succeed in restoring public confidence in the fairness of the tax system.

{435} For taxable years beginning after 1989, Congress concluded that the book income preference should be replaced by the use of a broad-based system that is specifically defined by the Internal Revenue Code. Congress intended that this system should generally be at least as broad as book income, as measured for financial reporting purposes, and should rely on income tax principles in order to facilitate its integration into the general minimum tax system.

Congress concluded that the definition of earnings and profits applying for certain regular tax purposes (and amended in several respects by the Act) provided an appropriate starting point in this regard. However, Congress concluded that the definition of earnings and profits required adjustment, for minimum tax purposes, in the interest both of clarification and of conformity to policy objectives of the Internal Revenue Code, including the minimum tax and the book income preference in particular.

Clarification regarding the meaning of earnings and profits, for this statutory purpose, was viewed as necessary due to the lack of legal authorities resolving numerous issues regarding the scope of earnings and profits under present law. In all cases where such clarification is provided, Congress intended that no inference be drawn regarding the scope of earnings and profits under present law or for other statutory purposes.

Moreover, Congress concluded that guidance was needed regarding the treatment of items arising prior to the effective date of the preference, both to assist taxpayers that have not previously computed earnings and profits on an annual basis and in order to conform the preference more closely to the scope of the book income preference, which applies to property placed in service prior to the effective date. Congress viewed it as inappropriate to permit taxpayers to claim deductions for purposes of the preference that are duplicative of deductions claimed for regular or minimum tax purposes in years when the preference did not apply.

In general, Congress concluded that conforming the measurement of earnings and profits to the policy purposes of the Internal Revenue Code requires disallowing deductions that are disallowed for regular tax purposes (e.g., bribes). In addition, in light of the purpose of the preference to include income that otherwise would escape current taxation, Congress concluded that (on a cumulative basis) the income base for the preference should never be narrower than that otherwise applying for minimum tax purposes. In certain circumstances where income is defined more broadly for financial reporting purposes than for any tax purposes, Congress concluded that financial reporting definitions should apply, in order to prevent the avoidance of taxation by companies that report earnings to regulators, shareholders, or creditors.

A further change that Congress viewed as necessary relates to the use of investment tax credits to offset minimum tax liability. In general, under the Act as well as prior law, incentive credits are not permitted to offset such liability, since their allowance would be inconsistent with the goal of taxing economic income. In the case of investment tax credits, however, Congress concluded that some transitional relief was desirable, in order to assist corporations whose investment tax credits might otherwise expire unused due to the newly enacted corporate minimum tax.

{436} In addition, Congress concluded that a change was necessary with regard to the use of net operating losses, foreign tax credits, and investment tax credits to avoid all U.S. tax liability. Absent a special rule, a U.S. taxpayer with substantial economic income for a taxable year potentially could avoid all U.S. tax liability for such year so long as it had sufficient such credits and losses available. While Congress viewed allowance of the foreign tax credit and net operating loss deduction, along with the transitional relief relating to the investment tax credit, as generally appropriate for minimum tax purposes, it was considered fair to mandate at least a nominal tax contribution from all U.S. taxpayers with substantial economic income.

Finally, Congress concluded that it was desirable to change the underlying structure of the minimum tax in certain respects. In particular, to the extent that tax preferences reflect deferral,

rather than permanent avoidance, of tax liability, some adjustment was considered necessary with respect to years after the taxpayer has been required to treat an item as a minimum tax preference, and potentially to incur minimum tax liability with respect to the item. Absent such an adjustment, taxpayers could lose altogether the benefit of certain deductions that reflect costs of earning income.

*Explanation of Provisions*

1. Overview

The Act repeals the prior law add-on minimum tax for corporations beginning in 1987, creates a new alternative minimum tax on corporations, and expands the alternative minimum tax on individuals.

*Corporations.* - Generally, the tax base for the alternative minimum tax on corporations is the taxpayer's taxable income, n5 increased by the taxpayer's tax preferences for the year and adjusted by determining the tax treatment of certain items in a special manner which negates the deferral of income resulting from the regular tax treatment of those events. The resulting amount, called alternative minimum taxable income, then is reduced by an exemption amount and is subject to tax at a 20-percent rate. The amount so determined may then be offset by the minimum tax foreign tax credit, and to a limited extent by investment tax credits. These rules are designed to ensure that, in each taxable year, the taxpayer generally must pay tax equalling at least 20 percent of an amount more nearly approximating its economic income (above the exemption amount). The exemption amount is $40,000, reduced (but not below zero) by 25 percent of the amount by which alternative minimum taxable income exceeds $150,000.

n5 Where a corporation's tax base is measured by something other than taxable income, such as unrelated business taxable income, real estate investment trust taxable income, or life insurance company taxable income, alternative minimum taxable income is determined using that tax base. A technical correction may be appropriate to clarify this result.

The net minimum tax, or amount of minimum tax due, is the amount by which the tax computed under this system (the tentative {437} minimum tax) exceeds the taxpayer's regular tax. n6 Although the minimum tax is, in effect, a true alternative tax, in the sense that it is computed by applying an alternative rate to an alternative income base and then paying it if and only if it exceeds the regular tax, technically the taxpayer's regular tax continues to be imposed, and the net minimum tax is added on.

n6 A taxpayer's regular tax means the regular tax liability as defined in section 26(b) reduced by the foreign tax credit. It does not include the tax on lump sum distributions under section 402(e) or the recapture taxes under sections 42 and 47. In addition, it is intended that the regular tax be reduced for this purpose by the possessions tax credit under section 27(b) since income eligible for the credit is not in the minimum tax base. A technical correction will be needed to achieve this result.

*Individuals.* - The structure for the alternative minimum tax on individuals generally is the same as under prior law, except that adjustments are made to reflect the fact that certain deferral preferences (such as accelerated depreciation) cannot be treated simply as add-ons if total income is to be computed properly over time. n7 For such preferences, the minimum tax deduction may in some

instances exceed the regular tax deduction (e.g., in the later years of an asset's life), thus ensuring that basis will be fully recovered under both the regular and the minimum tax systems. The alternative minimum tax on individuals differs from that applying to corporations in several respects. For example, the rate is 21 percent and there are some differences between the preferences applying to individuals and those applying to corporations. In addition, certain itemized deductions that individuals can claim for regular tax purposes are not allowable under the minimum tax. While the exemption amounts for individuals under prior law generally are retained, they are reduced (but not below zero) by 25 percent of the amount by which alternative minimum taxable income exceeds $150,000 ($75,000 for married taxpayers filing separately and trusts, and $112,500 for single taxpayers).

n7 As a technical matter, alternative minimum taxable income is computed by making adjustments to taxable income, rather than adjusted gross income, as under prior law, in order to conform the structure of the individual minimum tax with the corporate minimum tax.

