TAXABLE YEAR **2001**

# Underpayment of Estimated Tax by Individuals and Fiduciaries

CALIFORNIA FORM **5805**

Attach this form to the **front** of your Form 540, Form 540A, Long Form 540NR, or Form 541. Also, check the box for underpayment of estimated tax located on Form 540, line 68; Form 540A, line 40; Long Form 540NR, line 77; or Form 541, line 39, whichever applies.

| Name(s) as shown on return | Social security number or FEIN |
|---|---|
| HENDY J. LUND & DANIEL S. PIERCE | 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 |

**IMPORTANT:** In most cases, the Franchise Tax Board (FTB) can figure the penalty for you and you do not have to complete this form. See General Information B.

If you meet **any** of the following conditions, you do not owe a penalty for underpayment of estimated tax. Do not complete or file this form if:

- 80% of your 2001 California adjusted gross income (AGI) was wages or other income subject to California withholding; or
- 80% of your 2000 or 2001 tax liability (not including tax on lump-sum distributions and alternative minimum tax) less credits was paid by the amount of tax withheld from your wages or other income for that year. Do not include the withholding credit or estimated tax payments; or
- The amount of your tax liability (not including tax on lump-sum distributions and alternative minimum tax) less credits (including the withholding credit) but not including estimated tax payments for either 2000 or 2001 was less than $200 (or less than $100 if married filing a separate return); or
- Your 2000 return was for a full 12 months (or would have been if you were required to file) and you did not have any tax liability on that return; or
- The amount of your withholding plus your estimated tax payments, if **paid in the required installments,** is at least 80% of the tax shown on your 2001 return or 100% of the tax shown on your 2000 return AND you are not using the annualized income installment method.

## Part I Questions. All filers must complete this part.

1 Are you requesting a waiver of the penalty? If yes, provide an explanation below and be sure to check the box on Form 540, line 68; Form 540A, line 40; Long Form 540NR, line 77; or Form 541, line 39. If you need additional space, attach a statement. ........ 1 ☐ Yes ☒ No

See General Information C

2 Did you use the annualized income installment method? If yes, see instructions for Part III and be sure to check the box on Form 540, line 68; Form 540A, line 40; Long Form 540NR, line 77; or Form 541, line 39 ........ 2 ☐ Yes ☒ No

3 Was your California withholding not withheld in equal installments and are you able to show the actual amounts withheld per period and the actual dates withheld? If yes, enter the uneven amounts withheld on the spaces provided below. ........ 3 ☐ Yes ☒ No

Enter the **actual uneven amounts withheld** next to the corresponding quarterly payment due date here: 4/15/01 $________; 6/15/01 $________; 9/15/01 $________; 1/15/02 $________.

4 For estates and trusts: Was the date of death less than two years from the end of the tax year? See General Information E ........ 4 ☐ Yes ☐ No

## Part II Required Annual Payment. All filers must complete this part.

| Line | Description | | | Line | Amount |
|---|---|---|---|---|---|
| 1 | Current year tax. Enter your 2001 tax after credits. See instructions | | | 1 | 41,791. |
| 2 | Multiply line 1 by 80% (.80) | 2 | 33,433. | | |
| 3 | Withholding taxes. **Do not** include any estimated tax payments on this line. See instructions | | | 3 | |
| 4 | Subtract line 3 from line 1. If less than $200 (or less than $100 if married filing a separate return), stop here. You do not owe the penalty. Do not file form FTB 5805 | | | 4 | 41,791. |
| 5 | Enter the tax shown on your 2000 tax return (105% (1.05) of that amount if the adjusted gross income shown on that return is more than $150,000, or if married filing separate for 2001, more than $75,000). See instructions | | | 5 | |
| 6 | Required annual payment. Enter the **smaller** of line 2 or line 5 | | | 6 | 33,433. |

**Short Method**

**Caution:** See the instructions to find out if you can use the short method. If you answered "Yes" to Question 2 in Part I, skip this part and go to Part III. If you answered "No" to Question 2 in Part I **and** you cannot use the short method, go to Worksheet II in the instructions (page 4).

| Line | Description | | | Line | Amount |
|---|---|---|---|---|---|
| 7 | Enter the amount, if any, from Part II, line 3 above | 7 | | | |
| 8 | Enter the total amount, if any, of estimated tax payments you made | 8 | | | |
| 9 | Add line 7 and line 8 | | | 9 | |
| 10 | **Total underpayment for year.** Subtract line 9 from line 6. If zero or less, stop here. You do not owe the penalty. Do not file form FTB 5805 | | | 10 | 33,433. |
| 11 | Multiply line 10 by .054308 | | | 11 | 1,816. |
| 12 | • If the amount on line 10 was paid **on or after** 4/15/02, enter -0-.<br>• If the amount on line 10 was paid **before** 4/15/02, enter the result of the following computation:<br>Amount on line 10 X Number of days paid before 4/15/02 X .00019 | | | 12 | |
| 13 | **PENALTY.** Subtract line 12 from line 11. Enter the result here and on Form 540, line 68; Form 540A, line 40; Long Form 540NR, line 77; or Form 541, line 39. Also check the box for "FTB 5805." | | | 13 | 1,816. |

HL 000672

139561 12-11-01

580501104022

## Part III Annualized Income Installment Method Schedule.

Use this schedule ONLY IF you earned taxable income at an UNEVEN RATE during 2001 (See Example A). If you earned your income at approximately the same rate each month (See Example B), then you should not complete this schedule. If you choose to figure the penalty, see the instructions for Worksheet II - Regular Method to Figure Your Underpayment and Penalty, on page 3 of the instructions.

**Example A:** If you were a commissioned salesperson who earned no income during the first three months of the year, earned most of your income during the following six months, and earned very little during the last three months, you should complete this schedule. You may be able to benefit by using the annualized income installment method. The required installment of estimated tax figured using the annualized method may be less than your required installment figured using the equal installment method.

**Example B:** If you worked all year and earned a monthly salary that did not change much during the year, you should not complete this schedule.

| **Note:** To complete this schedule correctly, you must first complete Side 1, Part II, line 1 through line 6. Estates and trusts, **do not** use the period ending dates shown to the right. Instead, use the following: 2/28/01, 4/30/01, 7/31/01, and 11/30/01. Fiscal-year filers must adjust dates accordingly. | | (a) 1/1/01 to 3/31/01 | (b) 1/1/01 to 5/31/01 | (c) 1/1/01 to 8/31/01 | (d) 1/1/01 to 12/31/01 |
|---|---|---|---|---|---|
| 1 Enter your adjusted gross income (AGI) for each period. Long Form 540NR filers, see instructions. Estates or trusts, enter the amount from Form 541, line 20 attributable to each period. See instructions | 1 | | | | |
| 2 Annualization amounts. Estates or trusts, see instructions | 2 | 4 | 2.4 | 1.5 | 1 |
| 3 Annualized income. Multiply line 1 by line 2 | 3 | | | | |
| 4 Enter your itemized deductions for the period shown in each column. If you do not itemize deductions, enter -0- here and on line 6. Estates or trusts, enter -0- here, skip to line 9, and enter the amount from line 3 on line 9 | 4 | | | | |
| 5 Annualization amounts | 5 | 4 | 2.4 | 1.5 | 1 |
| 6 Annualized itemized deductions. Multiply line 4 by line 5. See instructions | 6 | | | | |
| 7 Enter your standard deduction from your 2001 Form 540 or Long Form 540NR, line 18; or Form 540A, line 15. Enter the total standard deduction amount in each column. | 7 | | | | |
| 8 Enter line 6 or line 7, whichever is **larger** | 8 | | | | |
| 9 Subtract line 8 from line 3 | 9 | | | | |
| 10 Figure the tax on the amount in each column of line 9 using the tax table or the tax rate schedule in the instructions for Form 540, Form 540A, Long Form 540NR, or Form 541. Also, include any tax from form FTB 3803. Estates or trusts, see instructions | 10 | | | | |
| 11 Enter the total amount of exemption credits from your 2001 Form 540, line 21; Form 540A, line 18; Long Form 540NR, line 23; or Form 541, line 22. Enter the total exemption credit amount in each column. See instructions | 11 | | | | |
| 12 Subtract line 11 from line 10. Long Form 540NR filers, complete Worksheet I in the instructions | 12 | | | | |
| 13 Enter the total credit amount from your 2001 Form 540, line 33 plus line 45, Form 540A, line 19 plus line 31, or Form 541, line 23. Long Form 540NR filers, see instructions. Enter the total amount of credits in each column | 13 | | | | |
| 14 Subtract line 13 from line 12. If zero or less, enter -0- | 14 | | | | |
| 15 Applicable percentage | 15 | 20% | 40% | 60% | 80% |
| 16 Multiply line 14 by line 15 | 16 | | | | |
| **COMPLETE LINE 17 THROUGH LINE 23 OF EACH COLUMN BEFORE YOU GO TO THE NEXT COLUMN.** | | | | | |
| 17 Enter the combined amounts shown on line 23 from all preceding columns | 17 | | | | |
| 18 Subtract line 17 from line 16. If zero or less, enter -0- | 18 | | | | |
| 19 In each column, enter 1/4 of the amount on form FTB 5805, Part II, line 6 | 19 | | | | |
| 20 Enter the amount from line 22 from the preceding column | 20 | | | | |
| 21 Add line 19 and line 20 | 21 | | | | |
| 22 Subtract line 18 from line 21. If zero or less, enter -0- | 22 | | | | |
| 23 Enter line 18 or line 21, whichever is less. Transfer these amounts to Worksheet II - Regular Method to Figure Your Underpayment and Penalty, line 1 | 23 | | | | |

**Note: If you use the annualized income installment method for one payment due date, you must use it for all payment due dates. This schedule automatically selects the smaller of your annualized income installment or your regular installment.**

139562 12-11-01



580501204022

HL 000673

# California Resident Income Tax Return 2001

[redacted]

**540**

APE

FEDERAL RETURN ATTACHMENT REQUIRED: [X] YES [ ] NO

P

DO NOT ATTACH LABEL

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 LUND ** 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 01 PBA 541600
HENDY J LUND
DANIEL S PIERCE

AC
A
R
RP

## Step 1
Name and Address

1800 TUCKER ROAD
SCOTTS VALLEY CA 95066

FOR COMPUTERIZED USE ONLY

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 01 | 2 | 37 | 41791 | 56 | 0 | APE | 0 |
| 06 | 0 | 38 | 0 | 57 | 0 | 3800 | 0 |
| 09 | 0 | 39 | 0 | 58 | 0 | 3803 | 0 |
| 11 | 0 | 41 | 0 | 59 | 0 | SCHG1 | 0 |
| 12 | 102414 | 42 | 0 | 60 | 0 | 5870A | 0 |
| 14 | 0 | 43 | 0 | 64 | 0 | 5805 5805F | 1 |
| 16 | 0 | 44 | 0 | 65 | 0 | | 911457886 |
| 17 | 509691 | 45 | 0 | 66 | 41791 | | |
| 18 | 20590 | 47 | 0 | 68 | 1816 | | |
| 20 | 41791 | 48 | 0 | | | | |
| 23 | 0 | 49 | 0 | | | | |
| 28 | 0 | 50 | 41791 | | | | |
| 29 | 0 | 51 | 0 | | | | |
| 30 | 0 | 52 | 0 | | | | |
| 31 | 0 | 53 | 0 | | | | |
| 35 | 0 | 54 | 0 | | | | |
| 36 | 0 | 55 | 0 | | | | |

## Step 2
Filing Status

Check only one.

1 [ ] Single
2 [X] Married filing joint return (even if only one spouse had income)
3 [ ] Married filing separate return. Enter spouse's social security number above and full name here ______
4 [ ] Head of household (with qualifying person). STOP. See instructions. 5 [ ] Qualifying widow(er) with dependent child. Enter year spouse died ______

## Step 3
Exemptions

6 If someone can claim you (or your spouse, if married) as a dependent on their tax return, check the box here ● 6 [ ]
7 **Personal:** If you checked box 1, 3, or 4 above, enter 1 in the box. If you checked box 2 or 5, enter 2 in the box. If you checked the box on line 6, see instructions 7 [2] X $79 = $ 158
8 **Blind:** If you (or if married, your spouse) are visually impaired, enter 1; if both, enter 2 8 [ ] X $79 = $
9 **Senior:** If you (or if married, your spouse) are 65 or older, enter 1; if both, enter 2 ● 9 [ ] X $79 = $
10 Add line 7 through line 9. This is your total exemption credit before the dependent exemption credit 10 Total $ 158

Dependent Exemptions

11 **Dependents:** Enter name and relationship. Do not include yourself or your spouse.
Total dependent exemption credit ● 11 [ ] X $247 = $

## Step 4
Taxable Income

Attach check or money order here.

