IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-1071 T

(Judge Susan G. Braden)

DANIEL D. PIERCE AND HENDY J. LUND,

Plaintiffs

v.

UNITED STATES,

Defendant

# DEFENDANT'S REPLY BRIEF

Pursuant to RCFC 56, defendant, the United States, submits the following reply to the plaintiff's Memorandum in Opposition to the Defendant's Cross-Motion for Summary Judgment and Reply to the Defendant's Opposition.

A. *There are no genuine disputes of material fact in this case*.

Plaintiffs contend that there are five disputed material facts that preclude summary judgment and relate to the correct amount of plaintiffs' 2001 tax liability. (P. Opposition at 1-2.) The issue in a tax refund suit is whether the taxpayer overpaid his tax in the year in issue, and the amount of any such overpayment. *Lewis v. Reynolds*, 284 U.S. 281 (1932); *Dysart v. United States*, 169 Ct. Cl. 276, 340 F. 2d 624 (1965). If, as plaintiffs contend, there are genuine disputes of material fact which affect the correct determination of plaintiffs' underlying tax liability and

the determination whether plaintiffs' are eligible for a tax refund, then the Court cannot decide this case on summary judgment. However, none of the matters plaintiffs address in their opposition are disputes of material fact.

1. *Capital gains.*

The first issue identified by plaintiffs relates to plaintiffs having incurred $281,422.00 in capital gains and $996.00 in dividends in 2001, in addition to the amounts reported on their original return for that year. (P. Opposition at 1.) There is no dispute between the parties over this fact. Defendant's proposed finding 14 simply provides that plaintiffs failed to report the additional capital gains and dividends <u>on their original 2001 return</u>, filed on April 15, 2002. (D. Finding 15.) Plaintiffs' opposition only states that the plaintiffs reported the additional capital gains and dividends on an <u>amended 2001 return</u> plaintiffs filed on February 8, 2005. (P. Opposition at 1.) Plaintiffs' do not dispute the amount of the additional capital gains and dividends they incurred in 2001, and they do not dispute that those items were not reported on their <u>original</u> return for 2001, the only material facts regarding this issue.

2. *Disputed tax liability*.

The second issue plaintiffs claim is a dispute of material fact is the correct calculation of plaintiffs' 2001 tax liability. In fact, though, there is no dispute between the parties with respect to this issue. The IRS determined that plaintiffs owed $30,174.00 in additional tax for 2001. (D. Finding 15.) Plaintiffs, on their 2001 amended return, reported that they owed $26,884.00 in additional tax. (Issacson Decl. Ex. A-13.) The difference between the two amounts is the result of applying the reductions in itemized deductions and exemptions mandated by § 68(a) and

§ 151(d). (Lund Declaration Ex. K at 29-30.) Section 68(a) provides that a taxpayer's itemized deductions begin to be reduced when that taxpayer's adjusted gross income exceeds the threshold amount in § 68(b)(1), which in 2001 would be about $145,000.00.[1] Section 151(d)(3)(C) provides that a taxpayer's exemptions begin to be reduced when that taxpayer's adjusted gross income exceeds $150,000.00. Including the $281,422 of additional capital gains and $996.00 of additional dividends in plaintiffs' 2001 adjusted gross income put plaintiffs over the thresholds in § 68(b) and § 151(d). Pursuant to § 86(b), plaintiffs' 2001 itemized deductions were reduced by $5,322.00, and, pursuant to § 151(d), plaintiffs' 2001 exemptions were reduced by $4,408.00. (D. Finding 15.) Those reductions account for the difference between the $30,174.00 tax liability determined by the IRS, and the $26,884.00 tax liability reported on plaintiffs' 2001 amended return. Therefore, there is no dispute of material with regard to this issue.