*Minimum tax credit.* - When a taxpayer pays alternative minimum tax, the amount of such tax paid (i.e., the net minimum tax) is allowed as a credit against the regular tax liability of the taxpayer in subsequent years. However, this credit (known as the minimum tax credit) cannot be used to reduce tax below the tentative minimum tax in subsequent years. The minimum tax credit applies only to minimum tax liability incurred due to deferral preferences (such as accelerated depreciation), i.e., preferences for which the timing, rather than the amount over time, of a deduction or inclusion gives rise to its treatment as a tax preference.

*Normative elections.* - Taxpayers generally may elect to have the minimum tax treatment of certain expenditures apply for regular tax purposes. When an election is made, no preference is added or treated as an adjustment for minimum tax purposes.

*Incentive credits.* - Nonrefundable credits (such as the investment tax credit) generally cannot be used to reduce regular tax liability to less than the tentative minimum tax. Credits that cannot be used by the taxpayer due to the effect of the alternative minimum tax can be carried over to other taxable years under the rules generally applying to credit carryovers. In order to provide transition {438} relief, corporations are permitted to use regular investment tax credits to offset up to 25 percent of minimum tax liability.

*Separate computation of foreign tax credits and net operating losses for minimum tax purposes.* - In general, foreign tax credits and net operating losses are allowed for minimum tax purposes under rules similar in effect to those applying for regular tax purposes. As under the prior law alternative minimum tax on individuals, the amounts of these items are separately computed for regular and alternative minimum tax purposes, respectively. Thus, the amount of such credits or losses accruing to or used by the taxpayer in a particular year may differ under the two systems.

*Limitation on use of credits and losses to offset minimum tax liability.* - Under the Act, net operating losses, foreign tax credits, and investment tax credits cannot be used to offset, in the aggregate, more than 90 percent of the minimum tax liability that otherwise would be imposed (disregarding the reduction of such liability by the amount of the taxpayer's regular tax liability).

*Structure of minimum tax as an alternative system.* - For most purposes, the tax base for the new alternative minimum tax is determined as though the alternative minimum tax were a separate and

independent income tax system. Thus, for example, where a Code provision refers to a "loss" of the taxpayer from an activity, for purposes of the alternative minimum tax the existence of a loss is determined with regard to the items that are includable and deductible for minimum tax, not regular tax, purposes. n8

n8 However, "structural" issues such as whether there has been a taxable event, or whether a particular nonrecognition provision applies, generally are determined identically for regular tax and minimum tax purposes (disregarding, e.g., the situation where a nonrecognition applies only to gains, or only to losses, and a gain or loss, as the case may be, exists only for regular tax, or only for minimum tax, purposes).

In certain instances, the operation of the alternative minimum tax as a separate and independent tax system is set forth expressly in the Code. With respect to the passive loss provision, for example, section 58 provides expressly that, in applying the limitation for minimum tax purposes, all minimum tax adjustments to income and expense are made and regular tax deductions that are items of tax preference are disregarded.

In other instances, however, where no such express statement is made, Congress did not intend to imply that similar adjustments were not necessary. Thus, for example, for minimum tax purposes it was intended that section 1211 (limiting capital losses) be computed using minimum tax basis, that section 263A (requiring the capitalization of certain depreciation deductions to inventory) apply with regard to minimum tax depreciation deductions, and that section 265 (relating to expenses of earning tax-exempt income) apply with regard only to items excludable from alternative minimum taxable income. n9

n9 Due to the complexity and additional recordkeeping burdens that may result in some cases from such alternative computations, the Treasury may find it appropriate to prescribe regulations that ease compliance. Congress intended that the Treasury have some flexibility in prescribing regulations in this area, to the extent consistent with the intended substantive results.

{439} 2. Preferences and adjustments applying to both individuals and corporations

*Depreciation*

Depreciation on real and personal property to which the new ACRS system applies (generally, property placed in service after 1986) is calculated by using the alternative depreciation system, as described in the depreciation section of this explanation. Generally alternative depreciation is calculated using the applicable ADR midpoint life (forty years in the case of real property). n10 Instead of making an adjustment for each item of property in the amount (if any) by which the regular tax deduction exceeds the normative deduction (as under prior law), the alternative depreciation deduction is substituted for the regular tax ACRS deduction. The principal effect of this system is that it permits "netting", that is, to the extent that an alternative deduction relating to an item of property exceeds the regular tax deduction for that year, a negative adjustment to regular taxable income results. n11

n10 The alternative depreciation system system applies with respect to property leased by a taxable entity to a tax-exempt entity, property placed in service outside of the United States, in measuring depreciation for purposes of determining earnings and profits, and under an election to use the system for regular tax purposes.

n11 Alternative deductions typically exceed ACRS deductions in the later years of the useful life of an item of property for which ACRS is allowed; i.e., at such time the ACRS deduction typically is understated because it has been overstated in prior taxable years.

For minimum tax purposes, as opposed to other purposes for which the alternative depreciation system is relevant, depreciation for certain property is calculated using the 150 percent declining balance method (switching to straightline in the year necessary to maximize the allowance), rather than the straightline method. The 150 percent declining balance method is used with respect to property other than (1) section 1250 property and (2) property with respect to which the taxpayer elects or is required to use a straightline method (over any useful life) for regular tax purposes.

As an exception to the general rule treating ACRS on post-1986 property as a preference, no adjustment is made for minimum tax purposes with respect to property described in paragraph (1), (2), (3), or (4) of section 168(f) (e.g., property depreciated under the units of production method or the income forecast method, etc.). n12

n12 Property placed in service after 1986 to which the anti-churning rules of section 168(f)(5) apply is subject to the new minimum tax depreciation rules.

For all depreciable property to which minimum tax adjustments apply, alternative minimum tax depreciation is controlling for all minimum tax purposes with respect to which the amount of depreciation claimed is relevant. Thus, the adjusted basis of property may differ for regular and minimum tax purposes, giving rise to differing amounts of gain as between the two systems upon the disposition of such property. Similarly, the amount of depreciation that is capitalized to inventory under the uniform capitalization rules (described in Title VIII of this Part) may differ for regular and minimum tax purposes. Further, the restoration of deferred gain or loss for property subject to depreciation under the consolidated return regulations (Treas. Reg. sec. 1.1502-13(d)) may differ for purposes of computing taxable income and alternative minimum taxable income.

***

*Effective Date*

These provisions apply to taxable years beginning after December 31, 1986.

*Revenue Effect*

With respect to individuals, the provision is estimated to increase fiscal year budget receipts by $848 million in 1987, $3,904 million in 1988, $2,251 million in 1989, $862 million in 1990, and $334 million in 1991.

With respect to corporations, the provision is estimated to increase fiscal year budget receipts by $3,087 million in 1987, $5,378 million in 1988, $5,072 million in 1989, $4,466 million in 1990, and $4,155 million in 1991.