12 State wages from your Form(s) W-2, box 16 ● 12 102,414.
13 Enter adjusted gross income from your 2001 federal return 13 509,691.
14 California adjustments - subtractions. Enter the amount from Schedule CA (540), line 33, column B ● 14
15 Subtract line 14 from line 13. If less than zero, enter the result in parentheses. See instructions 15 509,691.
16 California adjustments - additions. Enter the amount from Schedule CA (540), line 33, column C ● 16
17 California adjusted gross income. Combine line 15 and line 16 ● 17 509,691.
18 Enter the larger of your CA **standard deduction OR** your CA **itemized deductions** ● 18 20,590.
19 Subtract line 18 from line 17. This is your taxable income. If less than zero, enter -0- 19 489,101.

139001
12-26-01

## Step 5
Tax

Attach copy of your Form(s) W-2, W-2G, and other Forms 1099 with California tax withheld.

20 Tax. Check if from [ ] Tax Table [X] Tax Rate Schedule [ ] FTB 3800 or [ ] FTB 3803 ● 20 41,791.
21 Exemption credits. If line 13 is over $130,831, see instructions. Otherwise, add line 10 and line 11 21 0.
22 Subtract line 21 from line 20. If less than zero, enter -0- 22 41,791.
23 Other Taxes. Check if from [ ] Schedule G-1 and [ ] form FTB 5870A ● 23
24 Add line 22 and line 23. Continue to Page 2 24 41,791.



HL 000674

Your name: HENDY J. LUND Your SSN: 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

**Step 6** Special Credits and Nonrefundable Renter's Credit

25 Amount from Page 1, line 24 ........ 25 41,791.

28 Enter credit name ____ code no ____ and amount ▶ 28 ____

29 Enter credit name ____ code no ____ and amount ▶ 29 ____

30 To claim more than two credits, see instructions ........ • 30 ____

31 Nonrefundable renter's credit. See instructions for "Step 6" ........ • 31 ____

33 Add line 28 through line 31. These are your total credits ........ 33 ____

34 Subtract line 33 from line 25. If less than zero, enter -0- ........ 34 41,791.

**Step 7** Other Taxes

35 Alternative minimum tax. Attach Schedule P (540) ........ • 35 ____

36 Other taxes and credit recapture. See instructions ........ • 36 ____

37 Add line 34 through line 36. This is your total tax ........ • 37 41,791.

**Step 8** Payments

38 California income tax withheld. See instructions ........ ■ 38 ____

39 2001 CA estimated tax and other payments ........ ■ 39 ____

41 Excess SDI. See instructions ........ ■ 41 ____

Child and Dependent Care Expenses Credit. See instructions; attach form FTB 3506.

• 42 ____ • 43 ____ ■ 45 ____

■ 44 ____

46 Add line 38, line 39, line 41, and line 45. These are your total payments ........ 46 ____

**Step 9** Overpaid Tax or Tax Due

47 Overpaid tax. If line 46 is more than line 37, subtract line 37 from line 46 ........ 47 ____

48 Amount of line 47 you want applied to your 2002 estimated tax ........ ■ 48 ____

49 Overpaid tax available this year. Subtract line 48 from line 47 ........ ■ 49 ____

50 Tax due. If line 46 is less than line 37, subtract line 46 from line 37 ........ 50 41,791.

**Step 10** Contributions

CA Seniors Special Fund. See instructions ........ • 51 .00

Alzheimer's Disease/Related Disorders Fund ........ • 52 .00

CA Fund for Senior Citizens ........ • 53 .00

Rare and Endangered Species Preservation Program ........ • 54 .00

State Children's Trust Fund for the Prevention of Child Abuse ........ • 55 .00

CA Breast Cancer Research Fund ........ • 56 .00

CA Firefighters' Memorial Fund ........ • 57 .00

Emergency Food Assistance Program Fund ........ • 58 .00

CA Peace Officer Memorial Foundation Fund ........ • 59 .00

Lupus Foundation of America, California Chapters Fund ........ • 60 .00

64 Add line 51 through line 60. These are your total contributions ........ • 64 ____

**Step 11** Refund or Amount You Owe

65 REFUND OR NO AMOUNT DUE. Subtract line 64 from line 49. Mail to: FRANCHISE TAX BOARD, PO BOX 942840, SACRAMENTO CA 94240-0009 ........ ■ 65 ____

66 AMOUNT YOU OWE. Add line 50 and line 64. Mail to: FRANCHISE TAX BOARD, PO BOX 942867, SACRAMENTO CA 94267-0001 ........ ■ 66 41,791.

**Step 12** Interest and Penalties

67 Interest, late return penalties, and late payment penalties ........ 67 ____

68 Underpayment of estimated tax. Check box: [X] FTB 5805 attached [ ] FTB 5805F attached ........ ■ 68 1,816.

69 Total amount due. See instructions ........ 69 43,607.

• 70 4

**Step 13** Direct Deposit of Refund

Do not attach a voided check or a deposit slip.

Complete this section to have your refund directly deposited. Routing number ▶ • ____

Account Type: Checking • [ ] Savings • [ ] Account number ▶ • ____

**Sign Here**

It is unlawful to forge a spouse's signature.

IMPORTANT: See "Sign Your Return" in the Form 540 instructions to find out if you should attach a copy of your complete federal return. Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete.

Your signature X [signature] Daytime phone number 831 336 2106 831-234-85

Spouse's signature (if filing joint, both must sign)

Joint return? See instructions.

X [signature] Date

Paid preparer's signature (declaration of preparer is based on all information of which preparer has any knowledge) • Paid preparer's SSN/PTIN 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

Firm's name (or yours if self-employed) Firm's address FEIN 90-0145975

Brian G. Isaacson, Attorney at Law
701 Fifth Ave, Suite 4770
Seattle, WA 98104

139002 02-06-02

54001206022



HL 000675

TAXABLE YEAR **2001**

# California Adjustments - Residents

SCHEDULE **CA (540)**

**Important:** Attach this schedule directly behind Form 540, Side 2.

Name(s) as shown on return: HENDY J. LUND & DANIEL S. PIERCE

Social security number: 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

## Part I Income Adjustment Schedule

| Section A - Income | Line | A Federal Amounts (taxable amounts from your federal return) | B Subtractions | C Additions |
|---|---|---|---|---|
| 7 Wages, salaries, tips, etc. See instructions before making an entry in column B or C | 7 | 102,414. | | |
| 8 Taxable interest income | 8 | 283. | | |
| 9 Ordinary dividends | 9 | 14,534. | | |
| 10 State tax refund. Enter the same amount in column A and column B | 10 | | | |
| 11 Alimony received | 11 | | | |
| 12 Business income or (loss) | 12 | 290. | | |
| 13 Capital gain or (loss) | 13 | 392,170. | | |
| 14 Other gains or (losses) | 14 | | | |
| 15 Total IRA distributions. (a) ______ | (b) | | | |
| 16 Total pensions and annuities. (a) ______ | (b) | | | |
| 17 Rental real estate, royalties, partnerships, S corporations, trusts, etc. | 17 | | | |
| 18 Farm income or (loss) | 18 | | | |
| 19 Unemployment compensation. Enter the same amount in column A and column B | 19 | | | |
| 20 Social security benefits (a) ______ | (b) | | | |
| 21 Other income. a California lottery winnings; b Disaster loss carryover from FTB 3805V; c Federal NOL (Form 1040, line 21); d NOL carryover from FTB 3805V; e NOL from FTB 3805D, 3805Z, 3806, 3807, or 3809; f Other (describe) | 21 | | a / b / c / d / e / f | a / b / c / d / e / f |
| 22 **Total.** Combine line 7 through line 21 in column A. Add line 7 through line 21f in column B and column C. Go to Section B | 22 | 509,691. | | |

| Section B - Adjustments to Income | Line | A | B | C |
|---|---|---|---|---|
| 23 IRA deduction | 23 | | | |
| 24 Student loan interest deduction | 24 | | | |
| 25 Medical savings account deduction | 25 | | | |
| 26 Moving expenses | 26 | | | |
| 27 One-half of self-employment tax | 27 | | | |
| 28 Self-employed health insurance deduction | 28 | | | |
| 29 Keogh and self-employed SEP and SIMPLE plans | 29 | | | |
| 30 Penalty on early withdrawal of savings | 30 | | | |
| 31a Alimony paid. (b) Recipient's: SSN ______ Last name ______ | 31a | | | |
| 32 Add line 23 through line 31a in columns A, B, and C | 32 | | | |
| 33 **Total.** Subtract line 32 from line 22 in columns A, B, and C. See the instructions for how to transfer the total to Form 540 | 33 | 509,691. | | |

## Part II Adjustments to Federal Itemized Deductions

| | Line | Amount |
|---|---|---|
| 35 Federal itemized deductions. Add the amounts on federal Sch. A (Form 1040), lines 4, 9, 14, 18, 19, 26, and 27 | 35 | 362,415. |
| 36 Enter total of federal Sch. A, line 5 (state and local income tax **and** State Disability Insurance) and line 8 (foreign taxes **only**) | 36 | 326,943. |
| 37 Subtract line 36 from line 35 | 37 | 35,472. |
| 38 Other adjustments including California lottery losses. Specify ______ | 38 | |
| 39 Combine line 37 and line 38 | 39 | 35,472. |
| 40 (see below) | 40 | Limited 20,590. |

40 **Is the amount on Form 540, line 13 more than the amount shown below for your filing status?**
Single or married filing separate ........ $130,831
Married filing joint or qualifying widow(er) ...... $261,664
Head of household ........ $196,248

**NO.** Transfer the amount on line 39 to line 40.
**YES.** Complete the Itemized Deductions Worksheet in the instructions for Sch. CA (540), line 40.

**Is the amount you entered on line 40 more than your standard deduction below?**
Single or married filing separate ........ $2,960
Married filing joint, head of household, or qualifying widow(er) ........ $5,920

**YES.** Transfer the amount on line 40 to Form 540, line 18.
**NO.** Enter your standard deduction on Form 540, line 18.

HL 000676

139011/12-14-01

CA54001104022

| California | Exemption Credit - AGI Limitation Worksheet | 2001 |
|---|---|---|

Name(s) as shown on return: HENDY J. LUND & DANIEL S. PIERCE

Social security number: 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

| | | | |
|---|---|---|---|
| a. | Enter the amount from Form 540 or 540NR, line 13 | a | 509,691. |
| b. | Enter the amount for your filing status on line b:<br>Single or married filing separate ............ $130,831<br>Married filing joint or qualifying widow(er) ... $261,664<br>Head of household ............ $196,248 | b | 261,664. |
| c. | Subtract line b from line a | c | 248,027. |
| d. | Divide line c by $2,500 ($1,250 if married filing separate).<br>**Note:** If the result is not a whole number, round it to the next higher whole number | d | 100. |
| e. | Multiply line d by $6 | e | 600. |
| f. | Add the numbers from the boxes on Form 540 or 540NR, line 7, line 8 and line 9 | f | 2 |
| g. | Multiply line e by line f | g | 1,200. |
| h. | Enter the dollar amount from Form 540 or 540NR, line 10 | h | 158. |
| i. | Subtract line g from line h. If zero or less, enter -0- | i | 0. |
| j. | Enter the number from the box on Form 540 or 540NR, line 11 | j | |
| k. | Multiply line e by line j | k | |
| l. | Enter the dollar amount from Form 540 or 540NR, line 11 | l | |
| m. | Subtract line k from line l. If zero or less, enter -0- | m | |
| n. | Add line i and m. Enter the result here and on Form 540 or 540NR, line 21. If zero or less, enter -0- | n | |

HL 000677

139761
10-10-01

| California | Itemized Deductions Worksheet | 2001 |
|---|---|---|

Name(s) as shown on return: HENDY J. LUND & DANIEL S. PIERCE
Social security number: 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

| | | |
|---|---|---|
| 1. | Enter the amount from Schedule CA, line 39 | 35,472. |
| 2. | Using California amounts, add the amounts on federal Schedule A, line 4, line 13 and line 19 plus any gambling losses included on line 27 | |
| 3. | Subtract line 2 from line 1 | 35,472. |
| | **Note:** If -0-, stop. Enter the amount from line 1 on Schedule CA, line 40. | |
| 4. | Multiply line 3 by 80% (.80) | 28,378. |
| 5. | Amount from Form 540 or Form 540NR, line 13 | 509,691. |
| 6. | Enter amount shown below for your filing status:<br>- Single or married filing separate, enter $130,831<br>- Head of household, enter $196,248<br>- Married filing joint or qualifying widow(er), enter $261,664 | 261,664. |
| 7. | Subtract line 6 from line 5 | 248,027. |
| | **Note:** If -0- or less, stop. Enter the amount from line 1 above on Schedule CA, line 40. | |
| 8. | Multiply line 7 by 6% (.06) | 14,882. |
| 9. | Compare line 4 and line 8. Enter the smaller amount here | 14,882. |
| 10. | Total itemized deductions. Subtract line 9 from line 1. Enter here and on Schedule CA, line 40 | 20,590. |

HL 000678

Alternative Minimum Tax

TAXABLE YEAR 2001

# Net Operating Loss (NOL) Computation and NOL and Disaster Loss Limitations - Individuals, Estates, and Trusts

CALIFORNIA FORM 3805V

Attach to your California tax return.