3. *Correct AMT liability.*

The next issue plaintiffs raise is the correct amount of plaintiffs' tentative Alternative Minimum Tax (hereinafter, "AMT") liability in 2001. Plaintiffs' contend that their 2001 tentative AMT liability is $0.00, while the IRS determined the 2001 tentative AMT liability is $7,386.00. (P. Opposition at 2.) The difference between the two amounts is not the result of any dispute of fact. It is based solely on plaintiffs' contention of law that the $3,000.00 limitation in § 1211, on the deduction of capital losses, does not apply to the AMT. Plaintiffs have not otherwise contested the correctness of the IRS calculation of plaintiffs' 2001 tentative AMT

---

[1]The threshold amount in § 68(b)(1) was $100,000.00 for a joint return in 1991. Section 68(b)(2) provides that the threshold amount shall increase each year by a cost of living adjustment. Those adjustments increased the threshold amount in 2001 to about $145,000.00.

liability. The question of whether § 1211 applies to the determination of AMT is a question of law, not fact.

4. *Correct AMT credit.*

The fourth issue involves the correct amount of AMT credit available to offset plaintiffs' 2001 regular tax liability. This turns on the same issue set forth in number 3 above. Section 53(c) limits the amount of credit that can be claimed in any year to the amount by which the taxpayer's regular tax liability exceeds his or her tentative AMT liability. The IRS determined that plaintiffs' 2001 AMT credit was $22,788.00, which was the amount of regular tax for the year ($30,174.00) less the tentative AMT ($7,386.00). Plaintiffs' contend that their 2001 AMT credit should be equal to the amount of their regular tax liability, because the tentative AMT for 2001 was $0.00. (P. Opposition at 2.) This dispute involves solely the question of whether § 1211 applies to the AMT, which is a legal, not factual, dispute.

5. *Share transfer date*.

The final issue concerns when the stock subject to plaintiff Hendy Lund's exercise of her stock options in 2000, was transferred to Lund. (P. Opposition at 2.) Section 83 governs the taxability of property transferred in exchange for services. That section, and the regulations promulgated thereunder, set forth the rules governing whether and when a transfer of property has occurred. Plaintiffs argue that, pursuant to § 83, there was no transfer until the stock became vested. Defendant contends that, pursuant to § 83, the transfer occurred when the options were exercised. The parties do not dispute the operative facts; the date the option was exercised, the terms of the option agreement, or the dates the stock vested. The only dispute is the proper application of § 83 and related regulations to those facts. The dispute between the parties as to

when the stock in question was transferred involves solely the correct interpretation of § 83, and related regulations. This is a legal, not a factual dispute.

B. *Plaintiffs' argument regarding the correct sequence of § 56(d)(2)(A) is irrelevant here.*

Plaintiffs make a detailed argument regarding the interplay of the provisions of § 56(d)(2)(A) and § 172. (P. Opposition 3-7.) Section 56(d)(1) provides for a deduction of an AMT net operating loss (hereinafter, "AMT NOL"). The AMT NOL under § 56(d)(1), is the taxpayer's regular net operating loss (hereinafter, "NOL"), determined under § 172, adjusted in accordance with the provisions in § 56(d)(2).

Under these provisions, the starting point is thus whether there is a regular NOL pursuant to § 172. § 56(d)(1). If there is no regular NOL under § 172, there is nothing to which to apply the adjustments set forth in § 56(d)(2). *Merlo v. Commissioner*, 126 T.C. 205, 212-213 (2006); *Spitz v. Commissioner*, T.C. Memo. 2006-168, 2006 WL 2356126 at 5 (2006), *Norman v. United States*, 2006 WL 2038264 at 6 (N.D.Cal. 2006); *Anthony Kadillak v. Commissioner*, 127 T.C. No. 13, 2006 WL 3208919 at 11 (2006). Indeed, plaintiffs' argument regarding the correct sequence of applying the sub-parts of § 56(d)(2) and § 172(c) was today rejected by this Court in *Lauren Guzak v. United States*, Fed.Cl. No. 05-1070, slip opinion at 21 (Feb. 15, 2007), a case involving facts substantially the same as those here.

In the year in issue, 2001, plaintiffs did not have a loss. Rather, they had taxable income in the amount of $160,464.00. (Lund Dec. Ex. K at 44.) Since in the year in issue plaintiffs did not have a NOL for purposes of § 172, § 56(d) does not apply here. Therefore, plaintiffs' argument regarding the correct sequence of the sub-parts of § 56(d)(2) is irrelevant to this case.