# A-11

UNITED STATES TAX COURT

| | | |
|---|---|---|
| MARK SPITZ, Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent. | ) | Docket No. 4075-05 |

**RESPONDENT'S EXPLANATION OF THE COMPUTATIONS SUBMITTED UNDER TAX COURT RULE 155**

Pursuant to the Court's Order of January 12, 2007, respondent offers the following explanation of the computations submitted under Tax Court Rule 155 in this case.

On January 11, 2007, the parties had a conference call with the Court where the Court asked the parties to explain the differences in their respective computations. During the call, respondent's counsel maintained that the parties' computations differed with respect to wages, capital gain, and the calculation of the Alternative Minimum Tax (AMT).

Attached as Exhibit 1-R, for the Court's review is an eleven page document designed to explain how respondent arrived at the computations he submitted for the 2000 tax year. Page one of Exhibit 1-R is the Form 5278, Statement—Income Tax Changes, submitted with respondent's corrected computation for entry of decision on or about December 1, 2006.

Page 2 of Exhibit 1-R provides a list of issues where petitioner's and respondent's computations for 2000 differ. Page

2 also provides brief explanations of the differences between petitioner's and respondent's computations.

Page 3 of Exhibit 1-R provides detail for the explanations on page 2.

Page 4 of Exhibit 1-R was submitted with respondent's original computation for entry of decision filed on or about November 8, 2006, and that calculation has remained the same since that filing. Respondent's computation of the itemized deductions and the difference between that computation and petitioner's is statutorily driven by the other differences between the parties' computations.

Pages 5 and 6 of Exhibit 1-R is a pro-forma schedule D created to show the Court how respondent calculates the regular tax from petitioner's exercise of his options and the sales of the shares acquired in 2000.

Pages 7 and 8 of Exhibit 1-R is a pro-forma schedule D created to show the Court how respondent calculates the AMT from petitioner's exercise of his options and the sale of the shares acquired in 2000.

Pages 9 through 11 of Exhibit 1-R are a pro-forma Form 6251, Alternative Minimum Tax—Individuals, created to show the Court how respondent calculated the AMT in this case.

With respect to the AMT calculation, the parties agree that line 3 of the Form 6251, taxes should be $69,313. Where the

parties differ is on lines 9 and 10 of the Form 6251 and this difference leads ultimately to a difference in calculating the correct AMT.

The fundamental difference between respondent's AMT calculation and that submitted by petitioner is approximately $36,622, which amount represents the parties disagreement as to how to properly report adjustments to the AMT from an AMT schedule D when there are Incentive Stock Option disqualifying dispositions. Respondent calculates gain for regular tax purposes as $132,649.64 and AMT gain as $169,270. See pages 5 through 8 of Exhibit 1-R. The difference between regular gain, 132,649.64 and AMT gain, $169,269 is $36,622, which amount respondent maintains should be a positive adjustment to Form 6251, line 9. This would be a positive adjustment to regular taxable income which is used to properly calculate the AMT income.

The difference of $36,622 increases AMT income which is netted with $108,248 of income included as compensation from ISO disqualifying dispositions which results in a difference of $71,626 ($108,248 - $36,622). This $71,626 should be a negative number on line 9 of the Form 6251.

Since $108,248 was reported as part of the $292,691 (regular income from ISO disqualifying dispositions), then that $108,248 should not be included in calculating AMT income.

Accordingly, respondent calculates a decrease in regular taxable income by $108,248 to arrive at the correct AMT income.

When petitioner sold shares in 2000, respondent divided those shares into groups, see page 3, Exhibit 1-R. One group was exercised on November 30, 1999, and sold on February 28, 29, and March 27, 2000, creating $108,248 of ordinary income compensation which respondent accounted for in calculating the AMT for the Form 6251.

The other groups of shares were exercised and sold in 2000 and do not have a direct impact on calculating the AMT. Respondent maintains that when there is an ISO exercised in an earlier year and sold in a subsequent year, an adjustment must be made to reflect the difference in basis between regular tax and AMT. In this case with respect to the disqualifying disposition exercised in November 1999 and sold in February and March 2000, the sales price was greater than the fair market value at date of exercise which creates a capital gain which petitioner has eliminated from his calculations.

With respect to the 2001 year, the parties agree there is an overpayment due petitioner but respondent maintains the overpayment should be $7,768 rather than the $17,184 asserted by petitioner. According to respondent's records, $9,416 of the 17,184 overpayment claimed by petitioner's computations was applied to petitioner's income tax liability for the 2000 tax

year on April 15, 2002. On January 11, 2007, respondent's counsel ordered a literal transcript of petitioner's 2001 tax year from respondent's Refund Litigation Unit at respondent's Fresno Service Center. The transcript order was to be processed on an expedited basis.

On January 18, 2007, respondent's counsel had not received the literal/plain English transcript. Accordingly, respondent's counsel contacted respondent's Fresno Service Center's Refund Litigation Unit and was informed that the literal/plain English transcript had yet to arrive. Respondent's counsel confirmed with the Unit that the transcript was being processed on an expedited basis.

Upon learning the literal/plain English transcript would not be available for filing with the Court by January 19, 2007, respondent's counsel called petitioner's counsel and informed petitioner's counsel of the delay in receiving the subject transcript. Respondent's counsel told petitioner's counsel that the transcript should be available within the next two weeks and that a copy would be immediately provided to the Court and petitioner's counsel.

Petitioner's counsel had no objection to this arrangement.

DONALD L. KORB
Chief Counsel
Internal Revenue Service

Date: JAN 18 2006

By: ______________________
KIRK M. PAXSON
Senior Attorney,
(Tax Exempt & Government
Entities)
Tax Court Bar No. PK0089
300 North Los Angeles Street
3018 Federal Building
Los Angeles, CA 90012
Telephone: (213) 894-3027 x170

OF COUNSEL:
NANCY J. MARKS
Division Counsel/Associate Chief Counsel
(Tax Exempt & Government Entities)
CHARLES W. JEGLIKOWSKI
Area Counsel (Tax Exempt & Government Entities: PC)

| Form 5278 (Rev.July 1992) | Department of the Treasury -- Internal Revenue Service **Statement -- Income Tax Changes** | Return Form No. 1040 | Schedule No. 1 |
|---|---|---|---|