Social security number

Name(s) as shown on return: HENDY J. LUND & DANIEL S. PIERCE

FEIN 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

**Part I** Computation of Current Year NOL. If you do not have a current year NOL, go to Part II.

**Section A -** Individuals, Estates, and Trusts

| Line | Description | Ref | Amount | Ref | Amount | Ref | Amount |
|---|---|---|---|---|---|---|---|
| 1 | Adjusted gross income from 2001 Form 540, line 17 or 2001 Long Form 540NR, line 17. If negative, use brackets. Estates and trusts, begin on line 3 | | | | | 1 | -2,611,087. |
| 2 | Itemized deductions or standard deduction from 2001 Form 540, line 18 or 2001 Long Form 540NR, line 18 Stmt 2 | | | | | 2 | ( 15,557.) |
| 3 a | Combine line 1 and line 2. (Estates and trusts, enter taxable income, see instructions.) If negative, use brackets. If positive, enter -0- here and on line 20 and do not complete the rest of Part I; you do not have a current year NOL. Complete Part II and Part III if you have a carryover from prior years. | | | | | 3a | -2,626,644. |
| b | 2001 designated disaster loss included in line 3a. Enter as a positive number | | | | | 3b | |
| c | Combine line 3a and line 3b. If negative, use brackets and continue to line 4. If zero or more, do not complete the rest of Part I. Enter the amount from line 3b, if any, in Part III, line 3, column (d) and complete Part II and Part III as instructed | | | | | 3c | -2,626,644. |

**Note:** Enter amounts on line 4 through line 26 as if they were all **positive** numbers. See instructions.

| Line | Description | Ref | Amount | Ref | Amount | Ref | Amount |
|---|---|---|---|---|---|---|---|
| 4 | Nonbusiness capital losses | 4 | 18,991. | | | | |
| 5 | Nonbusiness capital gains | 5 | 129,739. | | | | |
| 6 | If line 4 is more than line 5, enter the difference; otherwise, enter -0- | | | 6 | 0. | | |
| 7 | If line 4 is less than line 5, enter the difference; otherwise, enter -0- | | | 7 | 110,748. | | |
| 8 | Nonbusiness deductions | 8 | 15,557. | | | | |
| 9 | Nonbusiness income other than capital gains Stmt 1 | 9 | 14,817. | | | | |
| 10 | Add line 7 and line 9 | | | 10 | 125,565. | | |
| 11 | If line 8 is more than line 10, enter the difference; otherwise, enter -0- | | | | | 11 | 0. |
| 12 | If line 8 is less than line 10, enter the difference; otherwise, enter -0- | 12 | 110,008. | | | | |
| 13 | Business capital losses | 13 | | | | | |
| 14 | Business capital gains | 14 | | | | | |
| 15 | Add line 12 and line 14 | | | 15 | 110,008. | | |
| 16 | If line 13 is more than line 15, enter the difference; otherwise, enter -0- | | | 16 | 0. | | |
| 17 | Add line 6 and line 16 | | | 17 | | | |
| 18 | Enter the loss, if any, from line 8 of Schedule D (540). (Estates and trusts, enter the loss, if any, from line 9, column (c), of Schedule D (541).) If you do not have a loss on that line (and do not have an R&TC Section 18152.5 exclusion), skip line 18 through line 23 and enter on line 24 the amount from line 17. | | | 18 | | | |
| 19 | R&TC Section 18152.5 exclusion. Enter as a positive number | | | | | 19 | |
| 20 | Subtract line 19 from line 18. If zero or less, enter -0- | | | 20 | | | |
| 21 | Enter the loss, if any, from line 9 of Schedule D (540). (Estates and trusts, enter the loss, if any, from line 10 of Schedule D (541).) Enter as a positive number | | | 21 | | | |
| 22 | If line 20 is more than line 21, enter the difference; otherwise, enter -0- | | | 22 | | | |
| 23 | If line 21 is more than line 20, enter the difference; otherwise, enter -0- | | | | | 23 | |
| 24 | Subtract line 22 form line 17. If zero or less, enter -0- | | | | | 24 | |
| 25 | NOL and disaster loss carryovers from prior years | | | | | 25 | 0. |
| 26 | Add line 11, line 19, line 23, line 24, and line 25 | | | | | 26 | |
| 27 | Combine line 3c and line 26. If more than zero, enter -0-. You do not have a current year NOL to carryover | | | | | 27 | -2,626,644. |
| 28 | Enter as a positive number the amount from line 27 that represents losses incurred by a new business and/or an eligible small business. Do not enter more than the amount on line 27 | | | | | 28 | |
| 29 | Decrease the loss on line 27 by the amount on line 28 | | | | | 29 | -2,626,644. |
| 30 | General NOL. Multiply line 29 by 55% (.55) | | | | | 30 | 1,444,654. |
| 31 | 2001 NOL carryover. Add line 28 and line 30 | | | | | 31 | 1,444,654. |

HL 000679

## Section B - Nonresidents and Part-Year Residents Only - Computation of Current Year California NOL

Do not complete this section if Section A, line 27 is zero.

**Note:** Enter amounts on line 32 through line 37 as if they were all **positive** numbers.

| | | | |
|---|---|---|---|
| 32 | Enter the NOL from all sources from Section A, line 27 | 32 | |
| 33 | Enter the California adjusted gross income from 2001 Long Form 540NR, line 25 if it is a loss. If it is not a loss, you do not have a California NOL | 33 | |
| 34 | California source NOL amount from 2001 Schedule CA (540NR), line 21d, column B, plus net capital loss from 2001 Schedule CA (540NR), line 13, column E | 34 | |
| 35 | If line 33 is more than line 34, enter the difference; otherwise, enter -0- | 35 | |
| 36 | Enter the smaller of line 32 or line 35 | 36 | |
| 37 | Enter as a positive number the amount from line 36 that represents losses incurred by a new business and/or an eligible small business. Do not enter more than the amount on line 36 | 37 | |
| 38 | Subtract line 37 from line 36 | 38 | |
| 39 | General NOL. Multiply line 38 by 55% (.55) | 39 | |
| 40 | 2001 NOL carryover. Add line 37 and line 39. See instructions | 40 | |

## PART II Determine 2001 Modified Taxable Income (MTI). Be sure to read the instructions for Part II.

| | | | |
|---|---|---|---|
| 1 | Taxable income. See instructions | 1 | -2,626,934. |

**Note:** Enter amounts on line 2 through line 4 as if they were all **positive** numbers.

| | | | |
|---|---|---|---|
| 2 | Capital loss deduction included in line 1 | 2 | |
| 3 | Disaster loss carryover included in line 1 | 3 | |
| 4 | NOL carryover included in line 1 | 4 | |
| 5 | MTI. Combine line 1 through line 4. If line 5 is zero or less, enter -0- | 5 | 0. |

## PART III NOL Carryover and Disaster Loss Carryover Limitations. See instructions.

| | | (g) Available balance |
|---|---|---|
| 1 MTI from Part II, line 5 | 1 | |

**Prior Year NOLs**

| (a) Year of loss | (b) Code | (c) Type of NOL* | (d) Total Loss | (e) Carryover from 2000 | (f) Amount used in 2001 | | (h) Carryover to 2002 subtract column(f) from column (e) |
|---|---|---|---|---|---|---|---|
| 2 | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**Current Year NOLs**

| (a) | (b) | (c) | (d) | (e) | (f) | | (h) |
|---|---|---|---|---|---|---|---|
| 3 2001 | | DIS | | | | | |
| 4 2001 | | GEN | 1,444,654. | | | | 1,444,654. |
| 2001 | | | | | | | |
| 2001 | | | | | | | |
| 2001 | | | | | | | |

* **Type of NOL:** General (GEN), New Business (NB), Eligible Small Business (ESB), Title 11 (T11), or Disaster (DIS).

| | | | |
|---|---|---|---|
| 5 | NOL carryover. Add the carryover amounts in column (h) that are not the result of a disaster loss | 5 | 1,444,654. |
| 6 | Disaster loss carryover. Enter the total loss carryover amounts in column (h) that are the result of disaster losses | 6 | |

CA 3805V AMT Alternative Minimum Tax Nonbusiness Income Statement 1

| Description | Amount |
|---|---|
| Interest Income | 283. |
| Dividend Income | 14,534. |
| Total to 3805V AMT, line 9 | 14,817. |

CA 3805V AMT Alternative Minimum Tax Itemized Deductions Statement 2

| Description | Amount |
|---|---|
| Form 540, line 18 | 20,590. |
| Personal and real property taxes AMT adjustment | -5,033. |
| Total to 3805V AMT, line 2 | 15,557. |

HL 000681

## 2002 Estimated Tax Worksheet

Keep this worksheet for your records.

**Caution:**
- If you filed Form 540 2EZ for 2001, do not use the Form 540 2EZ instructions for figuring amounts on this worksheet. Instead, get the 2001 California Resident Income Tax Booklet or the 2001 California Nonresident or Part-Year Resident Income Tax Booklet; or
- If your adjusted gross income (AGI) is over $130,831, your itemized deductions and your exemption credits may be limited. See the instructions for Form 540 or Long Form 540NR for more information.

1 **Residents:** Enter your estimated 2002 California AGI.
**Nonresidents and part-year residents:** Enter your estimated 2002 total AGI from all sources ..... 1 ______

2 a If you plan to itemize deductions, enter the estimated total of your itemized deductions ..... 2a ______
b If you do not plan to itemize deductions, enter the standard deduction for your filing status:
$2,960 if you are single or married filing a separate return
$5,920 if you are married filing a joint return, head of household, or a qualifying widow(er) ..... 2b ______
c Enter the amount from line 2a or line 2b, whichever applies ..... 2c ______

3 Subtract line 2c from line 1 ..... 3 ______

4 Tax. Figure your tax on the amount on line 3 using the 2001 tax table or tax rate schedule in the instructions for Form 540, Form 540A, or Long Form 540NR. Also include any tax from form FTB 3800, Tax Computation for Children with Investment Income; or form FTB 3803, Parents' Election to Report Child's Interest and Dividends ..... 4 ______

5 **Residents:** Skip to line 6. **Nonresidents and part-year residents:**
a Compute this ratio: Estimated 2002 California AGI (using Long Form 540NR) / Estimated 2002 AGI from all sources (using Long Form 540NR) = ..... 5a ______
b Multiply the amount on line 4 by the ratio on line 5a. Enter the result on line 5b ..... 5b ______

6 **Residents:** Enter the exemption credit amount from the 2001 instructions for Form 540 or Form 540A ..... 6 ______
**Nonresidents or part-year residents:** Multiply the total exemption credit from the 2001 instructions for Long Form 540NR by line 5a.

7 **Residents:** Subtract line 6 from line 4. **Nonresidents or part-year residents:** Subtract line 6 from line 5b ..... 7 ______

8 Tax on accumulation distribution of trusts. See instructions for form FTB 5870A ..... 8 ______

9 Add line 7 and line 8 ..... 9 ______

10 Credits for joint custody head of household, dependent parent, senior head of household, child and dependent care expenses, and long-term care ..... 10 ______
**Nonresidents and part-year residents:** For the child and dependent care expenses credit, use the amount from your 2001 Long Form 540NR, line 54. For the other credits listed on line 10, multiply the total 2001 credit amount by the ratio on line 5a.

11 Subtract line 10 from line 9 ..... 11 ______

12 Other credits (such as other state tax credit). See the 2001 instructions for Form 540, Form 540A, or Long Form 540NR ..... 12 ______

13 Subtract line 12 from line 11 ..... 13 ______

14 Interest on deferred tax from installment obligations under IRC Sections 453 or 453A ..... 14 ______

15 2002 Estimated Tax. Add line 13 and line 14. Enter the result, but not less than zero ..... 15 ______

16 a Multiply line 15 by 90% (.90). Farmers and fishermen multiply line 15 by 66 2/3% (.6667) ..... 16a ______
b Enter 100% of the tax shown on your 2001 Form 540, line 34; Form 540A, line 23; or Long Form 540NR, line 43 ..... 16b ______
c Enter the amount from your 2001 Form 540, line 17; Form 540A, line 14; or Long Form 540NR, line 20 ..... 16c ______
d Is the amount on line 16c more than $150,000 ($75,000 if married filing a separate return)? **Yes.** Go to line 16e.
**No.** Enter the lesser of line 16a or line 16b. Skip line 16e and 16f and go to line 17 ..... 16d ______
e Multiply 112% (1.12) by the tax shown on your 2001 Form 540, line 34; Form 540A, line 23; or Long Form 540NR, line 43. Go to line 16f ..... 16e ______
f Enter the lesser of line 16a or line 16e and go to line 17 ..... 16f ______

**Caution:** Generally, if you do not prepay at least the amount on line 16d (or 16f if no amount on line 16d), you may owe a penalty for not paying enough estimated tax. To avoid a penalty, make sure your estimated tax on line 15 is as accurate as possible. If you prefer, you may pay 100% of your 2002 estimated tax (line 15).