Plaintiffs contend that their tentative AMT liability is $0.00 because they are allowed to deduct in 2001, for AMT purposes, all the AMT capital loss incurred in that year. In contrast, the IRS determined that pursuant to § 1211, plaintiffs are allowed to deduct only $3,000.00 in AMT capital losses incurred in 2001 in calculating their tentative AMT liability. Applying that limitation, the amount of plaintiffs' 2001 tentative AMT liability is $7,368.00. This is the amount the plaintiffs seek to have refunded in this case.[2] Therefore, plaintiffs entitlement to the refund at issue is dependent solely on whether the § 1211 limitation applies to the AMT – plainly a legal question .

Treas. Reg. § 1.55-1(a) provides that all code provisions apply to the AMT unless expressly excluded by statute. There is nothing in §§ 55-58, the provisions governing the AMT, or the regulations thereunder, excluding the limitation in § 1211 from the calculation of a taxpayer's AMT. Not surprisingly therefore, plaintiffs argument that § 1211 does not apply to the AMT has been uniformly rejected by every court that has addressed it, including this Court. *Guzak; Merlo; Spitz; Norman*; *Montgomery v. Commissioner*, 127 T.C. 3, 2006 WL 2472807 (2006), *Pavlosky v. United States*, 2006 WL 1867468 (Bankr., S.D. Tex. 2006); *Jonathan and Kimberly Palahnuk v. Commissioner*, 127 T.C. 9 (2006); *Kadillak*; *Don Hernandez and Katherine Hernandez v. United States*, 2006 WL 2620000 (C.D. Cal. 2006). Since § 1211 applies to the computation of a taxpayer's AMT liability, plaintiffs are not entitled to the refund sought in this action.

---

[2]Plaintiffs complaint seeks a refund of $35,160.00. (Comp. ¶ 8.) However, as noted in defendant's opening brief, and confirmed by plaintiffs' exhibits, the IRS has already refunded $27,774.00 of that amount to plaintiffs. (D. Brief at 1; Lund Declaration Ex. K at 3.) Therefore, the remaining amount of tax plaintiffs seek to have refunded is $7,386.00.

Plaintiffs again argue in their opposition that Congress intended that § 1211 not apply to the AMT. (P. Opposition at 10.) However, plaintiffs do not address the discussion in defendant's opening brief and made no effort to distinguish the uniform jurisprudence holding that Congress intended § 1211 to apply to the computation of the AMT. *Spitz*; *Pavlosky*, 2006 WL 1867468 at 3; *Norman*; *Merlo*, 126 T.C. at 212. This Court in *Guzak* also specifically rejected plaintiffs' Congressional intent argument. *Guzak*, slip opinion at 22-23. For the reasons set forth in defendant's opening brief and the decisions of every court that has examined this issue, the Congressional intent plaintiffs' divine from the legislative does not exist. (D. Br. at 15-16.)

The legislative history related to a recent amendment to the AMT, Section 402 of the Tax Relief and Health Care Act of 2006, PL 109-432 (Dec. 20, 2006) (hereinafter, "the Act"), confirms that § Section 1211 applies to the computation of AMT. While there were no committee reports prepared with respect to the Act, attached as exhibit A are the pertinent sections of the "Technical explanation of H.R. 6408, the 'Tax Relief and Health Care Act of 2006,' as introduced in the House on December 7, 2006," prepared by the Staff of the Joint Committee on Taxation, December 7, 2006, at 83-85 (hereinafter, "Technical Explanation"). The Technical Explanation makes it clear that the $3,000.00 limitation on the deduction of long term capital losses set forth in § 1211 applies to the AMT:

> If the stock is sold for less than the amount paid for the stock, the loss may not be allowed in full in computing AMTI by reason of the $3,000 limit on the deductibility of net capital losses. Thus, the excess of the regular tax over the tentative minimum may not reflect the full amount of the loss.

(Joint Committee Report, Ex. A, fn. 1102, at 84.) This Court in *Guzak* also held that the Technical Explanation confirms that the limitation in § 1211 applies to the AMT. *Guzak*, slip

opinion at 22. Since, as a matter of law, § 1211, and specifically the $3,000.00 limitation, apply to the computation of AMT, plaintiffs are not entitled to a refund in this case.