| Name of Taxpayer | | | |
|---|---|---|---|
| MARK L. SPITZ | ☐ Notice of Deficiency | | |
| SSN: 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 | ☒ Rule 155 Computation | | |
| | Tax Years Ended | | |
| 1. Adjustments to income | 12/31/2000 | 12/31/2001 | |
| a. Wages | (134,023.00) | | |
| b. Capital Gain/Loss | 87,734.00 | | |
| c. itemized Deductions | 204,709.00 | (224,879.00) | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| h. | | | |
| 2. Total adjustments | 158,420.00 | (224,879.00) | |
| 3. Taxable income per return or as previously adjusted | 323,445.00 | 734,181.00 | |
| 4. Taxable income as revised | 481,865.00 | 509,302.00 | |
| 5. Tax -- From Tax Rates (Head of Household filing status) | 165,792.00 | | |
| 6. Alternative tax -- Schedule D (Head of Household filing status) | | 98,235.00 | |
| 7. Corrected tax liability (lesser of line 5 or line 6) | 165,792.00 | 98,235.00 | |
| 8. Less credits a. Foreign tax credit | (22.00) | | |
| b. Prior year minimum tax credit | | (96,751.00) | |
| c. | | | |
| 9. Balance (line 7 less lines 8) | 165,770.00 | 1,484.00 | |
| 10. Plus additional taxes a. Alternative minimum tax | 982,459.00 | | |
| b. | | | |
| c. | | | |
| 11. Total corrected income tax liability *(line 9 plus amount on lines 10a - c)* | 1,148,229.00 | 1,484.00 | |
| 12. Total tax per return | 972,864.00 | 9,252.00 | |
| 13. Adjustment to: | | | |
| 14. Increase or (decrease) in tax *(Line 11 minus line 12 adjusted by line 13)* | 175,365.00 | (7,768.00) | |
| 15. Additions to the tax / Penalty IRC Section 6662 | None | None | |

Form 5278

EXHIBIT 1-R
Docket No. 4075-05

page 1

| Form 886A | Department of the Treasury—Internal Revenue Service<br>Explanation of Items | Schedule No. or Exhibit |
|---|---|---|
| Name of Taxpayer<br>Mark Spitz | | Year/Period Ended<br>200012 |

**ISSUES:**

1) Wages:

| | |
|---|---|
| Per Amended 1040 return | $563,974 |
| Per Examination | 429,950 |
| Adjustment | $134,024 |

Examination results include W-2 wages of $137,261 plus ISO income of $262,691. See attached spreadsheet for ISO income details on page 3 Column 6. Petitioner's 155 Computations reflect wages of $137,261.

2) Capital Gain: (Schedule D)

| | |
|---|---|
| Per Amended 1040 Return | $ 44,914 |
| Per Examination | 132,649 |
| Adjustment | $ 87,735 |

Examination results include gains from non ISO transactions and gains from the Disqualified Dispositions in which the Sales Price exceeded the FMV at date of exercise. See attached spreadsheet for capital gain details on page 3 Column 7. Petitioner's 155 Computations reflect capital gains of $44,914.

3) Itemized Deductions:

| | |
|---|---|
| Per Amended 1040 Return | $293,547 |
| Per Examination | 88,838 |
| Adjustment | $204,709 |

Taxes were the only item that was adjusted. The amended return claimed a deduction for $275,410 and the amount allowed per the examination was $69,313. Therefore, the adjustment was $206,097. The adjustment on the audit report is different because of the statutory limitations due to the increase in AGI.

4) Form 6251: Alternative Minimum Tax

| | |
|---|---|
| Per Amended 1040 Return | $869,828 |
| Per Examination | 982,460 |
| Adjustment | $112,632 |

See attached proforma calculations for regular income tax Schedule D, AMT Schedule D, and Alternative Minimum Tax on Form 6251 with explanations.

***Spitz 2000***

**Exercised 11/30/99**
Disqualified Dispositions          Sales Price > FMV at date of Exercise

| 1 Shares # | 2 Sale Date | 3 Gross Sales Price | 4 Purchase Price (Basis) | 5 FMV | 6 Gain= Compensation | 7 Capital Gain |
|---|---|---|---|---|---|---|
| 300 | 2/28/2000 | 36,073.80 | 405.99 | 27,468.00 | 27,062.01 | 8,605.80 |
| 450 | 2/29/2000 | 56,448.00 | 608.98 | 41,202.00 | 40,593.00 | 15,246.00 |
| 450 | 3/27/2000 | 71,667.90 | 608.98 | 41,202.00 | 40,593.00 | 30,465.90 |
| 1,200 | | 164,189.00 | 1,623.95 | 109,872.00 | 108,248.00 | 54,317.70 |
| | | | | | IRC 421(b) | |

In this situation where Sales Price > FMV ordinary income is limited up to the amount of FMV. The amount over FMV up to Sales Price is capital gain. Only this group of shares include prior year AMT.

**Exercised 2/11/2000**
Disqualified Dispositions          Sales Price < FMV at date of Exercise

| | | | | | | |
|---|---|---|---|---|---|---|
| 100 | 4/28/2000 | 10,387.15 | 135.33 | 11,500.00 | 10,251.82 | |
| 100 | 4/28/2000 | 10,387.15 | 135.33 | 11,500.00 | 10,251.82 | |
| 500 | 5/17/2000 | 45,276.00 | 676.65 | 57,500.00 | 44,499.35 | |
| 700 | | 66,050.30 | 947.31 | 80,500.00 | 65,102.99 | |
| | | | | | IRC 422{c}(2) | |

**Exercised 2/11/2000**
Disqualified Dispositions          Sales Price > FMV at date of Exercise

| | | | | | | |
|---|---|---|---|---|---|---|
| 350 | 3/27/2000 | 55,741.70 | 473.65 | 40,253.50 | 39,779.84 | 15,488.20 |
| 200 | 3/29/2000 | 33,473.88 | 270.66 | 23,002.00 | 22,731.34 | 10,471.88 |
| 500 | 6/21/2000 | 64,962.85 | 676.65 | 57,505.00 | 56,828.35 | 7,457.85 |
| 1,050 | | 154,178.43 | 1,420.96 | 120,760.50 | 119,339.54 | 33,417.93 |
| | | | | | IRC 421(b) | |

| | | |
|---|---|---|
| | 108,248.00 | 54,317.70 |
| | 65,102.99 | |
| | 119,339.54 | 33,417.93 |
| Total Compensation and Gain = | **292,690.53** | **87,735.63** |

page 3

| | | |
|---|---|---|
| Name Of Taxpayer: Mark Spitz | | 08/23/2005 |
| Identification Number: 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 | Total | 6.20.00 |

## 2000 - SCHEDULE A - ITEMIZED DEDUCTIONS

| | PER RETURN | PER EXAM | ADJUSTMENT |
|---|---|---|---|
| 1. Medical, dental and insurance premiums | 0.00 | 0.00 | 0.00 |
| 2. 7.50% of Adjusted Gross Income | 46,274.00 | 42,803.00 | |
| 3. Net Medical and Dental Expense | 0.00 | 0.00 | 0.00 |
| 4. Taxes | 275,410.00 | 69,313.00 | 206,097.00 |
| 5. Home Interest Expense | 32,553.00 | 32,553.00 | 0.00 |
| 6. Investment Interest | 10.00 | 10.00 | 0.00 |
| 7. Other Interest Expense | 165.00 | 165.00 | 0.00 |
| 8. Total Interest Expense | 32,728.00 | 32,728.00 | 0.00 |
| 9. Contributions | 50.00 | 50.00 | 0.00 |
| 10. Casualty and theft Losses | 0.00 | 0.00 | 0.00 |
| 11. Miscellaneous deductions subject to AGI limit | 3,075.00 | 3,075.00 | 0.00 |
| 12. 2.00% of Adjusted Gross Income | 12,340.00 | 11,414.00 | |
| 13. Excess Miscellaneous deductions | 0.00 | 0.00 | 0.00 |
| 14. Other Miscellaneous deductions | 0.00 | 0.00 | 0.00 |
| 15. Total itemized deductions (Sum of Lines 3, 4, 8, 9,10,13, and 14 less any applicable limitation) | 293,547.00 | 88,838.00 | 204,709.00 |