17 California income tax withheld and estimated to be withheld during 2002 (include withholding on pensions, annuities, etc) ..... 17 ______

18 **Balance.** Subtract line 17 from line 16d (or line 16f if no amount on line 16d). If less than $200 (or less than $100, if married filing separate), you do not have to make a payment at this time ..... Adjusted to: 18 46,808.

19 **Installment** amount. Divide the amount on line 18 by 4. Enter the result here and on each of your Forms 540-ES. If you will earn your income at an uneven rate during the year, see Annualization Option in the instructions under paragraph D ..... 19 11,702.

### Record of Estimated Tax Payments

| Payment voucher number | (a) Date | (b) Amount paid | (c) 2001 overpayment applied | (d) Total amount paid and credited (add (b) and (c)) |
|---|---|---|---|---|
| 1 | 04/15/02 | $ 11,702. | $ | $ 11,702. |
| 2 | 06/17/02 | 11,702. | | 11,702. |
| 3 | 09/16/02 | 11,702. | | 11,702. |
| 4 | 01/15/03 | 11,702. | | 11,702. |
| Total ..... ▶ | | $ 46,808. | $ | $ 46,808. |

HL 000682

139081/11-08-01

--- DETACH HERE ---------------- IF NO PAYMENT IS DUE, DO NOT MAIL ---------------- DETACH HERE ---

TAXABLE YEAR

CALIFORNIA FORM

**2002 Estimated Tax for Individuals** **Due April 15, 2002** **540-ES**

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 LUND ** 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 02 APE 0
HENDY J LUND
DANIEL S PIERCE

**Payment Voucher 1**

1800 TUCKER ROAD
SCOTTS VALLEY CA 95066

File only if you are making a payment of estimated tax.
Mail this voucher and your check or money order to:
FRANCHISE TAX BOARD, PO BOX 942867, SACRAMENTO CA 94267-0031

Amount of payment 11702.

563274221LUND68671806600000000000117029

For Privacy Act Notice, get form FTB 1131. 540ES02106022 Form 540-ES (REV. 2001)

HL 000683

139082/11-08-01

--- DETACH HERE ------------------ IF NO PAYMENT IS DUE, DO NOT MAIL ------------------ DETACH HERE ---

TAXABLE YEAR **2002** **Estimated Tax for Individuals** **Due June 17, 2002**

CALIFORNIA FORM **540-ES**

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 LUND ** 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 02 APE 0
HENDY J LUND
DANIEL S PIERCE

1800 TUCKER ROAD
SCOTTS VALLEY CA 95066

**Payment Voucher 2**

File only if you are making a payment of estimated tax.
Mail this voucher and your check or money order to:
FRANCHISE TAX BOARD, PO BOX 942867, SACRAMENTO CA 94267-0031

Amount of payment 11702.

563274221LUND6867180660000000000117029

For Privacy Act Notice, get form FTB 1131.

540ES02106022

HL 000684

Form 540-ES (REV. 2001)

139063/11-08-01

--- DETACH HERE ----------------- IF NO PAYMENT IS DUE, DO NOT MAIL ----------------- DETACH HERE ---

TAXABLE YEAR

**2002** **Estimated Tax for Individuals** **Due Sept. 16, 2002**

CALIFORNIA FORM

**540-ES**

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 LUND ** 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 02 APE 0
HENDY J LUND
DANIEL S PIERCE

1800 TUCKER ROAD
SCOTTS VALLEY CA 95066

**Payment Voucher 3**

File only if you are making a payment of estimated tax.
Mail this voucher and your check or money order to:
FRANCHISE TAX BOARD, PO BOX 942867, SACRAMENTO CA 94267-0031

Amount of payment 11702.

563274221LUND68671806600000000117029

For Privacy Act Notice, get form FTB 1131.

540ES02106022

Form 540-ES (REV. 2001)

HL 000685

139084/11-08-01

--- DETACH HERE ----------------- IF NO PAYMENT IS DUE, DO NOT MAIL ------------------ DETACH HERE ---

TAXABLE YEAR **2002** **Estimated Tax for Individuals** **Due Jan. 15, 2003** CALIFORNIA FORM **540-ES**

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 LUND ** 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 02 APE 0
HENDY J LUND
DANIEL S PIERCE

1800 TUCKER ROAD
SCOTTS VALLEY CA 95066

**Payment Voucher 4**

File only if you are making a payment of estimated tax.
Mail this voucher and your check or money order to:
FRANCHISE TAX BOARD, PO BOX 942867, SACRAMENTO CA 94267-0031

Amount of payment 11702.

563274221LUND6867180660000000000117029

For Privacy Act Notice, get form FTB 1131. 540ES02106022 Form 540-ES (REV. 2001)

HL 000686

**Name: Hendy Lund**

## ISO Option Exercise and Stock Sale Analysis

Redback Stock Splits Ticker: RBAKQ
Ratio Record Date
2 : 1 8/20/99
2 : 1 4/4/00
NOT ADJUSTED FOR:
1 : 73 1/5/04 (reverse split)

### Exercise of Shares

| Row | A Grant Date | B Option # | C Option Exercise Date | D Original # Shares Exercised | E Exercise Price Per Share/ Ordinary Basis Per Share | F Total Basis for Income Tax (total exercise price) | G FMV Per Share at Date of Exercise/ AMT Basis Per Share | H Total FMV at Date of Exercise | L AMT Adjustment (FMV less Exercise Price) | M AMT Adjustment from Disqualifying Disposition 6251 line 9 - TAX Year of Exercise (W-2 Income from Disqualifying Disposition) | N W-2 Income (Value less Exercise Price) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 5 | | | | | | D * E | | D * G | H - F | -L | |
| 8 | 1/13/99 | ISO 191 | 3/2/00 | 11,000 | 1.18750 | 13,062.50 | 149.84400 | 1,648,284.00 | 1,635,221.50 | (1,635,221.50) | |
| 9 | | ISO 191 | 3/2/00 | 5,250 | 1.18750 | 6,234.38 | 149.84400 | 786,681.00 | 780,446.63 | | |
| 11 | 1/1/399 | ISO 191 | 3/2/00 | 13,750 | 1.18750 | 16,328.13 | 149.84400 | 2,060,355.00 | 2,044,026.88 | | |
| 61 | | | | 30,000 | | 35,625.00 | | 4,495,320.00 | 4,459,695.00 | (1,635,221.50) | - |
| 62 | Total Exercised Shares | | | 30,000 | | | | | | | |
| 63 | Plus: Purchased Shares | | | 15,162 | Total 1999 | - | | - | - | - | |
| 64 | Total Shares | | | 45,162 | | | | | | | |
| 65 | Less: Shares Sold | | | (30,800) | | | | | | | |
| 66 | Net Remaining Shares | | | 14,362 | | | | | | | |
| 67 | Less: Shares in Account | | | 14,362 | | | | | | | |
| 68 | Difference | | | - | Total 2000 | 35,625.00 | | 4,495,320.00 | 4,459,695.00 | (1,635,221.50) | |
| 71 | NOTE: Taxpayer DID NOT use margin | | | | | | | | | | |
| 72 | debt to exercise shares | | | | | | | | | | |
| 73 | | | | | Total 2001 | - | | - | - | - | |
| 78 | | | | | Total 2002 | - | | - | - | - | |

83(b) election for 13,750 split adjusted shares

16,250 shares vested at exercise
13,750 shares unvested at exercise

### Purchase of Stock for Investment

| Row | P Purchase Date Shares Purchased for Investment | Q Number of Shares | R Price Per Share Basis | S Total Basis on Sold Shares |
|---|---|---|---|---|
| 5 | | | | Q*R |
| 14 | 5/18/1999 | 400 | 6.5000 | 2,600.00 |
| 15 | 10/29/1999 | 970 | 4.8875 | 4,740.88 |
| 17 | 4/28/2000 | 1,338 | 4.8875 | 6,539.48 |
| 18 | 10/31/2000 | 1,543 | 4.8875 | 7,541.41 |
| 19 | 4/30/2001 | 1,634 | 4.8875 | 7,986.18 |
| 20 | 10/31/2001 | 1,313 | 3.4085 | 4,475.36 |
| 21 | 4/30/2002 | 4,000 | 1.9210 | 7,684.00 |
| 22 | 10/31/2002 | 3,964 | 0.4165 | 1,651.01 |
| 61 | | 15,162 | | |

Per Personnel Summary as of 2/27/04 - confirmations of purchase for 10/29/99, 10/31/00, 4/30/01 and 10/31/02 provided by client

Qualified Disposition
NOTE: This Sale WAS NOT reported on original Sch D. Also did not report $991.21 in ordinary dividends on original Sch B

Disqualified Disposition

### Sale of Stock

| Row | U Sale or Liquidation Date | W Number of Shares Sold | X Sale Price per Share (less transaction costs) | Y Net Amount Realized (Total Gross Proceeds less Transaction Costs) | Z Short / Long Term Gain (Loss) | AE Basis [ISO = Exercise Price NQ = FMV] | AF AMT Basis / Basis When AMT Gain(Loss) Recognized at Exercise (Exercise Price + AMT Gain/Loss at Exercise) | AG Capital Gains (Amount Realized less Cost Basis) | AH W-2 Income from ISO Disqualifying Disposition in TAX Year of Exercise ([Amount Realized less Cost Basis) | AI AMT Adjustment (Amount Realized less AMT Basis) | AJ W-2 Income from ISO Disqualifying Disposition in TAX years AFTER Year of Exercise (Amount Realized less Cost Basis) | AK AMT Adjustment from Disqualifying Dispositon 6251 line 9 - TAX Years AFTER Tax Year of Exercise (W-2 Income in Tax years AFTER Yr of Exercise less AMT Gain/Loss) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5 | | | AA / W | Enter net from 1099 | | W * E$_or W * G | W * (E+(G-E)) | Y - AE | Y - AE | Y - AF | Y - AE | - AJ |
| 8 | 10/16/2000 | 11,000 | 140.0006 | 1,540,006.16 | S | 13,062.50 | 1,648,284.00 | - | 1,526,943.66 | - | - | - |
| 9 | 4/10/2001 | 5,250 | 15.9992 | 83,995.82 | L | 6,234.38 | 786,681.00 | 77,761.44 | - | (702,685.18) | - | - |
| 11 | 4/10/2001 | 13,750 | 15.9992 | 219,989.05 | L | 16,328.13 | 2,060,355.00 | 203,660.93 | - | (1,840,365.95) | - | - |
| 14 | 8/9/2000 | 400 | 150.0441 | 60,017.63 | L | 2,600.00 | - | 57,417.63 | | | | |
| 15 | 3/2/2000 | 400 | 152.9355 | 61,174.21 | S | 1,955.00 | - | 59,219.21 | | | | |
| 61 | TOTAL SALES | 30,800 | | 1,965,182.87 | - | 40,180.00 | 4,495,320.00 | 398,059.21 | 1,526,943.66 | (2,543,051.13) | - | - |
| 63 | Total 1999 | | | | | | | | | | | |
| 64 | Exercised S/T | | | | | | | | | | | |
| 65 | Exercised L/T | | | | | | | | | | | |
| 66 | Investment S/T | | | | | | | | | | | |
| 67 | Investment L/T | | | | | | | | | | | |
| 68 | Total 2000 | 11,800 | | 1,661,198.00 | | 17,617.50 | 1,648,284.00 | 116,636.84 | 1,526,943.66 | - | - | - |
| 69 | Exercised S/T | | | 1,540,006.16 | | 13,062.50 | 1,648,284.00 | - | 1,526,943.66 | - | - | - |
| 70 | Exercised L/T | | | | | | | | | | | |
| 71 | Investment S/T | | | 61,174.21 | | 1,955.00 | - | 59,219.21 | - | - | - | - |
| 72 | Investment L/T | | | 60,017.63 | | 2,600.00 | - | 57,417.63 | - | - | - | - |
| 73 | Total 2001 | 19,000 | | 303,984.87 | | 22,562.50 | 2,847,036.00 | 281,422.37 | - | (2,543,051.13) | - | - |
| 74 | Exercised S/T | | | | | | | | | | | |
| 75 | Exercised L/T | | | 303,984.87 | | 22,562.50 | 2,847,036.00 | 281,422.37 | - | (2,543,051.13) | - | - |
| 76 | Investment S/T | | | | | | | | | | | |
| 77 | Investment L/T | | | | | | | | | | | |
| 78 | Total 2002 | | | | | | | | | | | |
| 79 | Exercised S/T | | | | | | | | | | | |
| 80 | Exercised L/T | | | | | | | | | | | |
| 81 | Investment S/T | | | | | | | | | | | |
| 82 | Investment L/T | | | | | | | | | | | |