C. *The validity of the § 83(b) election in this case is irrelevant.*

Plaintiffs also contend that the § 83(b) election plaintiff Hendy Lund made in 2000, when she exercised her stock options, is invalid. (P. Opposition at 14.) This issue is, however, irrelevant to the question of whether plaintiffs are entitled to a refund of $7,386.00 in 2001. Whether plaintiffs are entitled to that refund depends solely on whether § 1211 applies to the computation of AMT. If that section applies, plaintiffs are not entitled to the refund sought in the complaint; if the Court were to hold that it does not apply, then plaintiffs are entitled to that refund. This is true whether the § 83(b) election was valid or not.[3]

[3]If the Court were to conclude that § 1211 does not apply to the AMT, a result inconsistent with the plain language of § 56, and uniform judicial authority, plaintiffs would be entitled to take into account the full amount of the AMT capital loss they incurred in 2001, in computing their tentative AMT liability for that year. If the § 83(b) election was invalid, it would reduce the amount of AMT capital loss plaintiffs incurred in 2001, but that loss would still be sufficient to offset any AMT income in that year. So the validity of the election would have no effect on the amount of refund plaintiffs would be entitled to if the Court were to accept plaintiffs' arguments regarding § 1211.

If the Court rules here, as it did in *Guzak*, that § 1211 does apply to the computation of the AMT, plaintiffs' would not be entitled to the refund sought in the Complaint even if the § 83(b) election were invalid. If that election were invalid, plaintiffs' 2001 AMT income would be increased by $51,015.63, the difference between the $42.00 per share fair market value of the 1,250 shares that vested in 2001, and the amount paid to exercise those shares. (Lund Declaration ¶ 9; King Declaration Ex. 2 at 9.) Plaintiffs acknowledge this result. (P. Opposition at 15.) The increase in plaintiffs; 2001 AMT income would increase plaintiffs' 2001 AMT tentative tax by $12,753.90. Pursuant to § 53(c), that increase in the AMT tentative tax would reduce the amount of plaintiffs' AMT credit by a like amount. Therefore, if the § 83(b) election were invalid, and § 1211 applies to the AMT, plaintiffs' 2001 tax liability would be increased, not decreased by $12,753.90.

Indeed, plaintiffs are arguing against their own interests when they claim the § 83(b) election was invalid. If the Court were to conclude here that § 1211 applies to the AMT, as it did in *Guzak*, the invalidity of the § 83(b) election would result in $12,753.00, of the $22,788.00 refund plaintiffs have already received for 2001, becoming an erroneous refund. Plaintiffs arguments regarding the validity of the § 83(b) election could result in plaintiffs having to repay to the IRS $12,753.00 of the refund they received for their 2001 tax year. (D. Br. at 12.) Plaintiffs have not disputed defendant's calculations in this regard.

In any event, plaintiff Hendy Lund's § 83(b) election is valid for the reasons set forth in its opening brief. (D. Br. at 13-15.) As explained in that brief, plaintiffs' argument that is must acquire a "secured property interest" before there can be a transfer for purposes of § 83 is contrary to the regulations under that section, which holds that a transfer occurs when the taxpayer acquired a "beneficial interest" in the property in question. (D. Br. at 13-14.) Plaintiffs also have made no attempt to distinguish the Tax Court's decision in *Kadillak*. In that case, which involved facts substantially the same as those present in this case, the Tax Court specifically rejected the same arguments advanced by plaintiffs here, holding that a transfer occurs for purposes of § 83 when the taxpayer exercises the option, not when the taxpayer become vested in the stock. *Kadillak*, 2006 WL 3208919 at 9. The § 83(b) election was valid.

CONCLUSION

For the reasons set forth above, and set forth in the memorandum in support of defendant's cross-motion for summary judgment and in opposition to plaintiffs' motion for summary judgment, defendant requests that the Court grant the defendant's cross-motion and

dismiss with prejudice plaintiffs' claims.

Respectfully submitted,

s/Benjamin C. King, Jr.

BENJAMIN C. KING, JR.
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6506

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Acting Chief, Court of Federal Claims Section
STEVEN I. FRAHM
Assistant Chief

s/Steven I. Frahm
Of Counsel

February 15, 2007