## ITEMIZED DEDUCTIONS WORKSHEET - PER EXAM

| | |
|---|---|
| A. Total of lines 3, 4, 8, 9, 10, 13, and 14 | 102,091.00 |
| B. Total of lines 3, 6, 10, (plus any gambling losses included on line 14) | 10.00 |
| C. Line A less Line B | 102,081.00 |
| D. Multiply the amount on line C by 80% | 81,665.00 |
| E. Adjusted Gross Income from Form 1040 | 570,701.00 |
| F. Itemized Deduction Limitation | 128,950.00 |
| G. Line E less Line F | 441,751.00 |
| H. Multiply the amount on Line G by 3% | 13,253.00 |
| I. Enter the smaller of Line D or Line H | 13,253.00 |
| J. Total Itemized Deductions (entered on line 15 above) | 88,838.00 |

Regular Tax

SCHEDULE D (Form 1040)
Department of the Treasury Internal Revenue Service (99)

# Capital Gains and Losses

► Attach to Form 1040. ► See Instructions for Schedule D (Form 1040).
► Use Schedule D-1 for more space to list transactions for lines 1 and 8.

OMB No. 1545-0074
2000
Attachment Sequence No. 12

Name(s) shown on Form 1040: Spitz
Your social security number

**Part I** Short-Term Capital Gains and Losses—Assets Held One Year or Less

| | (a) Description of property (Example: 100 sh. XYZ Co.) | (b) Date acquired (Mo., day, yr.) | (c) Date sold (Mo., day, yr.) | (d) Sales price (see page D-6) | (e) Cost or other basis (see page D-6) | (f) Gain or (loss) Subtract (e) from (d) |
|---|---|---|---|---|---|---|
| 1 | Non ISOs | | | | | 46,236.00 |
| | ISOs - Disq. Dispositions exercised in 1999 | | | | | 54,317.70 |
| | ISOs - Disq. Dispositions exercised in 2000 | | | | | 33,417.94 |
| | | | | | | |

2 Enter your short-term totals, if any, from Schedule D-1, line 2 . . . 2

3 **Total short-term sales price amounts.** Add column (d) of lines 1 and 2 . . . 3

4 Short-term gain from Form 6252 and short-term gain or (loss) from Forms 4684, 6781, and 8824 . . . 4

5 Net short-term gain or (loss) from partnerships, S corporations, estates, and trusts from Schedule(s) K-1 . . . 5

6 Short-term capital loss carryover. Enter the amount, if any, from line 8 of your 1999 Capital Loss Carryover Worksheet . . . 6 ( )

7 **Net short-term capital gain or (loss).** Combine column (f) of lines 1 through 6 ► 7 133,971.64

**Part II** Long-Term Capital Gains and Losses—Assets Held More Than One Year

| | (a) Description of property (Example: 100 sh. XYZ Co.) | (b) Date acquired (Mo., day, yr.) | (c) Date sold (Mo., day, yr.) | (d) Sales price (see page D-6) | (e) Cost or other basis (see page D-6) | (f) Gain or (loss) Subtract (e) from (d) | (g) 28% rate gain or (loss) * (see instr. below) |
|---|---|---|---|---|---|---|---|
| 8 | Non ISOs | | | | | (1,322) | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

9 Enter your long-term totals, if any, from Schedule D-1, line 9 . . . 9

10 **Total long-term sales price amounts.** Add column (d) of lines 8 and 9 . . . 10

11 Gain from Form 4797, Part I; long-term gain from Forms 2439 and 6252; and long-term gain or (loss) from Forms 4684, 6781, and 8824 . . . 11

12 Net long-term gain or (loss) from partnerships, S corporations, estates, and trusts from Schedule(s) K-1 . . . 12

13 Capital gain distributions. See page D-1 . . . 13

14 Long-term capital loss carryover. Enter in both columns (f) and (g) the amount, if any, from line 13 of your 1999 Capital Loss Carryover Worksheet . . . 14 ( ) ( )

15 Combine column (g) of lines 8 through 14 . . . 15

16 **Net long-term capital gain or (loss).** Combine column (f) of lines 8 through 14 ► 16 (1,322)

**Next:** Go to Part III on the back.

*28% rate gain or loss includes all "collectibles gains and losses" (as defined on page D-6) and up to 50% of the eligible gain on qualified small business stock (see page D-4).

Schedule D (Form 1040) 2000 Page 2

**Part III** Summary of Parts I and II

| | | | |
|---|---|---|---|
| 17 | Combine lines 7 and 16. If a loss, go to line 18. If a gain, enter the gain on Form 1040, line 13<br>**Next:** Complete Form 1040 through line 39. Then, go to **Part IV** to figure your tax if:<br>• Both lines 16 and 17 are gains **and**<br>• Form 1040, line 39, is more than zero.<br>Otherwise, **stop here.** | 17 | 138,649 64 |
| 18 | If line 17 is a loss, enter here and as a (loss) on Form 1040, line 13, the **smaller** of these losses:<br>• The loss on line 17 **or**<br>• ($3,000) or, if married filing separately, ($1,500)<br>**Next:** Skip **Part IV** below. Instead, complete Form 1040 through line 37. Then, complete the **Capital Loss Carryover Worksheet** on page D-6 if:<br>• The loss on line 17 exceeds the loss on line 18 **or**<br>• Form 1040, line 37, is a loss. | 18 | ( ) |