### Comments

| Row | AL Account / Reference | AM Reference | AN Explanation for Exercise or Sale |
|---|---|---|---|
| 8 | SSB 745-18306 | B | Cash Exer per Conf of Exer |
| 9 | SSB 745-18306 | C | Cash Exer per Conf of Exer |
| 11 | SSB 745-18306 | C | Cash Exer per Conf of Exer |
| 14 | MSDW 112-170037 | D | allocated per original |
| 15 | SSB 745-18306 | A | |

| Row | | 1999 | 2000 | 2001 | 2002 |
|---|---|---|---|---|---|
| 86 | **AMT Preference:** | | | | |
| 87 | AMT Adjustment at Exercise (L) | - | 4,459,695.00 | - | - |
| 88 | AMT Adj. from DQ at Exercise (M) | - | (1,635,221.50) | - | - |
| 89 | | - | 2,824,473.50 | - | - |
| 91 | **AMT Recovery:** | | | | |
| 92 | AMT Adjustment at Sale (AI) | - | - | (2,543,051.13) | - |
| 93 | Less Capital Gains Generated by Sale of ISO shares (AG) | - | - | (281,422.37) | - |
| 94 | Less W-2 Income from DQ's in Tax Year After Exercise (AJ) | - | - | - | - |
| 95 | | - | - | (2,824,473.50) | - |
| 96 | TOTALS | - | 2,824,473.50 | (2,824,473.50) | - |

HL 000687

# MEMORANDUM FOR TAXPAYER

(Form 8275 Disclosure Statement)

## Table of Contents

Statement of Fact ........ 1
Issue ........ 1
Background ........ 1
Law ........ 1
Analysis ........ 1
Conclusion ........ 1

## Table of Authorities

LEGISLATION

Job Creation and Worker Assistance Act of 2002, Public Law 107-147 ........ 7
Tax Reform Act of 1986, Public Law 99-514 ........ 5, 6, 8, 11

INTERNAL REVENUE CODE SECTION

Section 53 ........ 4
Section 55(a). ........ 3
Section 56(a)(4) ........ 4, 11
Section 56(b)(3). ........ 3
Section 56(d) ........ 4, 11
Section 56(d)(1)(B)(ii) ........ 7
Section 57 ........ 4, 11
Section 58 ........ 4, 7, 10, 11
Section 172(a) ........ 5
Section 172(b) ........ 4, 6, 7, 11
Section 172(c) ........ 4, 11
Section 172(e) ........ 5
Section 263A ........ 7, 10
Section 265 ........ 7, 10
Section 422(c)(2) ........ 4
Section 1211 ........ 2, 3, 7, 10
Section §6662(d) ........ 13
Section §6664(d) ........ 13



MR. BRIAN G. ISAACSON
THE ISAACSON LAW FIRM
701 FIFTH AVENUE, STE. 4770
SEATTLE, WA 98104
WSBA NO. 25921

TREAS. REG.

Reg. 1.83-4(b)(1) .......... 2
Reg. 1.172-1(e)(2) .......... 5
Reg. 1.172-1(e)(3) .......... 5
Reg. 1.460-6(c)(2)(vi) .......... 9
Reg. 1.6664-4(e)(2)(i)(B)(2) .......... 14

CASES

Allen v. Commissioner, 118 T.C. 1, 2002 U.S. Tax Ct. LEXIS 1, 118 T.C. No. 1 (2002) .......... 9,10
Anderson v. Commissioner, 480 F.2d 1304, 1973 U.S. App. LEXIS 9420, 32 A.F.T.R.2d (RIA) 5167, Fed. Sec. L. Rep. (CCH) P94027, 73-2 U.S. Tax Cas. (CCH) P9501 (7th Cir. 1973) .......... 13
Arcadia Savings and Loan Association et al. v. Commissioner, 34 T.C. 679, 1960 U.S. Tax Ct. LEXIS 114 (1960) .......... 12
Arrowsmith v. Commissioner, 344 U.S. 6, 97 L. Ed. 6, 73 S. Ct. 71, 1952 U.S. LEXIS 2768, 1952-2 C.B. 136, 42 A.F.T.R. (P-H) 649, 1952 P.H. P72008, 52-2 U.S. Tax Cas. (CCH) P9527 (1952) 12,13
Brown v. Commissioner, 529 F.2d 609, 1976 U.S. App. LEXIS 13169, 37 A.F.T.R.2d (RIA) 377, 76-1 U.S. Tax Cas. (CCH) P9191, 38 A.L.R. Fed. 428 (10th Cir. 1976) .......... 13
Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 81 L. Ed. 2d 694, 104 S. Ct. 2778, 1984 U.S. LEXIS 118, 52 U.S.L.W. 4845, 21 Env't Rep. Cas. (BNA) 1049, 14 Envtl. L. Rep. 20507 (1984). 8
Condor Intl., Inc. v. Commissioner, 98 T.C. 203, 1992 U.S. Tax Ct. LEXIS 19, 98 T.C. No. 16 (1992) .......... 8, 9,10
Cummings v. Commissioner, 506 F.2d 449, 1974 U.S. App. LEXIS 6276, 34 A.F.T.R.2d (RIA) 6153, Fed. Sec. L. Rep. (CCH) P94854, 74-2 U.S. Tax Cas. (CCH) P9799 (2d Cir. 1974) 12, 13
Estate of Hutchinson v. Commissioner, 765 F.2d 665, 1985 U.S. App. LEXIS 19991, 56 A.F.T.R.2d (RIA) 6498, 85-2 U.S. Tax Cas. (CCH) P13624 (7th Cir. 1985) 8, 9, 10
Estate of Wallace v. Commissioner, 965 F.2d 1038, 1992 U.S. App. LEXIS 15597, 6 Fla. L. Weekly Fed. C 815, 70 A.F.T.R.2d (RIA) 5349, Comm. Fut. L. Rep. (CCH) P25345, 92-2 U.S. Tax Cas. (CCH) P50387 (11th Cir. 1992) 8, 11
Geyer, Cornell & Newell, Inc. v. Commissioner, 6 T.C. 96, 1946 U.S. Tax Ct. LEXIS 311 (1946) .......... 12
Merchants National Bank v. Commissioner, 199 F.2d 657, 1952 U.S. App. LEXIS 4097, 42 A.F.T.R. (P-H) 749, 1952 P.H. P72680, 52-2 U.S. Tax Cas. (CCH) P9529 (5th Cir. 1952) 12
Mitchell v. Commissioner, 428 F.2d 259, 1970 U.S. App. LEXIS 8627, 25 A.F.T.R.2d (RIA) 1434, 70-2 U.S. Tax Cas. (CCH) P9464 (6th Cir. 1970) 12, 13
Morales v. Consolidated Oil & Gas, Inc., 1982 U.S. Dist. LEXIS 14567, Fed. Sec. L.



MR. BRIAN G. ISAACSON
THE ISAACSON LAW FIRM
701 FIFTH AVENUE, STE. 4770
SEATTLE, WA 98104
WSBA NO. 25921

Rep. (CCH) P98796 (S.D.N.Y. July 17, 1982) 12, 13
NationsBank v. Variable Annuity Life Ins. Co. 513 U.S. 251, 130 L. Ed. 2d 740, 115 S. Ct. 810, 1995 U.S. LEXIS 691, 63 U.S.L.W. 4076, 8 Fla. L. Weekly Fed. S 534, 95 Cal. Daily Op. Service 429, 95 D.A.R. 789, Fed. Sec. L. Rep. (CCH) P98511, 95 TNT 45-27 (1995) 8
Plumb v. Commissioner, 97 T.C. 632, 1991 U.S. Tax Ct. LEXIS 106, 97 T.C. No. 44 (1991)........ 11
Redlark v. Commissioner, 106 T.C. 31, 1996 U.S. Tax Ct. LEXIS 2, 106 T.C. No. 2, 96 TNT 9-9 (1996)........ 8, 9
Tutor-Saliba Corporation, 115 T.C. 1, 2000 U.S. Tax Ct. LEXIS 44, 115 T.C. No. 1 (2000)........ 9
United States v. Skelly Oil, 394 U.S. 678, 22 L. Ed. 2d 642, 89 S. Ct. 1379, 1969 U.S. LEXIS 3276, 23 A.F.T.R.2d (RIA) 1186, 33 Oil & Gas Rep. 192, 69-1 U.S. Tax Cas. (CCH) P9343 (1969)........ 12
West Seattle National Bank of Seattle v. Commissioner, 33 T.C. 341, 1959 U.S. Tax Ct. LEXIS 32 (1959)........ 12
Zinniel v. Commissioner, 89 T.C. 357, 1987 U.S. Tax Ct. LEXIS 122, 89 T.C. No. 32 (1987)........ 8, 11

## Legislative History

House Of Representatives Report 99-841; 99th Congress; 2nd Session; H.R. 3838, Title VII Minimum Tax Provisions, Tax Reform Act of 1986 (September 18, 1986) ... 3, 5, 6
House Of Representatives Report 99-426; 99th Congress; 1st Session; H.R. 3838, Title V Minimum Tax Provisions, Tax Reform Act of 1985 (December 7, 1985)........ 3
Senate Report 99-313; 99th CONGRESS; 2d Session; H.R. 3838, Title XI Minimum Tax Provisions, Tax Reform Act of 1986 (May 29, 1986)........3

## Articles and Books

"What's Blue and White and Not Quite as Good as a Committee Report: General Explanations and the Role of 'Subsequent' Tax Legislative History," 11 Amer. J. Tax Policy 91 (1994)........ 8
A Complete Guide to Alternative Minimum Tax, Stewart S. Karlinsky Ph.D. (2000-2001 Edition), ........ 3
General Explanation of the Tax Reform Act of 1986, prepared by the Staff of the Joint Committee on Taxation (1986 Blue Book), 99th Cong., 2d Sess., pages 429-473 (Minimum Tax Provisions)(May 4, 1987)........ 1, 3, 7, 8, 9, 11
Mertens Law of Federal Income Taxation, Section 3.20........ 10
Shop Talk, "Legal Effect of the TA '86 Blue Book: Whatever You Want it to Be!" 93 JTAX 256 (October 2000). ........ 9
Shop Talk, "Tax Court Gives TRA '86 Blue Book ' Lesser Respect,'" 84 JTAX 190 (March 1996). ........ 9



Mr. Brian G. Isaacson
The Isaacson Law Firm
701 Fifth Avenue, Ste. 4770
Seattle, WA 98104
WSBA No. 25921

Shop Talk, "TRA '86 Blue Book: 'Precedential Value' or 'Lesser Respect'?," 92 JTAX 318 (November 1999)) .......... 9
Tax Planning for the Alternative Minimum Tax, (Matthew Bender & Co., Inc. 2002) .......... 3

INTERNAL REVENUE SERVICE DECISIONS

Gen. Couns. Mem. 37649, 1978 IRS GCM LEXIS 104 .......... 13
Gen. Couns. Mem. 37943, 1979 IRS GCM LEXIS 179 .......... 13
Private Letter Ruling 9317002 .......... 11
Rev. Rul. 67-311, 1967-2 C.B. 290 .......... 13
Rev. Rul. 79-278, 1979-2 C.B. 302 .......... 13
Rev. Rul. 87-44 .......... 13



MR. BRIAN G. ISAACSON
THE ISAACSON LAW FIRM
701 FIFTH AVENUE, STE. 4770
SEATTLE, WA 98104
WSBA NO. 25921

## STATEMENT OF FACT

Taxpayer alternative minimum tax gains and losses are described in the attached spreadsheet.

## ISSUE

Whether an Alternative Minimum Taxable loss on the sale of Incentive Stock Options is subject to the limitation of IRC Section 1211(b) when (1) the only support that Section 1211(b) applies is from the General Explanation of the Tax Reform Act of 1986, prepared by the Staff of the Joint Committee on Taxation (hereinafter, the "1986 Blue Book") and (2) the language in the 1986 Blue Book is inconsistent with Congressional language allowing an Alternative Minimum Taxable Net Operating Loss (ATNOL) carryback?

## BACKGROUND

For Alternative Minimum Tax (AMT) purposes, an Incentive Stock Option (ISO) is treated as if it were an Nonqualified Stock Option (NSO).[1] Consequently, an employee generates Alternative Minimum Taxable Income (AMTI) if he exercises his ISO when the stock's fair market value exceeds the option price.

> **Example:** XYZ Corporation grants M an ISO on July 1, 1995 to buy 1,000 shares of XYZ stock at $5 per share (which is the stock's fair market value on that date). On August 1, 1996, when XYZ stock is selling at $17, M exercises his option and XYZ transfers 1,000 shares to him at the price of $5 per share. Because the stock option is an ISO, M does not recognize any regular taxable income when he exercises it on August 1, 1996. However, M recognizes $12,000 of AMT income as a result of the exercise. This amount equals the difference between the fair market value of the shares ($17,000) and the option price ($5000). If M's regular taxable income for 1996 is $200,000 and he has no other AMT adjustments or preferences, his AMT income for 1996 is $212,000 ($200,000 + $12,000).