**Part IV** Tax Computation Using Maximum Capital Gains Rates

| | | | | | |
|---|---|---|---|---|---|
| 19 | Enter your taxable income from Form 1040, line 39 | | | 19 | 481,865 00 |
| 20 | Enter the **smaller** of line 16 or line 17 of Schedule D | 20 | <1,322> | | |
| 21 | If you are filing Form 4952, enter the amount from Form 4952, line 4e | 21 | 0 | | |
| 22 | Subtract line 21 from line 20. If zero or less, enter -0- | 22 | 0 | | |
| 23 | Combine lines 7 and 15. If zero or less, enter -0- | 23 | 133,969 | | |
| 24 | Enter the **smaller** of line 15 or line 23, but not less than zero | 24 | 0 | | |
| 25 | Enter your unrecaptured section 1250 gain, if any, from line 17 of the worksheet on page D-8 | 25 | 0 | | |
| 26 | Add lines 24 and 25 | 26 | 0 | | |
| 27 | Subtract line 26 from line 22. If zero or less, enter -0- | | | 27 | 0 |
| 28 | Subtract line 27 from line 19. If zero or less, enter -0- | | | 28 | 481,865 |
| 29 | Enter the **smaller** of:<br>• The amount on line 19 **or**<br>• $26,250 if single; $43,850 if married filing jointly or qualifying widow(er); $21,925 if married filing separately; or $35,150 if head of household | | | 29 | 35,150 |
| 30 | Enter the **smaller** of line 28 or line 29 | 30 | 35,150 | | |
| 31 | Subtract line 22 from line 19. If zero or less, enter -0- | 31 | 481,865 | | |
| 32 | Enter the **larger** of line 30 or line 31 ▶ | 32 | 481,865 | | |
| 33 | Figure the tax on the amount on line 32. Use the Tax Table or Tax Rate Schedules, whichever applies<br>**Note.** If the amounts on lines 29 and 30 are the same, skip lines 34 through 37 and go to line 38. | | | 33 | 165,792 |
| 34 | Enter the amount from line 29 | 34 | 35,150 | | |
| 35 | Enter the amount from line 30 | 35 | 35,150 | | |
| 36 | Subtract line 35 from line 34 ▶ | 36 | 0 | | |
| 37 | Multiply line 36 by 10% (.10)<br>**Note.** If the amounts on lines 19 and 29 are the same, skip lines 38 through 51 and go to line 52. | | | 37 | 0 |
| 38 | Enter the **smaller** of line 19 or line 27 | 38 | 0 | | |
| 39 | Enter the amount from line 36 | 39 | 0 | | |
| 40 | Subtract line 39 from line 38 ▶ | 40 | 0 | | |
| 41 | Multiply line 40 by 20% (.20)<br>**Note.** If line 26 is zero or blank, skip lines 42 through 51 and go to line 52. | | | 41 | 0 |
| 42 | Enter the **smaller** of line 22 or line 25 | 42 | | | |
| 43 | Add lines 22 and 32 — 43 | | | | |
| 44 | Enter the amount from line 19 — 44 | | | | |
| 45 | Subtract line 44 from line 43. If zero or less, enter -0- | 45 | | | |
| 46 | Subtract line 45 from line 42. If zero or less, enter -0- ▶ | 46 | | | |
| 47 | Multiply line 46 by 25% (.25)<br>**Note.** If line 24 is zero or blank, skip lines 48 through 51 and go to line 52. | | | 47 | |
| 48 | Enter the amount from line 19 | 48 | | | |
| 49 | Add lines 32, 36, 40, and 46 | 49 | | | |
| 50 | Subtract line 49 from line 48 | 50 | | | |
| 51 | Multiply line 50 by 28% (.28) | | | 51 | |
| 52 | Add lines 33, 37, 41, 47, and 51 | | | 52 | 165,792 |
| 53 | Figure the tax on the amount on line 19. Use the Tax Table or Tax Rate Schedules, whichever applies | | | 53 | 165,792 |
| 54 | **Tax on all taxable income (including capital gains).** Enter the **smaller** of line 52 or line 53 here and on Form 1040, line 40 | | | 54 | 165,792 |

AMT Tax

**SCHEDULE D (Form 1040)**
Department of the Treasury Internal Revenue Service (99)

# Capital Gains and Losses

▶ Attach to Form 1040. ▶ See Instructions for Schedule D (Form 1040).
▶ Use Schedule D-1 for more space to list transactions for lines 1 and 8.

OMB No. 1545-0074
2000
Attachment Sequence No. 12

Name(s) shown on Form 1040: Spitz
Your social security number

## Part I Short-Term Capital Gains and Losses—Assets Held One Year or Less

| | (a) Description of property (Example: 100 sh. XYZ Co.) | (b) Date acquired (Mo., day, yr.) | (c) Date sold (Mo., day, yr.) | (d) Sales price (see page D-6) | (e) Cost or other basis (see page D-6) | (f) Gain or (loss) Subtract (e) from (d) |
|---|---|---|---|---|---|---|
| 1 | Non ISOs | | | | | 46,236 |
| | ISOs — Disq. Dispositions exercised in 1999 | | | | | 90,939 |
| | ISOs - Disq. Dispositions exercised in 2000 | | | | | 33,417 |
| | | | | | | |
| 2 | Enter your short-term totals, if any, from Schedule D-1, line 2 | | 2 | | | |
| 3 | **Total short-term sales price amounts.** Add column (d) of lines 1 and 2 | | 3 | | | |

| | | | (f) |
|---|---|---|---|
| 4 | Short-term gain from Form 6252 and short-term gain or (loss) from Forms 4684, 6781, and 8824 | 4 | |
| 5 | Net short-term gain or (loss) from partnerships, S corporations, estates, and trusts from Schedule(s) K-1 | 5 | |
| 6 | Short-term capital loss carryover. Enter the amount, if any, from line 8 of your 1999 Capital Loss Carryover Worksheet | 6 | ( ) |
| 7 | **Net short-term capital gain or (loss).** Combine column (f) of lines 1 through 6 ▶ | 7 | 170,592 |

## Part II Long-Term Capital Gains and Losses—Assets Held More Than One Year

| | (a) Description of property (Example: 100 sh. XYZ Co.) | (b) Date acquired (Mo., day, yr.) | (c) Date sold (Mo., day, yr.) | (d) Sales price (see page D-6) | (e) Cost or other basis (see page D-6) | (f) Gain or (loss) Subtract (e) from (d) | (g) 28% rate gain or (loss) * (see instr. below) |
|---|---|---|---|---|---|---|---|
| 8 | Non ISOs | | | | | <1,322> | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| 9 | Enter your long-term totals, if any, from Schedule D-1, line 9 | | 9 | | | | |
| 10 | **Total long-term sales price amounts.** Add column (d) of lines 8 and 9 | | 10 | | | | |

| | | | (f) | (g) |
|---|---|---|---|---|
| 11 | Gain from Form 4797, Part I; long-term gain from Forms 2439 and 6252; and long-term gain or (loss) from Forms 4684, 6781, and 8824 | 11 | | |
| 12 | Net long-term gain or (loss) from partnerships, S corporations, estates, and trusts from Schedule(s) K-1 | 12 | | |
| 13 | Capital gain distributions. See page D-1 | 13 | | |
| 14 | Long-term capital loss carryover. Enter in both columns (f) and (g) the amount, if any, from line 13 of your 1999 Capital Loss Carryover Worksheet | 14 | ( ) | ( ) |
| 15 | Combine column (g) of lines 8 through 14 | 15 | | |
| 16 | **Net long-term capital gain or (loss).** Combine column (f) of lines 8 through 14 ▶ **Next:** Go to Part III on the back. | 16 | <1,322> | |

* **28% rate gain or loss** includes **all** "collectibles gains and losses" (as defined on page D-6) and up to 50% of the eligible gain on qualified small business stock (see page D-4).



page 7

## Part III Summary of Parts I and II

17 Combine lines 7 and 16. If a loss, go to line 18. If a gain, enter the gain on Form 1040, line 13 — **17** 169,270

**Next:** Complete Form 1040 through line 39. Then, go to **Part IV** to figure your tax if:

- Both lines 16 and 17 are gains **and**
- Form 1040, line 39, is more than zero.