[1] IRC 56(b)(3) reaches this result by stating that, for AMT purposes, IRC Section 421 does not apply to stock acquired pursuant to the exercise of an ISO. Thus, the IRC Section 83 rules that apply to NSOs for regular tax purposes apply to ISOs for AMT purposes. The legislative history is clear about this. See S Rep No 445 (1988 Sen. Rep), 100th Cong, 2d Sass 96 91988); Joint Committee on Taxation, Explanation of Finance Committee Amendment to S 2238 (Technical Corrections Act of 1988, as Reported)(JCX-28-88) 2 (Dec 9, 1988). ISOs were a tax preference item before TRA 1986. See, e.g., Kolom v. US, 791 F.2d 762 (9th Cir. 1986), in which a taxpayer paid minimum tax on a pre-TRA 1986 ISO in the wrong year. Recovery of the tax was barred by the statute of limitations. Although the taxpayers could not use the mitigation provisions of IRC Section 1312, the court allowed them a refund under the doctrine of equitable recoupment.



MR. BRIAN G. ISAACSON
THE ISAACSON LAW FIRM
701 FIFTH AVENUE, STE. 4770
SEATTLE, WA 98104
WSBA NO. 25921

The exercise of an ISO affects the taxpayer's AMT basis in the transferred stock.[2] Thus, in the example above, M's AMT basis in the transferred shares equals $17,000 ($5000 purchase price + $12000 AMT income recognized on exercise). His regular tax basis, however, remains $5000. Thus, if he sells his shares for $30,000 on September 1, 1997, he recognizes a regular tax long-term capital gain of $25,000 ($30,000 - $5000). However, his gain for AMT purposes will be only $13,000 ($30,000 - $17,000).

If M's regular taxable income in 1997 is $250,000 before considering the sale of the shares, his regular taxable income after the sale is $275,000 ( $250,000 + 25,000). Assuming that M has no other AMT adjustments or preferences, his AMT income for 1997 is only $263,000 ($250,000 + $13,000). In this case, the ISO basis adjustment serves to reduce M's AMT income below his regular taxable income.

The situation is somewhat more confusing if the sale of the shares produces a loss for AMT purposes. To the extent that an individual has capital losses that exceed capital gains for regular tax purposes, IRC Section 1211(b) generally limits his regular tax capital loss deduction for the year to no more than $3000. It is unclear whether Section 1211(b) would limit the taxpayer's loss for AMT purposes.

**Example (1):** In 1995, L exercises an ISO when the fair market value of the shares is $23,000. The option price is $5,000. The exercise of the option results in an AMT preference of $18,000. L's AMT basis in the transferred shares is $23,000 and his regular tax basis is $5000. In 1997, L sells the shares for $12,000, producing a regular tax gain of $7,000 ($12,000 - $5,000). The sale generates an AMT loss of $11,000 ($12,000 - $23,000). If IRC Section 1211(b) does not apply for AMT purposes, L can use the full loss. Consequently, the sale of the shares will result in a reduction of $18,000 (-$11,000 - $7,000) in his AMT income.

Assuming that L has no other AMT items in 1997, and that his regular taxable income before the sale of the shares is $300,000, his regular taxable income would be $307,000 ($300,000 + $7000 gain on the sale of the shares). His AMT income would be $289,000 ($307,000 - $18,000 AMT adjustment).

**Example (2):** Assume the same facts as in example (1), except that IRC Section 1211(b) applies to restrict L's AMT loss on the sale of the transferred shares. Assume, further, that L has no other capital transactions, so that Section 1211(b) would restrict L's capital loss deduction for AMT purposes to $3,000. Under these circumstances, the sale of the shares in 1997 results in a reduction of $10,000 in L's AMT income for the year (-$3,000 allowed loss deduction - $7,000 regular tax gain). His AMT income would be $297,000 ($307,000 -

[2] IRC Section 56(b)(3). See also Reg. Section 1.83-4(b)(1).



MR. BRIAN G. ISAACSON
THE ISAACSON LAW FIRM
701 FIFTH AVENUE, STE. 4770
SEATTLE, WA 98104
WSBA NO. 25921

$10,000 AMT adjustment). L has an AMT capital loss carryforward of $8000 ($11,000 - $3000 loss deducted in 1997).

Support for the result in example (2) comes from the 1986 Blue Book, which states:

"In certain instances, the operation of the alternative minimum tax as a separate and independent tax system is set forth expressly in the Code...

"In other instances, however, where no such express statement is made, Congress did not intend to imply that similar adjustments were not necessary. Thus, for example, for minimum tax purposes it was intended that Section 1211 (limiting capital losses) be computed using minimum tax basis..."[3]

Although the IRS can be expected to espouse this approach, it is unclear whether Section 56(b)(3) (regarding the treatment of Incentive Stock Options for purposes of computing AMTI) actually requires this result.[4] Explanation quoted from Lance W. Rook with Updates by Gerald W. Paulukonis, Tax Planning for the Alternative Minimum Tax, (Matthew Bender & Co., Inc. 2002); *See also* Stewart S. Karlinsky Ph.D., A Complete Guide to Alternative Minimum Tax, (2000-2001 Edition), pp 27-28.

## LAW

The Internal Revenue Code imposes upon taxpayers an alternative minimum tax (AMT) in addition to all other taxes imposed by subtitle A. See IRC Section 55(a). The AMT is imposed upon a taxpayer's AMTI, which is an income base broader than the usual base of taxable income applicable to federal income taxes in general. See H. Rpt. 99-841, vol. 2, conference report on H.R. 3838, "Tax Reform Act of 1986, Vol. 2," Sept. 18, 1986, at II- 249 (individual AMT), II-263 (corporate AMT) (1986), 1986-3 C.V. (Vol. 4) 250, 264. Congress established AMTI as a broad base of income in order to tax taxpayers more closely on their economic income, intending for all taxpayers to pay their fair share of the overall federal income tax burden. See S. Rept. 99-313, at 518-519 (1986), 1986-3 C.B. (Vol. 3) 518-519; H. Rept. 99-426 at 305-306 (1985), 1986-3 C.B. (Vol. 2). 305-306.

IRC Section 56(b)(3) (alternative minimum tax treatment of incentive stock options) states:

[3] 1986 Blue Book p 438. See also K Heinrichson, C Lockwood and C Getz, "Revisiting ISOs With 24% AMT," 22 Tax Adv 151 (1991), which agrees with the result in example (2). The same opinion is expressed by A Bakale, "ISO and AMT Traps," 31 Tax Adv 540 (2000).

[4] The language quoted from the 1986 Blue Book does not otherwise appear in the legislative history of TRA 1986. Thus, it might be argued that this language reflects the view of the Staff of the Joint Committee on Taxation, rather than Congress's view.



MR. BRIAN G. ISAACSON
THE ISAACSON LAW FIRM
701 FIFTH AVENUE, STE. 4770
SEATTLE, WA 98104
WSBA NO. 25921

> Section 422(c)(2) shall apply in any case where the disposition and the inclusion for purposes of this part are within the same taxable year and such section shall not apply in any other case. The adjusted basis of any stock so acquired shall be determined on the basis of the treatment prescribed by this paragraph.

IRC 422(c)(2) states:

> Certain disqualifying dispositions where amount realized is less than value at exercise – if –
>
> > (A) an individual who has acquired a share of stock by the exercise of an incentive stock option makes a disposition of such share within either of the periods described in subsection (a)(1), and
> >
> > (B) such disposition is a sale or exchange with respect to which a loss (if sustained) would be recognized to such individual,
>
> then the amount which is includible in the gross income of such individual, and the amount which is deductible from the income of his employer corporation, as compensation attributable to the exercise of such option shall not exceed the excess (if any) of the amount realized on such sale or exchange over the adjusted basis of such share.

Section 56 (d)(3) Treatment of Incentive Stock Options states:

> Section 421 shall not apply to the transfer of stock acquired pursuant to the exercise of an incentive stock option (as defined in section 422.) Section 422(c)(2) shall apply in any case where the disposition and the inclusion for purposes of this part are within the same taxable year and such section shall not apply in any other case. The adjusted basis of any stock so acquired shall be determined on the basis of the treatment prescribed by this paragraph.

House Committee Report on P.L. 101-239 (Omnibus Reconciliation Act of 1989) states

> Incentive stock options. The bill clarifies that the minimum tax rules applicable to a disqualifying disposition of stock acquired pursuant to the exercise of an incentive stock option where the amount realized is less that [than] the value at the time of exercise follows the regular tax rules of section 422A(c)(2) where the stock is disposed of in the same taxable year the income is taken into account for minimum tax purposes. Thus the amount included in alternative minimum taxable income will not exceed the amount realized on the sale or exchange of the stock over the adjusted basis of the stock.



MR. BRIAN G. ISAACSON
THE ISAACSON LAW FIRM
701 FIFTH AVENUE, STE. 4770
SEATTLE, WA 98104
WSBA NO. 25921

Section 56(a)(4) Alternative Tax Net Operating Loss Deduction states:

> The alternative tax net operating loss deduction shall be allowed in lieu of the net operating loss deduction allowed under section 172.

Section 56(d) Alternative Tax Net Operating Loss Deduction Defined states:

> (1) For purposes of 56(a)(4) , the term "alternative tax net operating loss deduction" means the net operating loss deduction allowable for the taxable year under section 172, except that -
>
> > (A) the amount of such deduction shall not exceed 90 percent of alternate minimum taxable income determined without regard to such deduction, and
> >
> > (B) in determining the amount of such deduction -
> >
> > > (i) the net operating loss (within the meaning of section 172(c)) for any loss year shall be adjusted as provided in paragraph (2), and
> > >
> > > (ii) appropriate adjustments in the application of section 172(b)(2) shall be made to take into account the limitation of subparagraph A.
>
> (2) Adjustments to net operating loss Computation.
>
> > (A) Post - 1986 Loss Years. In the case of a loss year beginning after December 31, 1986, the net operating loss for such year under section 172(c) shall -
> >
> > > (i) be determined with the adjustments provided in this section and section 58
> > >
> > > (ii) be reduced by the items of tax preference determined under section 57 for such year.
> >
> > An item of tax preference shall be taken into account under clause (ii) only to the extent such item increased the amount of the net operating loss for the taxable year under section 172(c)

Committee Report on P.L. 100-647 (Technical and Miscellaneous Revenue Act of 1986) provides:



MR. BRIAN G. ISAACSON
THE ISAACSON LAW FIRM
701 FIFTH AVENUE, STE. 4770
SEATTLE, WA 98104
WSBA NO. 25921

Net operating losses. Under the bill, special rules apply for net operating losses. These rules generally are the same as the present law rules with respect to the alternative minimum tax for individuals.

For purposes of the alternative minimum tax, net operating loss deductions are determined by using a separate computation of alternative minimum tax net operating losses and carryovers.

The amount of the net operating loss under section 172(c) for any taxable year, for purposes of the alternative minimum tax, generally is computed in the same manner as the regular tax net operating loss, with two exceptions. First, the items of tax preference arising in that year are added back to taxable income (or, as with depreciation, adjustments relating to those items are made), and, second for individuals, only those itemized deductions (as modified under section 172(d) allowable in computing alternative minimum taxable income are taken into account. In computing the amount of deduction for years other than the year of the loss (i.e., carryover years), the computed loss is deducted from the alternative minimum taxable income (as modified under section 172(b)(2)(A) in the carryover year (whether or not the taxpayer is subject to the minimum tax in that year).

For example, if in year one, a taxpayer has $20,000 of income and $35,000 of losses, of which $10,000 are preference items, the alternative minimum tax net operating loss for the year is $5.000. Thus, in any subsequent (or prior) year to which the loss may be carried, a $5,000 net operating loss deduction is allowed to reduce income subject to the alternative minimum tax.

Assume that, in year two, the taxpayer has $20,000 of alternative minimum taxable income (without regard to the net operating loss deduction). The taxpayer reduces his or her alternative minimum taxable income to $15,000 by the minimum tax net operating loss deduction. The net operating loss deduction for the regular tax is not affected by this computation (i.e., the taxpayer has a loss carryover of $15,000 from year one to be used under the regular tax).

In 1987 Congress changed the alternative minimum tax treatment of the exercise of Incentive Stock Option from a tax preference item to a tax adjustment item. The intended effect was that the exercise of the shares would be includes as a positive alternative minimum tax adjustment item and sale of the shares would also be a negative alternative minimum tax adjustment item, the losses governed by Section 56(d)(1)(B)(i) and 56(d)(2)(A)(i).



MR. BRIAN G. ISAACSON
THE ISAACSON LAW FIRM
701 FIFTH AVENUE, STE. 4770
SEATTLE, WA 98104
WSBA NO. 25921

Section 56(d)(1)(B)(i) and 56(d)(2)(A)(i) provide that the alternative minimum tax net operating loss deduction under 172(c) shall be increased by an alternative minimum taxable losses under resulting from Incentive Stock Options under 56(b)(3). This treatment is consistent with the language in the House Committee Report which states that the amount included in alternative minimum taxable income will not exceed the amount realized on the sale or exchange of the stock over the adjusted basis of the stock.