Otherwise, **stop here.**

18 If line 17 is a loss, enter here and as a (loss) on Form 1040, line 13, the **smaller** of these losses:

- The loss on line 17 **or**
- ($3,000) or, if married filing separately, ($1,500) — **18** ( )

**Next:** Skip **Part IV** below. Instead, complete Form 1040 through line 37. Then, complete the **Capital Loss Carryover Worksheet** on page D-6 if:

- The loss on line 17 exceeds the loss on line 18 **or**
- Form 1040, line 37, is a loss.

## Part IV Tax Computation Using Maximum Capital Gains Rates

| Line | Description | Inner box | Amount |
|---|---|---|---|
| 19 | Enter your taxable income from Form 1040, line 39 | | 4,113,396 — (tax is computed on Form 6251) |
| 20 | Enter the **smaller** of line 16 or line 17 of Schedule D | 20 | |
| 21 | If you are filing Form 4952, enter the amount from Form 4952, line 4e | 21 | |
| 22 | Subtract line 21 from line 20. If zero or less, enter -0- | 22 | |
| 23 | Combine lines 7 and 15. If zero or less, enter -0- | 23 | |
| 24 | Enter the **smaller** of line 15 or line 23, but not less than zero | 24 | |
| 25 | Enter your unrecaptured section 1250 gain, if any, from line 17 of the worksheet on page D-8 | 25 | |
| 26 | Add lines 24 and 25 | 26 | |
| 27 | Subtract line 26 from line 22. If zero or less, enter -0- | | 27 |
| 28 | Subtract line 27 from line 19. If zero or less, enter -0- | | 28 |
| 29 | Enter the **smaller** of: • The amount on line 19 **or** • $26,250 if single; $43,850 if married filing jointly or qualifying widow(er); $21,925 if married filing separately; or $35,150 if head of household | | 29 |
| 30 | Enter the **smaller** of line 28 or line 29 | 30 | |
| 31 | Subtract line 22 from line 19. If zero or less, enter -0- | 31 | |
| 32 | Enter the **larger** of line 30 or line 31 ▶ | 32 | |
| 33 | Figure the tax on the amount on line 32. Use the Tax Table or Tax Rate Schedules, whichever applies | | 33 |
| | **Note.** If the amounts on lines 29 and 30 are the same, skip lines 34 through 37 and go to line 38. | | |
| 34 | Enter the amount from line 29 | 34 | |
| 35 | Enter the amount from line 30 | 35 | |
| 36 | Subtract line 35 from line 34 ▶ | 36 | |
| 37 | Multiply line 36 by 10% (.10) | | 37 |
| | **Note.** If the amounts on lines 19 and 29 are the same, skip lines 38 through 51 and go to line 52. | | |
| 38 | Enter the **smaller** of line 19 or line 27 | 38 | |
| 39 | Enter the amount from line 36 | 39 | |
| 40 | Subtract line 39 from line 38 ▶ | 40 | |
| 41 | Multiply line 40 by 20% (.20) | | 41 |
| | **Note.** If line 26 is zero or blank, skip lines 42 through 51 and go to line 52. | | |
| 42 | Enter the **smaller** of line 22 or line 25 | 42 | |
| 43 | Add lines 22 and 32 — 43 | | |
| 44 | Enter the amount from line 19 — 44 | | |
| 45 | Subtract line 44 from line 43. If zero or less, enter -0- | 45 | |
| 46 | Subtract line 45 from line 42. If zero or less, enter -0- ▶ | 46 | |
| 47 | Multiply line 46 by 25% (.25) | | 47 |
| | **Note.** If line 24 is zero or blank, skip lines 48 through 51 and go to line 52. | | |
| 48 | Enter the amount from line 19 | 48 | |
| 49 | Add lines 32, 36, 40, and 46 | 49 | |
| 50 | Subtract line 49 from line 48 | 50 | |
| 51 | Multiply line 50 by 28% (.28) | | 51 |
| 52 | Add lines 33, 37, 41, 47, and 51 | | 52 |
| 53 | Figure the tax on the amount on line 19. Use the Tax Table or Tax Rate Schedules, whichever applies | | 53 |
| 54 | **Tax on all taxable income (including capital gains).** Enter the **smaller** of line 52 or line 53 here and on Form 1040, line 40 | | 54 |

Form **6251**

Department of the Treasury
Internal Revenue Service

# Alternative Minimum Tax— Individuals

▶ See separate instructions.

▶ Attach to Form 1040 or Form 1040NR.

OMB No. 1545-0227

**2000**

Attachment Sequence No. **32**

Name(s) shown on Form 1040: Spitz

Your social security number:

## Part I Adjustments and Preferences

| Line | Description | Box | Amount |
|---|---|---|---|
| 1 | If you itemized deductions on Schedule A (Form 1040), go to line 2. Otherwise, enter your standard deduction from Form 1040, line 36, here and go to line 6 | 1 | |
| 2 | Medical and dental. Enter the smaller of Schedule A (Form 1040), line 4 **or** 2½% of Form 1040, line 34 | 2 | |
| 3 | Taxes. Enter the amount from Schedule A (Form 1040), line 9 | 3 | 69,313 |
| 4 | Certain interest on a home mortgage **not** used to buy, build, or improve your home | 4 | |
| 5 | Miscellaneous itemized deductions. Enter the amount from Schedule A (Form 1040), line 26 | 5 | |
| 6 | Refund of taxes. Enter any tax refund from Form 1040, line 10 or line 21 | 6 | ( ) |
| 7 | Investment interest. Enter difference between regular tax and AMT deduction | 7 | |
| 8 | Post-1986 depreciation. Enter difference between regular tax and AMT depreciation | 8 | |
| 9 | Adjusted gain or loss. Enter difference between AMT and regular tax gain or loss | 9 | <71,626> → See page 11 |
| 10 | Incentive stock options. Enter excess of AMT income over regular tax income | 10 | 3,647,099 |
| 11 | Passive activities. Enter difference between AMT and regular tax income or loss | 11 | |
| 12 | Beneficiaries of estates and trusts. Enter the amount from Schedule K-1 (Form 1041), line 9 | 12 | |
| 13 | Tax-exempt interest from private activity bonds issued after 8/7/86 | 13 | |
| 14 | Other. Enter the amount, if any, for each item below and enter the total on line 14. | 14 | |

| | | | |
|---|---|---|---|
| a Circulation expenditures | | h Loss limitations | |
| b Depletion | | i Mining costs | |
| c Depreciation (pre-1987) | | j Patron's adjustment | |
| d Installment sales | | k Pollution control facilities | |
| e Intangible drilling costs | | l Research and experimental | |
| f Large partnerships | | m Section 1202 exclusion | |
| g Long-term contracts | | n Tax shelter farm activities | |
| | | o Related adjustments | |

| Line | Description | Box | Amount |
|---|---|---|---|
| 15 | Total Adjustments and Preferences. Combine lines 1 through 14 ▶ | 15 | 3,644,786 → See page 10 |