IRC Section 56(a)(4) of the Code provides that in determining AMTI for the taxable year, the ATNOL deduction is allowed in lieu of the NOL deduction allowed under Section 172. Section 56(d) defines the ATNOL deduction as the NOL deduction allowable for the taxable year under Section 172 except that in determining the amount of such deduction, the NOL (within the meaning of Section 172(c)) for any loss year is determined with the adjustments provided in Section 56 and Section 58 and reduced by the items of tax preference determined under Section 57 for such year.

For individuals, Section 53 of the Code allows a credit against future years' regular tax (to the extent it exceeds tentative minimum tax) for AMT paid on deferral items. Deferral items are those that involve timing differences (such as accelerated depreciation), rather than a permanent avoidance of tax. The minimum tax credit is allowed only for AMT that is imposed on deferral items for taxable years beginning after 1986.

Section 172(c) of the Code defines the NOL as the excess of the deductions allowed by Chapter 1 of the Code over the gross income. Under Section 172(b), a NOL for any taxable year is a NOL carryback to each of the 2 taxable years preceding the taxable year of such loss, and a NOL carryover to each of the 20 taxable years following the taxable year of the loss. Section 172(a) allows as a deduction for the taxable year an amount equal to the aggregate of the NOL carryovers to such year, plus the NOL carrybacks to such year.

Section 172(e) of the Code provides that in determining the amount of any net operating loss carryback or carryover to any taxable year, the necessary computations involving any other taxable year shall be made under the law applicable to such other taxable year.

Section 1.172-1(e)(2) of the Income Tax Regulations provides that the NOL for any taxable year is determined under the law applicable to that year without regard to the year to which it is to be carried and in which, in effect, it is to be deducted as part of the NOL deduction. Section 1.172-1(e)(3) provides that the amount of the NOL deduction that is allowed for any taxable year is determined under the law applicable to that year.

The conference report to accompany H.R. 3838, H.R. Rep. No. 841, Vol. II, 99th



MR. BRIAN G. ISAACSON
THE ISAACSON LAW FIRM
701 FIFTH AVENUE, STE. 4770
SEATTLE, WA 98104
WSBA NO. 25921

Cong., 2d Sess., pages II-250-284 (minimum Tax Provisions)(September 18, 1986); [P.L. 99-514 (Tax Reform Act of 1986)] states the following language regarding incentive stock options:

K. INCENTIVE STOCK OPTIONS

*PRESENT LAW*

The excess of the fair market value of stock over the exercise price is treated as a preference.

*HOUSE BILL*

The House bill is the same as present law.

*SENATE AMENDMENT*

The Senate amendment is the same as the House bill.

*CONFERENCE AGREEMENT*

The conference agreement generally follows the House bill and the Senate amendment. However, for minimum tax purposes, the basis of stock acquired through the exercise of an incentive stock option after 1986 equals the fair market value taken into account in determining the amount of the preference.

Assume, for example, that an individual pays an exercise price of $10 to purchase stock having a fair market value of $15. The preference in the year of exercise is equal to $5 and the stock has a basis of $10 for regular tax purposes and $15 for minimum tax purposes. If, in a subsequent year, the taxpayer sells the stock for $20, the gain recognized is $10 for regular tax purposes and $5 for minimum tax purposes.

The conference report to accompany H.R. 3838, H.R. Rep. No. 841, Vol. II, 99th Cong., 2d Sess., pages II-250-284 (minimum Tax Provisions)(September 18, 1986); [P.L. 99-514 (Tax Reform Act of 1986)] states the following language regarding net operating losses:

10. Net Operating Losses (NOLs)

NOLs are allowed against alternative minimum taxable income. For years after 1982, minimum tax NOLs are reduced by the items of tax preference. Minimum tax NOLs are carried over under a system separate from but parallel to that applying for regular tax purposes.



MR. BRIAN G. ISAACSON
THE ISAACSON LAW FIRM
701 FIFTH AVENUE, STE. 4770
SEATTLE, WA 98104
WSBA NO. 25921

*HOUSE BILL*

The House bill is the same as present law.

*SENATE AMENDMENT*

The Senate amendment is the same as the House bill.

*CONFERENCE AGREEMENT*

The conference agreement follows the House bill and the Senate amendment, except that NOLs cannot offset more than 90 percent of alternative minimum taxable income. As with the 90 percent limitation on the use of the foreign tax credit, amounts disallowed by reason of this limitation may be carried over to other taxable years.

Thus, for example, assume that in 1987 a taxpayer has $10 million of alternative minimum taxable income for the year, and minimum tax NOLs in the amount of $11 million. The NOLs reduce alternative minimum taxable income to $1 million. This gives rise to tentative minimum tax liability of $210,000. The taxpayer carries forward $2 million of minimum tax NOLs to 1988. Since the allowability of net operating losses is determined prior to the allowability of foreign tax credits, this taxpayer would not be permitted to use any minimum tax foreign tax credits in 1987.

It is clarified that an election under Section 172(b)(3)(C) to relinquish the carryback period applies both for regular tax and for minimum tax purposes.

The Job Creation and Worker Assistance Act of 2002 modifies the AMT by repealing the 90% limit for net operating losses. The provision allows an NOL deduction attributable to NOL carrybacks arising in taxable years ending in 2001 and 2002, as well as NOL carryforwards to these tax years, to offset 100 percent of a taxpayer's AMTI.

Section 172(b)(2) should be appropriately applied in computing AMTI to take proper account of the order that the NOL carryover and carrybacks are used as a result of this provision. *See* Section 56(d)(1)(B)(ii).

In comparison to the language in the conference agreement, the commentary in the 1986 Blue Book contains the following language:

> STRUCTURE OF MINIMUM TAX AS AN ALTERNATIVE SYSTEM: -- For most purposes, the tax base for the new alternative minimum tax is determined as though the alternative minimum tax were a separate and independent income tax



MR. BRIAN G. ISAACSON
THE ISAACSON LAW FIRM
701 FIFTH AVENUE, STE. 4770
SEATTLE, WA 98104
WSBA NO. 25921

> system. Thus, for example, where a Code provision refers to a 'loss' of the taxpayer from an activity, for purposes of the alternative minimum tax the existence of a loss is determined with regard to the items that are includable and deductible for [alternative] minimum tax, not regular tax, purposes.
>
> In certain instances, the operation of the alternative minimum tax as a separate and independent tax system is set forth expressly in the Code. With respect to the passive loss provision, for example, Section 58 provides expressly that in applying the limitation for minimum tax purposes, all minimum tax adjustments to income and expense are made and regular tax deductions that are items of tax preference are disregarded.
>
> In other instances, however, where no such express statement is made, Congress did not intend to imply that similar adjustments were not necessary. Thus, for example, for [alternative] minimum tax purposes, it was intended that Section 1211 (limiting capital losses) be computed using [alternative] minimum tax basis, that Section 263A (requiring the capitalization of certain depreciation deductions to inventory) apply with regard to [alternative] minimum tax depreciation deductions, and that Section 265 (relating to expenses of earning tax-exempt income) apply with regard only to items excludable from alternative minimum taxable income. [General Explanation of the 1986 Act, supra at 438; fn. Refs. Omitted and alterations made by respondent.].

General Explanation of the Tax Reform Act of 1986, prepared by the Staff of the Joint Committee on Taxation, 99th Cong., 2d Sess., pages 429-473 (Minimum Tax Provisions)(May 4, 1987); P.L. 99-514. Hereinafter "1986 Blue Book."

## ANALYSIS

Regarding the test to determine whether the Joint Committee Staff Explanation in the 1986 Blue Book rises to the level of congressional intent, the Supreme Court in NationsBank v. Variable Annuity Life Ins. Co., provided as follows:

> Under the formulation now familiar, when we confront an expert administrator's statutory exposition, we inquire first whether "the intent of Congress is clear" as to "the precise question at issue." Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842 (1984). If so, "that is the end of the matter." Ibid. But "if the statute is silent or ambiguous with respect to the specific issues, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id., at 843. If the administrator's reading fills a gap or defines a term in a way that is reasonable in light of the legislature's revealed design, we give the administrator's judgment "controlling weight." Id., at 844 [NationsBank v. Variable Annuity Life Ins. Co. 513 U.S.



MR. BRIAN G. ISAACSON
THE ISAACSON LAW FIRM
701 FIFTH AVENUE, STE. 4770
SEATTLE, WA 98104
WSBA NO. 25921

251, 115 S.Ct. 810, 813-814(1995); citations omitted.]

In Redlark v. Commissioner, 141 F.3d 936, 1998 U.S. App. LEXIS 7150, 98 Cal. Daily Op. Service 2647, 98 D.A.R. 3669, 81 A.F.T.R.2d (RIA) 1483, 98-1 U.S. Tax Cas. (CCH) P50322 (9th Cir. 1998), the Internal Revenue Service relied in part upon the Joint Committee Staff explanation of the Tax Reform Act of 1986. Regarding the precedential authority of the Joint Committee Staff Explanation (i.e. "the Blue Book"), the Tax Court provided:

> "Nor can respondent's position be salvaged by the Joint Committee Staff Explanation. Such a document is not part of the legislative history although it is entitled to respect. E.g., Condor Intl., Inc. v. Commissioner, 98 T.C. 203, 227 (1992); *See also* Estate of Hutchinson v. Commissioner, 765 F.2d 665, 669-670 (7th Cir. 1985), affg. T.C. Memo 1984-55; Livingston, "What's Blue and White and Not Quite as Good as a Committee Report: General Explanations and the Role of 'Subsequent' Tax Legislative History," 11 Amer. J. Tax Policy 91 (1994). Where there is not corroboration in the actual legislative history, we shall not hesitate to disregard the General Explanation as far as congressional intent is concerned. *See* Estate of Wallace v. Commissioner, 965 F.2d 1038, 1050-1051 (11th Cir. 1992), affg. 95 T.C. 525 (1990); Zinniel v. Commissioner, 89 T.C. 357, 367 (1987), aff'd 883 F.2d 1350 (7th Cir. 1989); *See also* Livingston, *Supra* at 93 ("The Blue Book is on especially weak ground when it adopts anti-taxpayer positions not taken in the committee reports."). Given the clear thrust of the conference committee report, the General Explanation is without foundation and must fall by the wayside. To conclude otherwise would elevate it to a status and accord it a deference to which it is simply not entitled."

Of particular interest in Redlark, is a footnote in the Tax Court's opinion indicating that the TRA '86 Blue Book is to be given even lesser respect than other Blue Books. In connection with its statement that a Blue Book provided particularly weak authority when there was no corroboration in the "real" legislative history, the Tax Court noted that TRA '86 was enacted on October 22, 1986, during the 99th Congress, but the related Blue Book was published on May 4, 1987, during the 100th Congress: "Thus, the [Blue Book] is not even entitled to the respect it might otherwise be accorded if it had been prepared for the Congress which enacted Section 163(h)." Although the Ninth Circuit Court of Appeals reversed and remanded Redlark, they affirmed that post enactment explanations cannot properly be described as legislative history. *See* Redlark v. Commissioner, 141 F.3d 936, 1998 U.S. App. LEXIS 7150, 98 Cal. Daily Op. Service 2647, 98 D.A.R. 3669, 81 A.F.T.R.2d (RIA) 1483, 98-1 U.S. Tax Cas. (CCH) P50322 (9th Cir. 1998).

Commentators have reported that this criticism applies to the entire TRA'86 Blue Book, and would indicate that all its statements will be given even less deference than



MR. BRIAN G. ISAACSON
THE ISAACSON LAW FIRM
701 FIFTH AVENUE, STE. 4770
SEATTLE, WA 98104
WSBA NO. 25921

otherwise. *See* Shop Talk, "Tax Court Gives TRA '86 Blue Book ' Lesser Respect,'" 84 JTAX 190 (March 1996). In contrast, in FSA 1999-1115 (dated April 23, 1993), the Assistant Chief Counsel (Field Service) issued an IRS memorandum to an unnamed IRS district counsel, which concluded inter alia that the 1986 Blue Book's explanation "is authoritative." In the FSA, the IRS stated that the Blue Book is competent authority, especially where there is no legislative history or statutory provision for guidance on an issue (see the November 1999 Shop Talk, *supra,* page 319).

Similarly, in Tutor-Saliba Corporation, 115 TC 1 (2000), the Tax Court quoted from the TRA '86 Blue Book in considering the validity of Reg. 1.460-6(c)(2)(vi), relating to the completed contract method of accounting. The court observed in a footnote that "while the General Explanation of TRA '86 does not rise to the level of legislative history because it is prepared by congressional staff after enactment of the statute, it has been considered highly indicative of what Congress did, in fact, intend and we take it into consideration." See Shop Talk, "Legal Effect of the TA '86 Blue Book: Whatever You Want it to Be!" 93 JTAX 256 (October 2000).

However, in a case directly on point, Allen v. Commissioner, 118 T.C. 1, 2002 U.S. Tax Ct. LEXIS 1, 118 T.C. No. 1 (2002), the Tax Court recently discredited the TRA '86 Blue Book, even though both the taxpayer and the IRS cited its provisions for support of their respective arguments. At issue in Allen was whether the wage-expense limitation of Section 280C(a) enters into the calculation of alternative minimum taxable income (AMTI). The court held that it did, based on a plain reading of the relevant statutory provisions. In a pointed observation, the opinion states that the "General Explanation of the 1986 Act, the source of the 'legislative history' upon which the parties primarily rely to support their assertions of legislation intent, is not part of the statute's legislative history," (citing Hutchinson and Condor International, supra).