## Part II Alternative Minimum Taxable Income

| Line | Description | Box | Amount |
|---|---|---|---|
| 16 | Enter the amount from **Form 1040, line 37.** If less than zero, enter as a (loss) ▶ | 16 | 481,863 |
| 17 | Net operating loss deduction, if any, from Form 1040, line 21. Enter as a positive amount | 17 | -0- |
| 18 | If Form 1040, line 34, is over $128,950 (over $64,475 if married filing separately), and you itemized deductions, enter the amount, if any, from line 9 of the worksheet for Schedule A (Form 1040), line 28 | 18 | ( 13,253 ) |
| 19 | Combine lines 15 through 18 ▶ | 19 | 4,113,396 |
| 20 | Alternative tax net operating loss deduction. See page 6 of the instructions | 20 | -0- |
| 21 | **Alternative Minimum Taxable Income.** Subtract line 20 from line 19. (If married filing separately and line 21 is more than $165,000, see page 7 of the instructions.) ▶ | 21 | 4,113,396 |

## Part III Exemption Amount and Alternative Minimum Tax

22 **Exemption Amount.** (If this form is for a child under age 14, see page 7 of the instructions.)

| IF your filing status is . . . | AND line 21 is not over . . . | THEN enter on line 22 . . . |
|---|---|---|
| Single or head of household | $112,500 | $33,750 |
| Married filing jointly or qualifying widow(er) | 150,000 | 45,000 |
| Married filing separately | 75,000 | 22,500 |

If line 21 is **over** the amount shown above for your filing status, see page 7 of the instructions.

| Line | Description | Box | Amount |
|---|---|---|---|
| 22 | Exemption Amount | 22 | -0- |
| 23 | Subtract line 22 from line 21. If zero or less, enter -0- here and on lines 26 and 28 and stop here ▶ | 23 | 4,113,396 |
| 24 | If you reported capital gain distributions directly on Form 1040, line 13, **or** you completed Schedule D (Form 1040) and have an amount on line 25 or line 27 (or would have had an amount on either line if you had completed Part IV) (as refigured for the AMT, if necessary), go to Part IV of Form 6251 to figure line 24. **All others:** If line 23 is $175,000 or less ($87,500 or less if married filing separately), multiply line 23 by 26% (.26). Otherwise, multiply line 23 by 28% (.28) and subtract $3,500 ($1,750 if married filing separately) from the result ▶ | 24 | 1,148,251 |
| 25 | Alternative minimum tax foreign tax credit. See page 7 of the instructions | 25 | 22 |
| 26 | Tentative minimum tax. Subtract line 25 from line 24 ▶ | 26 | 1,148,229 |
| 27 | Enter your tax from Form 1040, line 40 (minus any tax from Form 4972 and any foreign tax credit from Form 1040, line 43) | 27 | 165,769 |
| 28 | **Alternative Minimum Tax.** Subtract line 27 from line 26. If zero or less, enter -0-. Enter here and on Form 1040, line 41 ▶ | 28 | 982,460 |

**For Paperwork Reduction Act Notice, see page 8 of the instructions.** Cat. No. 13600G Form **6251** (2000)

Total Adjustments and Preferences per exam: $3,644,786

This total includes the following:

1) Taxes Schedule A

60,913 {State Tax}
7,667 {Real Estate Tax}
\+ 733 {Personal Property Tax}

$69,313

2) Adjusted gain or loss
Line 9 per exam + ($71,626)

3) Incentive Stock Options
Line 10 per exam + $3,647,099

$3,644,786

***Spitz 2000*** ***Form 6251 Line 9***

| Regular Schedule D | | | AMT Schedule D | |
|---|---|---|---|---|
| STCG Per 1st 1040X | 46,236.00 | Non ISOs | 46,236.00 | |
| LTCL | -1,322.00 | Non ISOs | -1,322.00 | |
| Plus STCG Adjs. | 54,317.70 | ISOs With Prior Year AMT | | Disqualified Dispositions AMT Included in Prior Year |
| | | | 164,189.70 | Total Sales less |
| | | | 71,626.00 | AMT spread reported in 1999 * |
| | | | 1,623.95 | Less Purchase Price |
| | | | 90,939.74 | STCG from AMT item |
| Plus STCG Adjs. | 33,417.94 | ISOs Without Prior Year AMT | 33,417.94 | |
| Total Gains | 132,649.64 | | 169,271.68 | |

| | | |
|---|---|---|
| | 169,271.68 | |
| less | 132,649.64 | |
| | 36,622.00 | |
| plus | -108,248.00 | 421(b) compensation |
| | -71,626.00 | Form 6251 Line 9 |

* The 1999 spread amount should have been $108,248, but taxpayer only reported $71,626. Therefore, he only gets basis for what he reported.

Docket No. 4075-05

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing RESPONDENT'S EXPLANATION OF THE COMPUTATIONS SUBMITTED UNDER TAX COURT RULE 155 was served on counsel for petitioner by mailing the same on JAN 18 2006 in a postage paid wrapper addressed as follows:

Don Paul Badgley
Badgley Mullins Law Group
701 Fifth Avenue, Suite 4750
Seattle, WA 98104

Brian G. Isaacson, Esq.
Merriam & Isaacson
701 Fifth Avenue, Ste. 5800
Seattle, WA 98104

Date: JAN 18 2006

KIRK M. PAXSON
Senior Attorney, (Pacific Coast, Los Angeles Group)
(Tax Exempt & Government Entities)
Tax Court Bar No. PK0089

# A-12

# UNITED STATES TAX COURT

WASHINGTON, DC 20217

| | | |
|---|---|---|
| MARK SPITZ, Petitioner, | ) | |
| v. | ) | Docket No. 4075-05. |
| COMMISSIONER OF INTERNAL REVENUE, Respondent. | ) | |

## O R D E R

On January 11, 2007, the Court held a telephone conference with the parties. A discussion was held regarding the different computations contained in the parties' separately filed Rule 155 calculations. Judge Haines strongly encouraged the parties to resolve these issues. It is,

ORDERED that respondent file an explanation of the computations contained in their Rule 155 calculations on or before January 18, 2007, and serve a copy on the petitioner. It is further

ORDERED that petitioner file a response to respondent's explanation of Rule 155 calculations on or before January 26, 2007, and serve a copy on respondent.

(Signed) Harry A. Haines

Harry A. Haines
Judge

Dated: Washington, D.C.
January 12, 2007