The Allen Court analyzed the following language from the General Explanation of the 1986 Act:

> STRUCTURE OF MINIMUM TAX AS AN ALTERNATIVE SYSTEM: -- For most purposes, the tax base for the new alternative minimum tax is determined as though the alternative minimum tax were a separate and independent income tax system. Thus, for example, where a code provision refers to a 'loss' of the taxpayer from an activity, for purposes of the alternative minimum tax the existence of a loss is determined with regard to the items that are includable and deductible for [alternative] minimum tax, not regular tax, purposes.
>
> In certain instances, the operation of the alternative minimum tax as a separate and independent tax system is set forth expressly in the Code. With respect to the passive loss provision, for example, Section 58 provides expressly that in applying the limitation for minimum tax purposes, all minimum tax adjustments



MR. BRIAN G. ISAACSON
THE ISAACSON LAW FIRM
701 FIFTH AVENUE, STE. 4770
SEATTLE, WA 98104
WSBA NO. 25921

to income and expense are made and regular tax deductions that are items of tax preference are disregarded.

In other instances, however, where no such express statement is made, Congress did not intend to imply that similar adjustments were not necessary. Thus, for example, for [alternative] minimum tax purposes, it was intended that Section 1211 (limiting capital losses) be computed using [alternative] minimum tax basis, that section 263A (requiring the capitalization of certain depreciation deductions to inventory) apply with regard to [alternative] minimum tax depreciation deductions, and that Section 265 (relating to expenses of earning tax-exempt income) apply with regard only to items excludable from alternative minimum taxable income. [General Explanation of the 1986 Act, supra at 438; fn. Refs. Omitted and alterations made by respondent.].

The Allen Court ruled:

We do not believe that the "legislative history" referenced by the parties displaces our plain and unambiguous reading of the relevant statutory provisions. To be sure, the parties, but for citations to the conferees' understanding of the law that preceded the 1986 Act, have not even cited the Court one iota of persuasive legislative history in support of their contentions. The General Explanation of the 1986 Act, the source of the "legislative history" upon which the parties primarily rely to support their assertions of legislative intent, is not part of the statute's legislative history. *See* Estate of Hutchinson v. Commissioner, 765 F.2d 665, 669-670 (7th Cir. 1985), affg. T.C. Memo 1984-55; Condor Intl., Inc. v. Commissioner, 98 T.C. 203, 227 (1992). *See* generally Mertens, Law of Federal Income Taxation, sec. 3.20, at 31 (1994):

> The purpose of the Blue Book [the Staff of Joint Committee's general explanation of a tax statute] is to provide, in one volume, a compilation of the legislative history of a piece of tax legislation. While the document is most helpful as a handy reference volume it also gives some guidance. Where the Blue Book's explanation differs from that in a conference report it may serve to alert the reader that a technical correction is needed to reconcile the views.

Such is especially true as to the General Explanation of the 1986 Act, which was written by the Joint Committee of Taxation for the 100th Congress (Joint Committee), or, in other words, the Congress that next followed the Congress that passed the 1986 Act.[5] Although the Staff of Joint Committee's explanation of a

[5] The Joint Committee consisted of 10 Congressmen, 5 from the Senate and 5 from the House of Representatives. Staff of Joint Comm. On Taxation, General Explanation of the Tax Reform Act of 1986



MR. BRIAN G. ISAACSON
THE ISAACSON LAW FIRM
701 FIFTH AVENUE, STE. 4770
SEATTLE, WA 98104
WSBA NO. 25921

tax statute may be entitled to respect as a document that is prepared in connection with the legislative process by individuals who are intimately involved in the process, we shall not hesitate to disregard the expressions set forth therein where, as here, those expressions are barren of corroboration in the legislative history. Zinniel v. Commissioner, 89 T.C. 357, 367 (1987), affd. 883 F.2d (7th Cir. 1989); *See also* Estate of Wallace v. Commissioner, 965 F. 2d 1038, 1050-1051 (11th Cir. 1992), aff'g. 95 T.C. 525 (1990).

The language quoted from the 1986 Blue Book does not otherwise appear in the legislative history of the 1986 Tax Reform Act. In addition, a $3,000 limitation on alternative minimum tax loss carryback is inconsistent with Section 56(a)(4) which allows an ATNOL deduction. In Plumb v. Commissioner, 97 T.C. 632 (1991), the Tax Court held that an election under Section 172(b)(3)(C) to relinquish the carryback period applies to both the NOL and the ATNOL, the Tax Court recognizes that ATNOLs exist separately from NOLs, and that ATNOLS may be carried back pursuant to the rules of Section 172.

In PLR 9317002 (April 30, 1993), the Service ruled in computing AMTI that Section 56(a)(4) allows an ATNOL deduction, which is defined in Section 56(d) as the NOL deduction allowable for the taxable year under Section 172, except that in determining the amount of such deduction the net operating loss (within the meaning of Section 172(c)) for any loss year is determined with the adjustments provided in Section 56 and Section 58, and reduced by the items of tax preference determined under section 57 for such loss year. Under Section 172, the NOL deduction allowable for the taxable year is equal to the NOL carryovers plus the NOL carrybacks. Read together, Section 56 and Section 172 thus provide authority for computing an alternative tax net operating loss with the adjustments and tax preference items arising in the loss year, and then carrying that loss back and applying it as an alternative tax net operating loss deduction in computing AMTI in the carryback year.

**Arrowsmith Doctrine**

Under the Arrowsmith doctrine, when there is a gain in one year that is closely related to a loss in a later year, the gain and loss are treated as two aspects of the same transaction. *See* Arrowsmith, 344 U.S. 6, (1952); United States v. Skelly Oil, 394 U.S. 678, (1969). *See also* Merchants National Bank v. Commissioner, 199 F.2d 657 (5th Cir. 1952); Arcadia Savings and Loan Association et al. v. Commissioner, 34 T.C. 679 (1960), aff'd 300 F.2d 247 (9th Cir. 1962); West Seattle National Bank of Seattle v.

---

(J. Comm. Print 1987)(General Explanation of the 1986 Act) II. The General Explanation of the 1986 Act was prepared by the Staff of Joint Committee, in consultation with the staffs of the House Ways and Means Committee and the Senate Finance Committee. Letter from David H. Brockway, Chief of Staff, to the Hon. Dan Rostenkowski, Chairman, and the Hon. Lloyd Bentsen, Vice-Chairman. Id. at XVII.



MR. BRIAN G. ISAACSON
THE ISAACSON LAW FIRM
701 FIFTH AVENUE, STE. 4770
SEATTLE, WA 98104
WSBA NO. 25921

Commissioner, 33 T.C. 341, aff'd 288 F. 2d 47 (9th Cir., Feb. 27, 1961); Geyer, Cornell & Newell, Inc. v. Commissioner, 6 T.C. 96 (1946) (relation-back doctrine applied to require an ordinary income treatment).

In Arrowsmith, 344 U.S. 6 (1956), two stockholders liquidated corporation in Year 1 and recognized a capital gain. In Year 5, due to shareholder transferee liability, they were required to pay some expenses of the liquidated corporation. The shareholders took an ordinary deduction for the outlays and the Supreme Court held that the expenditures related back to the capital gain recognized and therefore, were a capital loss. The court discussed this holding in terms of that although there is an accounting period, some events are so integrated with a prior transaction, that the latter needs to look to the former for guidance as to its character. The judges noted that if the two events had occurred in the same year, that the payment would have reduced the amount of reported capital gains; therefore, the loss was related back to the capital gain and must be characterized as a capital loss. *See* Id. at 8-9.

The Court followed Arrowsmith in United States v. Skelly Oil, 394 U.S. 678, (1969). Skelly Oil, another Supreme Court case, has an interesting twist on this doctrine. Skelly had received some income that was eligible for a oil depletion allowance of 27.5%. In effect, the includible income was only 72.5% (100% -27.5% depletion allowance). In a future year, the company was forced to repay some of the income. The company deducted 100% of the payments, but the Court held that the deduction related back to the income earned and therefore, only 72.5% of the expenditures were deductible.

In a series of 16(b) short swing profit cases, Cummings v. Commissioner, 506 F.2d 449 (2d Cir. 1974), cert. denied, 421 U.S. 913 (1975), rev'g 60 T.C. 91, supplemental opinion 61 T.C. 1, 1973; Mitchell v. Commissioner, 428 F.2d 259 (6th Cir. 1970), cert, denied, 401 U.S. 909 (1971), rev'g, 52 T.C. 170 (1969); Morales v. Consolidated Oil & Gas, Inc., 1982 U.S. Dist. LEXIS 14567, Fed. Sec. L. Rep. (CCH) P98796 (S.D.N.Y. July 17, 1982); Brown v. Commissioner, 529 F.2d 609 (10th Cir. 1976), rev'g, T.C.M. 1973-275; Anderson v. Commissioner, 480 F.2d 1304 (7th Cir. 1973), rev'g 56 T.C. 1320 (1971); G.C.M. 37649; 1978 IRS GCM LEXIS 104, the Arrowsmith doctrine was applied to refer back a subsequent payment to the capital gain sale and make the character of the repayment a capital loss. Each of the director/shareholders argued that the payment was made to protect their business reputation and therefore, should be an ordinary deduction. The Tax Court agreed with the taxpayer, but three different court of appeals circuits, overruled the lower court and held that the payment was a capital loss under Arrowsmith, since it was so integrated with the gain on the sale of stock.

In Arrowsmith, the judges noted that if the purchase and sale had occurred in the same year, that the payment would have reduced the amount of reported capital gains; therefore, the loss was related back to the capital gain and must be characterized as a capital loss. The IRS has used the Arrowsmith Doctrine in several revenue rulings, *See*



MR. BRIAN G. ISAACSON
THE ISAACSON LAW FIRM
701 FIFTH AVENUE, STE. 4770
SEATTLE, WA 98104
WSBA NO. 25921

Rev. Rul. 79-278, 1979-2 C.B. 302 and Gen. Couns. Mem. 37943 (April 27, 1979), Rev. Rul. 67-311, 1967-2 C.B. 290) to relate back a subsequent event's character to an earlier event where they are integrated or have nexus. It is logical under the Arrowsmith Doctrine that the net effect of the second event should be treated as the same character as the initial event. This would lead to the conclusion that the negative adjustment (up to the amount of the positive adjustment) should not be a capital loss, since the positive adjustment was not a capital gain. This conclusion is consistent with Cummings v. Commissioner, 506 F.2d 449 (2d Cir. 1974), cert. denied, 421 U.S. 913 (1975), rev'g 60 T.C. 91, supplemental opinion 61 T.C. 1, 1973; Mitchell v. Commissioner, 428 F.2d 259 (6th Cir. 1970), cert, denied, 401 U.S. 909 (1971), rev'g, 52 T.C. 170 (1969); Morales v. Consolidated Oil & Gas, Inc., 1982 U.S. Dist. LEXIS 14567, Fed. Sec. L. Rep. (CCH) P98796 (S.D.N.Y. July 17, 1982); Brown v. Commissioner, 529 F.2d 609 (10th Cir. 1976), rev'g, T.C.M. 1973-275; Anderson v. Commissioner, 480 F.2d 1304 (7th Cir. 1973), rev'g 56 T.C. 1320 (1971); Gen. Couns. Mem. 37649; 1978 IRS GCM LEXIS 104. An adjustment under Arrowsmith would allow an NOL carryback under Rev. Rul. 87-44.

## CONCLUSION

There is a reasonable basis that the Taxpayer is permitted AMT loss treatment at the time of sale or liquidation of the Taxpayer's stock options. Rev. Rul. 87-44 allows an alternative minimum tax net operating loss carryback for adjustments in computing alternative minimum taxable income.

Based on the foregoing, Taxpayers should not be subject to penalties under Code §6662(d) with respect to the treatment in their U.S. Federal income tax return of the items discussed herein, because, as required by Code §6664(d) and the Treasury Regulations promulgated thereunder, based on the foregoing opinion above and the discussion of such opinions in the text of this letter, as required by Treas. Reg. 1.6664-4(e)(2)(i)(B)(2), there is a reasonable basis that such treatment will be sustained if challenged by the IRS.

If the Internal Revenue Service has further questions about this memorandum or requires additional supporting documentation, please contact Brian G. Isaacson by telephone at 206-448-1011 or by e-mail at briani@isaacsonlawfirm.com.

Respectfully submitted,

Brian G. Isaacson

Brian G. Isaacson
Attorney at Law
United States Tax Court #IB00016
Washington State Bar Association #25921



MR. BRIAN G. ISAACSON
THE ISAACSON LAW FIRM
701 FIFTH AVENUE, STE. 4770
SEATTLE, WA 98104
WSBA NO. 25921